1 │ EILEEN M. DECKER
  │ United States Attorney
2 │ LAWRENCE S. MIDDLETON
  │ Assistant United States Attorney
3 │ Chief, Criminal Division
  │ JULIUS J. NAM (Cal. Bar No. 288961)
4 │ Assistant United States Attorney
  │ General Crimes Section
5 │     1200 United States Courthouse
  │     312 North Spring Street
6 │     Los Angeles, California 90012
  │     Telephone: (213) 894-4491
7 │     Facsimile: (213) 894-0141
  │     E-mail:   julius.nam@usdoj.gov
8 │
  │ Attorneys for Plaintiff
9 │ UNITED STATES OF AMERICA



FILED
CLERK, U.S. DISTRICT COURT

SEP 19 2016

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10 │                UNITED STATES DISTRICT COURT

11 │           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12 │                                    CV16-7028-JVS (PLA)
13 │ IN THE MATTER OF THE          CV NO. 16-
   │ EXTRADITION OF
14 │                               REQUEST FOR EXTRADITION;
   │ YONG WOONG KIM,               REDACTED EXHIBITS
15 │     aka "Yeong-hun Kim,"
   │                               [18 U.S.C. § 3184]
16 │ A Fugitive from the Government
   │ of the REPUBLIC OF KOREA.
17 │

18 │     The United States, on behalf of the Government of the Republic

19 │ of Korea, hereby files its Request for Extradition of YONG WOONG

20 │ KIM, also known as "Yeong-Hun Kim," along with the redacted formal

21 │ papers (with seals and ribbons) supporting this Request, as required

22 │ by the Treaty on Extradition between the Republic of Korea and the

23 │ United States of America.  Attached hereto is the diplomatic note

24 │ formally requesting the extradition and the treaty (Exhibit A[1]), and

25 │ the documentary evidence accompanying the Request for Extradition

26 │

27 │ _____

28 │     [1] Previously filed as Exhibit 1 to the complaint.

(Exhibits B[2]), received by the United States from the Government of the Republic of Korea.  Through these documents, the Government of the Republic of Korea requests that YONG WOONG KIM be extradited pursuant to Title 18, United States Code, Section 3184 and the Treaty on Extradition between the Republic of Korea and the United States of America.

The fugitive, YONG WOONG KIM, was arrested pursuant to an arrest warrant issued on August 11, 2016, by United States Magistrate Judge Jean P. Rosenbluth, and came before the Court for an initial appearance on September 6, 2016, before United States Magistrate Judge Michael R. Wilner in Case No. 16-MJ-1618.

Under the procedures of this Court, this extradition matter should be assigned a new civil docketing number, a United States District Judge, and a United States Magistrate Judge for further extradition proceedings.

///
///
///

---

[2] Previously filed as Exhibit 2 to the complaint.

2

1      Filed concurrently herewith is the Government's Application for

2  Order Allowing Filing Under Seal of Original Formal Extradition

3  Documents.

4  Dated: September 18, 2016          Respectfully submitted,

5                                    EILEEN M. DECKER
                                     United States Attorney
6
                                     LAWRENCE S. MIDDLETON
7                                    Assistant United States Attorney
                                     Chief, Criminal Division
8

9

10                                   JULIUS J. NAM
                                     Assistant United States Attorney
11
                                     Attorneys for Plaintiff
12                                   UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A



DISTRICT OF COLUMBIA, ss:

## DECLARATION OF ELIZABETH M. M. O'CONNOR

I, Elizabeth M. M. O'Connor, declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests within the Department of State, and I am familiar with the extradition case of Yong Woong Kim. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. In accordance with the provisions of the extradition treaty in full force and effect between the United States of America and the Republic of Korea, the Embassy of the Republic of Korea has submitted Diplomatic Note No. KM 12/458, dated November 19, 2012 (because of a typographical error, the actual Note bears the date November 19, 2011), formally requesting the extradition of Yong Woong Kim. A copy of the diplomatic note is attached to this declaration.

3. The relevant and applicable treaty provisions in full force and effect between the United States and Korea are found in the Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Korea, signed on June 9, 1998, and entered into force December 20, 1999 ("the Treaty"). A copy of the Treaty is attached to this declaration.

4. In accordance with Article 18 of the Treaty, the Government of the United States appears in court in the United States on behalf of, and represents the interests of, the Republic of Korea in any proceeding that arises out of a Korean request for extradition. The Republic of Korea provides the same legal representation in its courts on behalf of the United States with regard to extradition requests made by the United States.

16035966-3

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

y That Elizabeth M.M. O'Connor, whose name is subscribed to the document hereunto as the time of subscribing the same Attorney-Advisor, Office of the Legal Adviser, of State, United States of America, and that full faith and credit are due to her acts as

*This certificate is not valid if it is removed or altered in any way whatsoever*



In testimony whereof, I, John F. Kerry, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this nineteenth day of May, 2016.

*Issued pur         o CHXIV,*
*Sept. 15,          d Stat. 68-*
*USC 2657           C 2651a; 5*
*301; 28 U          3 et. seq.; 8*
*1443(f); RU        Federal Rul*
*Civil Proced*

_____
Secretary of State

By _____
Assistant Authentication Officer,
Department of State

-2-

5. The offenses for which extradition is sought are covered by Article 2 of the Treaty.

6. The documents submitted by the Government of the Republic of Korea in support of its extradition request were certified on October 17, 2012, by Paul L. Boyd, Consul General of the United States of America in Seoul, Korea, in accordance with Title 18, United States Code, Section 3190. Paul L. Boyd, at the time of this certification, was the principal consular officer of the United States in Korea.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on May 18, 2016.

*Elizabeth M. M. O'Connor*
ELIZABETH M. M. O'CONNOR

Attachments:

1. Copy of Note.
2. Copy of Treaty.

EMBASSY OF THE REPUBLIC OF KOREA
WASHINGTON, D. C.

KAM 12/458

The Embassy of the Republic of Korea presents its compliments to the Department of State of the United States of America and has the honor to deliver the documents relevant to the extradition procedure against Mr. KIM, Yong Woong, pursuant to the Extradition Treaty Between the Republic of Korea and the United States of America.

The Embassy transmits herewith the original copy, being "Request for Extradition" issued by the Ministry of Justice of Korea and Annexes attached thereto.

The Embassy would appreciate the Department of State relaying the enclosed original document to the Department of Justice for the extradition.

The Embassy of the Republic of Korea avails itself of this opportunity to renew to the Department of State of the United States of America the assurances of its highest consideration.

Washington, DC

Nov. 19, 2011

SECOND SECRETARY & CONSUL
WASHINGTON D.C

Enclosure

| 106TH CONGRESS 1st Session | SENATE | TREATY DOC. 106–2 |
| --- | --- | --- |

# EXTRADITION TREATY WITH KOREA

## MESSAGE

FROM

# THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE EXTRADITION TREATY BETWEEN THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF THE REPUBLIC OF KOREA, SIGNED AT WASHINGTON ON JUNE 9, 1998

*Entered into force Dec. 20, 1999.*



MARCH 2, 1999.—Treaty was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

The Government of the United States of America and the Government of the Republic of Korea,

Desiring to provide for more effective cooperation between the two states in the prevention and suppression of crime, and to facilitate relations between the two States in the area of extradition by concluding a treaty for the extradition of offenders,

Have agreed as follows:

## ARTICLE 1
## OBLIGATION TO EXTRADITE

The Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, any person who is wanted in the Requesting State for prosecution, trial, or imposition or execution of punishment for an extraditable offense.

## ARTICLE 2
## EXTRADITABLE OFFENSES

1.    An offense shall be an extraditable offense if, at the time of the request, it is punishable under the laws in both Contracting States by deprivation of liberty for a period of more than one year, or by a more severe penalty.

2.    An offense shall also be an extraditable offense if it consists of an attempt or a conspiracy to commit, or participation in the commission of, an offense described in paragraph 1, provided that the requirements of paragraph 1 are fulfilled.

3.    For the purposes of this Article, the totality of the conduct alleged against the person whose extradition is sought shall be taken into account, and an offense shall be an extraditable offense:

    (a)   whether or not the laws in the Contracting States place the offense within the same category of offenses or describe the offense by the same terminology;

    (b)   whether or not the constituent elements of the offense differ under the laws in the Contracting States, provided that the offenses under the laws of both States are substantially analogous; and

    (c)   whether or not the offense is one for which United States federal law requires the showing of such matters as interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

4.    If the offense was committed outside of the territory of the Requesting State, extradition shall be granted in accordance with this Treaty if the laws of the Requested State provide for punishment of an offense committed outside of its territory in similar circumstances or if the offense has been committed by a national of the Requesting State. If the laws in the Requested State do not so provide, the executive authority of the Requested State may, in its discretion, grant extradition, provided that the requirements of this Treaty are met. Extradition may be refused when the offense for which extradition is sought is regarded under the law of the Requested State as having been committed in whole or in part in its territory and a prosecution in respect of that offense is pending in the Requested State.

5.    If extradition has been granted for an extraditable offense, it shall also be granted for any other offense specified in the request even if the latter offense is

punishable by deprivation of liberty for a period of one year or less, provided that all other requirements for extradition are met.

6.     When extradition of a person is sought for an offense against a law relating to taxation, customs duties, foreign exchange control, or other revenue matter, extradition may not be refused on the ground that the law of the Requested State does not contain a tax, duty, customs, or exchange regulation of the same kind as the law of the Requesting State.

7.     Where the request for extradition relates to a person sentenced to deprivation of liberty by a court of the Requesting State for any extraditable offense, extradition may be denied if a period of less than four months remains to be served.

## ARTICLE 3
## NATIONALITY

1.     Neither Contracting State shall be bound to extradite its own nationals, but the Requested State shall have the power to extradite such person if, in its discretion, it be deemed proper to do so.

2.     If extradition is refused solely on the basis of the nationality of the person sought, the Requested State shall, at the request of the Requesting State, submit the case to its authorities for prosecution.

3.     Nationality shall be determined at the time of the commission of the offense for which extradition is requested.

## ARTICLE 4
## POLITICAL AND MILITARY OFFENSES

1.     Extradition shall not be granted if the Requested State determines that the offense for which extradition is requested is a political offense.

2.     For the purposes of this Treaty, the following offenses shall not be considered to be political offenses:

   (a)     a murder or other willful violent crime against the person of a Head of State of one of the Contracting States, or of a member of the Head of State's family;

   (b)     an offense for which both Contracting States have the obligation to extradite the person sought or to submit the case to their competent authorities for decision as to prosecution pursuant to a multilateral international agreement, including but not limited to such agreements relating to genocide, terrorism, or kidnapping; and

      (c)     a conspiracy or attempt to commit, or participation in, any of the foregoing offenses.

    3.    Surrender shall not be granted if the executive authority of the Requested State determines:

      (a)     that the request for surrender, though purporting to be made on account of an offense for which surrender may be granted, was in fact made for the primary purpose of prosecuting or punishing the person sought on account of his race, religion, nationality or political opinion; or

      (b)     that extradition has been requested for political purposes.

    4.    The executive authority of the Requested State may refuse extradition for offenses under military law which are not offenses under ordinary criminal law.

## ARTICLE 5
## PRIOR PROSECUTION

    Extradition shall not be granted when the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested.

## ARTICLE 6
## LAPSE OF TIME

    Extradition may be denied under this Treaty when the prosecution or the execution of punishment of the offense for which extradition is requested would have been barred because of the statute of limitations of the Requested State had the same offense been committed in the Requested State. The period during which a person for whom extradition is sought fled from justice does not count towards the running of the statute of limitations. Acts or circumstances that would suspend the expiration of the statute of limitations of either State shall be given effect by the Requested State, and in this regard the Requesting State shall provide a written statement of the relevant provisions of its statute of limitations, which shall be conclusive.

## ARTICLE 7
## CAPITAL PUNISHMENT

1.  When the offense for which extradition is sought is punishable by death under the laws in the Requesting State and is not punishable by death under the laws in the Requested State, the Requested State may refuse extradition unless:

(a)  the offense constitutes murder under the laws in the Requested State; or

(b)  the Requesting State provides such assurances as the Requested State considers sufficient that the death penalty will not be imposed or, if imposed, will not be carried out.

2.  In instances in which a Requesting State provides an assurance in accordance with paragraph 1, the death penalty, if imposed by the courts of the Requesting State, shall not be carried out.

## ARTICLE 8
## EXTRADITION PROCEDURES AND REQUIRED DOCUMENTS

1.  All requests for extradition shall be submitted in writing through the diplomatic channel.

2.  All requests shall be supported by:

(a)  documents, statements, or other types of information which describe the identity, including nationality, and probable location of the person sought;

(b)  information describing the facts of the offense and the procedural history of the case;

(c)  the text of the law describing the essential elements of the offense for which extradition is requested;

(d)  the text of the law prescribing punishment for the offense;

(e)  the documents, statements, or other types of information specified in paragraph 3 or paragraph 4 of this Article, as applicable; and

(f)  a statement of the relevant provisions of its statute of limitations on the prosecution or the execution of punishment of the offense.

3.     A request for extradition of a person who is sought for prosecution shall also be supported by:

    (a)     a copy of the warrant or order of arrest issued by a judge or other competent authority;

    (b)     a copy of the charging document, if any; and

    (c)     such information as would provide reasonable grounds to believe that the person sought has committed the offense for which extradition is requested.

4.     A request for extradition relating to a person who has been found guilty of the offense for which extradition is sought shall also be supported by:

    (a)     a copy of the judgment of conviction or, if such copy is not available, a statement by a judicial authority that the person has been found guilty;

    (b)     information establishing that the person sought is the person to whom the finding of guilt refers;

    (c)     a copy of the sentence imposed, if the person sought has been sentenced, and a statement establishing to what extent the sentence has been carried out; and

    (d)     in the case of a person who has been found guilty in absentia, the documents required by paragraph 3.

5.     If the Requested State considers that the information furnished in support of the request is not sufficient to fulfill the requirements of this Treaty, that State may request that additional information be furnished within such reasonable time as it specifies.

6.     All documents submitted by the Requesting State shall be translated into the language of the Requested State.

ARTICLE 9
ADMISSIBILITY OF DOCUMENTS

The documents which accompany an extradition request shall be received and admitted as evidence in the extradition proceedings if:

    (a)     they are certified by the principal diplomatic or consular officer of the Requested State resident in the Requesting State; or

    (b)     they are certified or authenticated in any other manner accepted by the law of the Requested State.

## ARTICLE 10
## PROVISIONAL ARREST

1.     In case of urgency, a Contracting State may request the provisional arrest of the person sought pending presentation of the request for extradition.  A request for provisional arrest may be transmitted through the diplomatic channel or directly between the Department of Justice in the United States and the Ministry of Justice in the Republic of Korea.

2.     The application for provisional arrest shall be in writing and contain:

     (a)     a description of the person sought, including information concerning the person's nationality;

     (b)     the location of the person sought, if known;

     (c)     a brief statement of the facts of the case, including, if possible, the time and location of the offense;

     (d)     a description of the laws violated;

     (e)     a statement of the existence of a warrant of arrest or a finding of guilt or judgment of conviction against the person sought; and

     (f)     a statement that a request for extradition for the person sought will follow.

3.     The Requesting State shall be notified without delay of the disposition of its application and the reasons for any denial.

4.     A person who is provisionally arrested may be discharged from custody upon the expiration of two months from the date of provisional arrest pursuant to this Treaty if the executive authority of the Requested State has not received the formal request for extradition and the supporting documents required in Article 8.

5.     The fact that the person sought has been discharged from custody pursuant to paragraph 4 of this Article shall not prejudice the subsequent rearrest and extradition of that person if the extradition request and supporting documents are delivered at a later date.

## ARTICLE 11
### DECISION AND SURRENDER

1.      The Requested State shall promptly notify the Requesting State, in writing through the diplomatic channel, of its decision on the request for extradition.

2.      If the request is denied in whole or in part, the Requested State shall provide an explanation of the reasons for the denial.   In cases in which decisions are made by judicial authorities, the Requested State shall, upon request, provide copies of pertinent judicial decisions.

3.      If the request for extradition is granted, the authorities of the Contracting States shall agree on the time and place for the surrender of the person sought.

4.      `If the person sought is not removed from the territory of the Requested State within the time prescribed by the law of that State, that person may be discharged from custody, and the Requested State may subsequently refuse extradition for the same offense.

## ARTICLE 12
### TEMPORARY AND DEFERRED SURRENDER

1.      If the extradition request is granted in the case of a person who is being proceeded against or is serving a sentence in the Requested State for an offense other than that for which extradition is requested, the Requested State may temporarily surrender the person sought to the Requesting State for the purpose of prosecution.  The person so surrendered shall be kept in custody in the Requesting State and shall be returned to the Requested State after the conclusion of the proceedings against that person, in accordance with conditions to be determined by mutual agreement of the Contracting States.

2.      The Requested State may postpone the extradition proceedings against a person who is serving a sentence in that State for an offense other than that for which extradition is requested or who is being prosecuted in that State.  The postponement may continue until the prosecution of the person sought has been concluded or until such person has served any sentence imposed.

## ARTICLE 13
### REQUESTS FOR EXTRADITION MADE BY SEVERAL STATES

If the Requested State receives requests from the other Contracting State and from any other State or States for the extradition of the same person, either for the same offense or for different offenses, the executive authority of the Requested State shall

determine to which State it will surrender the person.  In making its decision, the Requested State shall consider all relevant factors, including but not limited to:

    (a)    whether the requests were made pursuant to treaty;

    (b)    the time and place where each offense was committed;

    (c)    the respective interests of the Requesting States;

    (d)    the gravity of the offenses;

    (e)    the nationality of the victim;

    (f)    the possibility of further extradition between the Requesting States; and

    (g)    the respective dates of the requests.

## ARTICLE 14
## SEIZURE AND SURRENDER OF PROPERTY

1.    To the extent permitted under its law, the Requested State may seize and surrender to the Requesting State all articles, documents, and evidence connected with the offense in respect of which extradition is granted.  The items mentioned in this Article may be surrendered even when the extradition cannot be effected due to the death, disappearance, or escape of the person sought.

2.    The Requested State may condition the surrender of the property upon satisfactory assurances from the Requesting State that the property will be returned free of charge to the Requested State as soon as practicable.  The Requested State may also defer the surrender of such property if it is needed as evidence in the Requested State.

3.    The rights of third parties in such property shall be duly respected.

## ARTICLE 15
## RULE OF SPECIALITY

1.    A person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for:

    (a)    the offense for which extradition has been granted or a differently denominated offense based on the same facts on which extradition was granted, provided such offense is extraditable, or is a lesser included offense;

    (b)    an offense committed after the extradition of the person; or

    (c)    an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment for an offense;

For the purpose of this subparagraph:

    (i)    the Requested State may require the submission of the documents called for in Article 8;

    (ii)    a legal record of statements made by the extradited person with respect to the offense, if any, shall be submitted to the Requested State; and

    (iii)    the person extradited may be detained by the Requesting State for such period of time as the Requested State may authorize, while the request is being processed.

2.    A person extradited under this Treaty may not be extradited to a third State for an offense committed prior to his surrender unless the surrendering State consents.

3.    Paragraphs 1 and 2 of this Article shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of that person to a third State, if:

    (a)    that person leaves the territory of the Requesting State after extradition and voluntarily returns to it; or

    (b)    that person does not leave the territory of the Requesting State within 25 days of the day on which that person is free to leave.

## ARTICLE 16
## SIMPLIFIED EXTRADITION

If the person sought consents to surrender to the Requesting State, the Requested State may surrender the person as expeditiously as possible without further proceedings, to the extent permitted under its law.   In such cases, Article 15 of this Treaty shall not apply.

## ARTICLE 17
## TRANSIT

1.    Either Contracting State may authorize transportation through its territory of a person surrendered to the other State by a third State.  A request for transit shall be transmitted through the diplomatic channel or directly between the Department of Justice in the United States and the Ministry of Justice in the Republic of Korea.  It shall contain a description of the person being transported and a brief statement of the facts of the case. A person in transit may be detained in custody during the period of transit.

2.      Authorization to transit shall not be required when air transport is used and no landing is scheduled in the territory of the State of transit. If an unscheduled landing occurs in the territory of that party, it may require the other party to furnish a request for transit as provided in paragraph 1 of this Article. The State of transit shall detain the person to be transported until the transportation is continued provided that the request is received within ninety-six (96) hours of the unscheduled landing.

3.      Permission for the transit of a person surrendered shall include authorization for accompanying officials to obtain assistance from authorities in the State of transit in maintaining custody.

4.      Where a person is being held in custody pursuant to paragraph 3 of this Article, the Contracting State in whose territory the person is being held may direct that the person be released if transportation is not continued within a reasonable time.

## ARTICLE 18
## REPRESENTATION AND EXPENSES

1.      The Requested State shall advise, assist, appear in court on behalf of the Requesting State, and represent the interests of the Requesting State, in any proceedings arising out of a request for extradition.

2.      The Requesting State shall bear the expenses related to the translation of documents and the transportation of the person surrendered from the Requested State to the Requesting State. The Requested State shall pay all other expenses incurred in that State by reason of the extradition proceedings.

3.      Neither State shall make any pecuniary claim against the other State arising out of the arrest, detention, examination, or surrender of persons sought under this Treaty.

## ARTICLE 19
## CONSULTATION

1.      The Contracting States shall consult, at the request of either, concerning the interpretation and the application of this Treaty.

2.      The United States Department of Justice and the Republic of Korea Ministry of Justice may consult with each other directly in connection with the processing of individual cases and in furtherance of maintaining and improving procedures for the implementation of this Treaty.

## ARTICLE 20
## APPLICATION

This Treaty shall apply to offenses committed before as well as after the date it enters into force.

- 12 -

## ARTICLE 21
## RATIFICATION, ENTRY INTO FORCE AND TERMINATION

1.     This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged as soon as possible.

2.     This Treaty shall enter into force upon the exchange of the instruments of ratification.

3.     Either Contracting State may terminate this Treaty at any time by giving written notice to the other Contracting State, and the termination shall be effective six months after the date of such notice.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments have signed this Treaty.


DONE at Washington, in duplicate, this   9 $^{Th}$   day of June, 1998, in the English and Korean languages, both texts being equally authentic.


FOR THE GOVERNMENT OF THE     FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:     REPUBLIC OF KOREA:

Exhibit B

U.S. Department of State

**CERTIFICATE TO BE ATTACHED TO DOCUMENTARY**
**EVIDENCE ACCOMPANYING REQUISITIONS IN**
**THE UNITED STATES FOR EXTRADITION**
**AMERICAN FOREIGN SERVICE**

|  |  |
|---|---|
|  | 10-17-2012 |
|  | Place and Date *(mm-dd-yyyy)* |
| Paul L. Boyd | Consul General |
| Name | Title |

of the United States of America at _____ Seoul, Korea

hereby certify that the annexed papers, being _____ supporting documents

proposed to be used upon an application for the extradition from the United States of America

KIM, Yong Woong

charged with the crime of _____ murder

alleged to have been committed in _____ Republic of Korea

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals _____ Republic of Korea

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this _____ 17th _____ day of _____ October 2012
                                              Month and Year

*Paul L. Boyd*
Signature

Paul L. Boyd, Consul General
Type Name and Title of Certifying Officer
of the United States of America.

DS-3
04-20



## MINISTRY OF JUSTICE
Republic of Korea

미합중국 법무부장관 귀하

### 김용웅에 대한 범죄인인도청구

한민국 법무부장관 본인 권제진은,

1. 한민국을 대표하여 대한민국정부와 미합중국정부간 범죄인인도조약에 따라, 실 혐의를 받고 있는 김용웅이 대한민국의 법률에 의하여 처리될 수 있도록 대 민국에 인도하여 줄 것을 청구합니다.

2. 범 인에 대한 범죄인인도청구를 위한 서류로서 본 문서를 봉인한 후 서명하고 대한 국 법무부장관의 관인을 날인함으로써 대한민국정부에 의하여 인증된 서류 임을 인합니다.

대한민국 서울

2012년 10월 15일

대한민국 법무부장 권제진



대리 검찰국장 국민수



# 확　인　서

　　대한민국 서울북부지방검찰청 소속 검사인 본인 한태화는 「대한민국 정부와 미합중국정부간의 범죄인도조약」에 따라 김용웅을 미국으로부터 대한민국으로 인도받기 위하여 아래 사항을 확인함.

## 1. 확인자 자격

1.1 본인은 대한민국 법무부 산하 서울북부지방검찰청 검사임. 본인은 2000년 국가 사법시험을 합격하여 2년간 대법원 산하 사법연수원에서 훈련을 받았으며, 2003년 동 연수원의 수료와 동시에 대한민국에서 판사, 검사 또는 변호사로 활동할 수 있는 자격을 취득하였음. 2003년 2월부터 대한민국 대통령에 의하여 검사로 임용되어 근무하고 있음. 본인의 훈련과 경험그리고 직책에 근거하여, 본인은 대한민국의 형사법과 형사절차에 익숙함. 본인은 현재 이 사건을 담당하고 있는 수사검사로서 이 사건기록에 있는 피해자, 참고인, 공범들의 진술, 수사관의 수사보고서 및 증거물 등을 모두 검토하여 이 사건의 진상에 대하여 잘 알고 있음.

1.2 대한민국법상 검사는 수사를 주관하는 자로서 경찰의 도움없이 독자적으로 범죄사건을 수사할 수도 있고, 경찰을 지휘하여 수사를 할 수도 있음. 수사가 종결되면 검사는 사건의 기소유부를 독점적으로 결정하고, 기소후에는 공소유지를 담당하며, 마지막으로 확정된 판결을 집행함. 기소 후에는 공소유지를 담당하며, 마지막으로 확정된 판결을 집행함. 기소독점주의 원칙상 검사가 기소한 사건에 대하여만 법원이 재판절차를 진행할 수 있음. 본 사건은 피의자의 진술과 무관하게 기소할 수 있을 만큼 충분하고 확실한 증거를 이미 확보하고 있음. 다만 대한민국의 수사, 기소관행에 의하면 피의자가

도주중에는 기소하지 않으므로 그를 송환받아 기소하기 위하여 범죄인인도
청구에 이르게 된 것임.

## 2. 김용웅에 관한사항

2.1 김용웅은 1961년 ▨▨▨ 대한민국에서 출생한 남자로서 대한민국 국민임.
　　동인은 여권번호 ▨▨▨7755인 대한민국 여권을 소지하고 있으며, 여권에 기재된
　　영문 성명은 YONG WOONG KIM 이며, 주소는 서울 종로구 명륜동 1가
　　16-15호임. 김용웅은 검은색 머리카락과 갈색 눈동자를 가지고 있고, 키는
　　약180센터미터임.

2.2 별첨 1.은 신창기가 대한민국 주민등록증을 발급 받을 당시 행정기관에서 촬
　　영하여 보관하고 있던 사진이며, 본건의 살인을 교사한 같은 피의자인 홍종
　　근과 공범인 홍수영에게 사진 속 인물이 범죄인 김용웅이 맞다고 진술함.
　　별첨 2.는 김용웅의 10지 지문으로 주민등록증 발급 당시 행정기관이 채취하
　　여 현재 대한민국 경찰청에 보관 중인 동인의 지문의 사본임.

2.3 김용웅은 2007년 3월 1일 대한민국 인천공항을 통해 미국 LA행 비행기를
　　타고 출국하여 현재까지 귀국하지 않고 있음.

2.4 2010년 8월 9일 대한민국 여권을 갱신하면서 제출한 여권재발급신청서의 거
　　주지 주소란에 ▨▨▨ HARROW ST MIRA LOMA. LA 91952 라고 적음.


## 3. 사건의 진행경과

3.1. 수사착수배경

3.1.1. 2008년 내사(2008-314호)

　　- 살인으로 기 구속 수감된 홍수영은 피해자인 심유자을 살해하는데 가담
　　을 하였지만 미국 LA에서 자신과 홍종근 외에 실질적으로 지시를 한 사람
　　이 김영훈이라는 사람이며 미국에서 거주하고 있으며 한국에도 자주 입국
　　하여 자유로운 생활을 하고 있다는 첩보를 입수하여 내사에 착수하였음.

- 2008. 7. 4일 청주교도소에 수감 중인 홍수영에 대해 수사접견하여 김영훈에 대해 확인하니, 이름은 김영훈이고 종로구 혜화동, 동숭동 등 대학로에서 건달생활을 했고 일명 '무교동 해골'이라고 불린다고 하며, 키는 181센티미터, 건강한 몸에 두상이 크고, 조직폭력배 인상에 뻐드렁니가 나 있으며, 해병대를 제대한 것으로 알고 있다고 하면서, 1994년경 김영훈이 미국에 오면서 알게 되어 친구가 되었고, 홍종근으로부터 처인 심유자를 죽이는 조건으로 10만 달러를 주기로 하였고 착수금으로 김영훈이 3만 달러를 받아 자신에게 5,000달러를 주었고 5,000달러를 김창섭에게 건네주었는데, 그 과정에서 김영훈이 홍수영과 김창섭에게 심유자를 살해하는데 필요한 모든 준비를 하게 하였다고 하면서 주범은 자신이 아닌 김영훈이라고 하였음.

- 2008. 7. 15일 기 구속되어 홍성교도소에 수감된 홍종근을 상대로 수사접견하여 김영훈에 대해 확인하니, 1995. 3~4월경  미국 L. A의 카지노 도박장을 드나들던 중 김영훈이 자신에게 접근하여 알고 지냈고, 자신의 보디가드를 겸하면서 2년 정도를 만나 사이라고 하면서 김영훈이라고 하는 이름과 1960년생이라고만 알고 있고 그 외 다른 것은 물어보지 않아 아는 것이 없다고 하면서 자신의 처지를 이야기 하자 김영훈이 걱정하지 말라고 하면서 눈 깜짝할 사이에 안보이게 해주겠다고 하여 10만 달러를 주기로 하였고 착수금으로 3만 달러를 주었고, 착수금을 준 후 김영훈이 심유자를 살해 할 사람이 한국으로 들어갔다고 하여 한국에 있던 동생 홍종준에게 전화를 하여 미국에서 온 사람들에게 돈을 주라고도 하였다고 하며, 심유자가 죽은 것을 알고 바로 만나서 현금으로 나머지 7만 달러를 주었다고 하였음.

- 1996. 2. 8  살인으로 기 구속되어 대전교도소에 수감된 김창섭을 상대로 수사 접견하여 김영훈에 대해 확인하니, 김창섭은 중국계 갱단인 일명 'T'

에게 심유자를 살해하면 3만 달러를 받기로 하고 심유자를 살해하였다고
하면서 김영훈에 대해서는 아는 것이 없다고 하는 등 진술을 거부하고 있
는 상황이었음.

- 홍수영과 홍종근의 진술에 따른 김영훈에 대한 자료를 토대로 졸업했다
고 하는 혜화초등학교, 경신고등학교 졸업자 등에 대한 전산조회 및 출입
국 조회 등을 하였으나 피의자를 특정하지 못하여 내사 종결하였음.

### 3.1.2. 2009년 내사(2009-904호)

- 마약 사건을 수사 하던 중 혜화동 일대에서 건달 생활을 한다는 이00(47
세 가량)이 일명 무교동 해골은 1959년생이라는 새로운 첩보로 내사에 착
수하였음.

- 이00(47세 가량)을 상대로 무교동 해골에 대해서 나이, 출신학교, 정확한
이름 등에 대해서 확인을 하려고 하였으나 자신의 이름도 밝히지 않고, 또
한 해골에 대해서 더 이상 말하지 않아 정확한 이름을 밝히는데는 실패를
하였으나 무교동 해골이 있었다는 것은 확실한 것으로 보여졌음.

- 1959년생이라고 하여 혜화초등학교, 경신고등학교 졸업생중 1958년부터
1960년생의 김영훈(영운, 또는 용훈, 용운)은 총4명, 해병대를 전역하였다고
하여 해병대 전역자 16명, 국외 이주자 8명 등에 대한 자료를 확보하여 복
역 중인 홍수영, 홍종근을 상대로 사진을 보여주며 확인하였으나 김영훈은
아니라고 하여 특정할 수 없어 다시 내사 종결하였음.

### 3.1.3. 2009년 내사(2009-1012호)

- 홍수영과 같이 복역을 한 자신의 이름을 밝히길 거부한 성명불상(50세)
은 자신이 알고 있는 무교동 해골은 혜화초등학교 60회 졸업생이며 이름은
김영훈이 아닌 김용웅이라고 하여 내사에 착수하였음.

- 혜화초등학교 60회 졸업생중 김용웅은 1959. 9. 26생 1명이었으나 경찰전
산 조회하였으나 주민자료가 존재하지 않는 다고 나왔고, 1958년부터 1962
년생 김용웅은 전국에 53명이 나왔으나 피의자로 특정할 수 없어 내사 종

결 처리 하였음

3.2. 수사경과

3.2.1. 2008년 내사(2008-314호), 2009년 내사(2009-904호), 2009년 내사(2009-1012호) 3회에 걸쳐 피의자를 특정하고자 내사를 하였으나 특정하지 못하고 내사종 결처리 하였으나, 내사종결 처리된 기록 3권에 대해 기록을 검토하는 과정 에서 김영훈의 학생기록부상의 이름과 생년월일은 다르나 본적(충북 진천군 초평면 신통리 281번지)이 같은 사람인 김용웅 ██████████ 을 발견하여 동사무소 보관 개인별 주민등록표 상에 해병 1사단을 제대하였고, 경찰전 산상 현지 이주자로 확인이 되었으며, 범죄·수사경력 중 오락실 관련 문 제로 인해 강도상해 혐의로 구속 되는 등 지금까지 홍수영이 진술한 내용 과 일치하여 다시 내사를 진행하게 되었음.

3.2.2. 기록 검토과정에서 확인된 김용웅 ██████████ 의 주민등록표상의 사 진, 2006년 강도상해로 구속 되면서 촬영된 수사종합검색시스템 수법사진 을 가지고 2011. 9. 2일 춘천교도소에 복역중인 홍수영, 2011. 9. 20일 홍성 교도소에 복역 중인 홍종근을 상대로 수사 접견하여 김용웅의 사진을 보 여주고, 당시 살인 사건을 같이 공모하였다고 하는 김영훈(일명 'T')이 맞 는 지를 확인하였더니, 같이 범행을 공모하고, 자신들이(홍수영, 홍종근) 알 고 있는 김영훈이 맞다고 진술하여 김용웅을 피의자로 특정 인지하였음.

## 4. 인도청구대상 범죄사실 및 관련증거 자료

4.1. 인도청구대상 범죄사실

4.1.1. 피의자 김용웅은 미검으로 직업 불상인 자로 서울남부지방법원에서 2007. 2. 8일 폭력행위등처벌에관한법률위반(공동공갈, 공동상해, 공동강요)으로 징역1년에 집행유예 2년을 선고 받은 전력이 있는 등 동종전과 5범인 자 이며, 2009. 3. 9일 자로 미국으로 이주한 현지 이주자이다.

4.1.2. 1993년 미국 L.A.로 건너가 생활 하면서 자신의 주변 사람들에게 '김영훈' 이라고 소개를 하면서 일정한 직업 없이 카지노 도박장 등을 전전하며 생활하던 중 부광운수(당시 경기 수원시 소재)사장인 홍종근을 만나 운전, 보디가드를 하면서 생활하였다.

4.1.3. <공모과정> 그러던 중 홍종근의 처 심유자가 탈세, 상습도박 등의 혐의로 자신을 청와대, 검찰에 진정하고, 서울지방법원 의정부지원에 이혼 및 위자료, 재산분할 명목으로 52억원의 지급을 요하는 청구소송을 제기하여 자신의 자식들이 거지가 될 것 같다고 하면서 해결방법 등을 피의자 김용응과 상의하였다. 피의자 김용응은 "눈 깜짝할 사이에 안 보이게 할 수 있습니다"라고 하면서 일을 처리하는 대가로 10만달러를 요구하였고, 홍종근이 이에 응하자 미국으로 건너가 L. A.에서 지내면서 알게 된 친구 사이인 재미교포 홍수영(미국명 샘 홍)에게 심유자 살해 계획을 말하고 같이 일을 처리하기로 공모한 후, 미국 로스앤젤레스 폭력조직인 중국계 와칭(Watching)파의 조직원인 불상자로부터 재미교포인 김창섭(미국명 데이비드 김)을 소개받아 심유자를 살해하는 대가로 3만 달러를 주겠다고 제의하자 이에 김창섭도 응하면서 홍종근, 김용응, 홍수영, 김창섭은 홍종근의 처 심유자를 살해하기로 순차적으로 공모 하였다.

4.1.4. <실행과정> 김영응은 1995. 9월경 미국 LA 불상의 장소에 홍종근으로부터 착수금으로 미화 3만달러를 받아 홍수영에게 5천 달러를 주었고, 홍수영은 5천 달러를 창섭에게 전달하여 경비로 사용하도록 하면서 심유자를 살해하기 위한 준비 작업에 착수 하였다.

4.1.5. 김용응은 심유자를 살해하도록 김창섭, 홍수영에게 지시하여 1996. 1. 6일 15:21경 대한항공 061기편으로 김포공항을 통해 한국에 입국하였고, 같이 입국한 홍수영을 통해 홍종근으로부터 미리 연락을 받고 공항에 나와 있던 김기봉(전 부광운수 노조위원장)을 통해 심유자의 사진, 주소 등에 대한 정보를 받을 수 있도록 하고, 홍수영은 바로 미국으로 출국하고 김창섭은

한국에 머무르면서 심유자를 살해하기 위해 거주지 주위를 맴돌면서 기회를 엿보았으나 살해하지 못하였다. 김용웅은 한국에 입국한 김창섭이 1개월이 지나도록 심유자를 살해하지 못하자 홍수영에게 지시하여 김창섭이 일을 빨리 처리하도록 1996. 2. 7. 19:15경 아시아나항공 201기편으로 김포공항을 통하여 홍수영이 재차 한국에 입국 시켰다. 홍수영은 김창섭을 만나 빨리 일을 처리 하라고 하였고, 처리할 날을 기다리던 중 심유자가 1996. 2. 8일 이혼소송과 관련하여 서울지방법원 의정부지원에 출석할 것이라는 말을 홍종근으로부터 김용웅이 전해 듣고 홍수영에게 전달하여 1996. 2. 8일 심유자를 살해하기로 한다.

4.1.6. <실행> 1996. 2. 8. 12:30경 서울시 강북구 수유동 58-26호 앞에서 김창섭과 홍수영은 프라이드 베타 승용차량에 타고 대기하고 있던 중 피해자가 대문 앞에 쌓인 눈을 치운 후 들어갈 때 홍수영이 "Last Chance For You(너의 마지막 기회다)"라는 지시를 받고 김창섭이 차에서 내려 뒤쫓아가 마당에서 주먹으로 얼굴을 1회 강타하여 그 곳 바닥에 넘어뜨린 다음 피해자의 몸위에 올라 타 미리 소지하고 있던 식칼로 목, 머리, 옆구리 등을 13회에 걸쳐 찔러 그 자리에서 외경 동맥절단에 의한 실혈로 사망케 한 것이다.

4.2. 관련증거 자료

4.2.1. 2008. 7. 4. 춘천교도소에 복역 중인 공범인 홍수영은 서울강북경찰서 형사인 경사 유병택에게 아래와 같이 진술을 하였음.

"1994년경 김영훈이 미국에 오면서 알게 되어 친구가 되었고, 홍종근으로부터 처인 심유자를 죽이는 조건으로 10만 달러를 주기로 하였고 착수금으로 김영훈이 3만 달러를 받아 자신에게 5,000달러를 주었으며 5,000달러를 김창섭에게 건네 주었는데, 그 과정에서 김영훈이 홍수영과 김창섭에게 심유자를 살해 하는데 필요한 모든 준비를 하게 하였다고 하면서 주범은 자신이 아닌 김용웅입니다."

4.2.2.  2008. 7. 15일 홍성교도소에 복역 중인 공범인 홍종근은 서울강북경찰서
형사인 경사 유병택에게 아래와 같이 진술을 하였음.

"1995. 3-4월경 미국 L. A의 카지노 도박장을 드나들던 중 김용웅이 자
신에게 접근하여 알고 지냈고, 자신의 보디가드을 겸하면서 2년 정도를
만나 사이라고 하면서 김영훈이라고 하는 이름과 1960년생이라고만 알고
있고 그 외 다른 것은 물어보지 않아 아는 것이 없다고 하면서 자신의
처지를 이야기 하자 김영훈이 걱정하지 말라고 하면서 눈 깜짝할 사이에
안보이게 해주겠다고 하여 10만 달러를 주기로 하였고 착수금으로 3만
달러를 주었고, 착수금을 준 후 김영훈이 심유자를 살해 할 사람이 한국
으로 들어갔다고 하여 한국에 있던 동생 홍종준에게 전화를 하여 미국에
서 온 사람들에게 돈을 주라고도 하였고, 심유자가 죽은 것을 알고 바로
만나서 현금으로 나머지 7만 달러를 주었습니다"

4.2.3.  이상의 증거들은 대한민국 형사절차법이 규정한 절차에 따라 적법하게 수
집되었고, 이들 증거만으로도 신창기를 대한민국에서 살인죄로 기소하기에
충분함.

## 5. 대한민국의 관련 법령

5.1.  살인

형법 제250조(살인) 사람을 살해한 자는 사형, 무기 또는 5년 이상의 징역에
처한다.

5.2.  공범에 관한규정

형법 제30조(공동정범) 2인 이상이 공동하여 죄를 범한 때에는 각자를 그
죄의 정범으로 처벌한다.

5.3.  위 죄의 공소시효에 관한법령 및 그 설명

5.3.1.  형사소송법 제249조 제1항

① 공소시효는 다음 기간의 경과로 완성한다.

1. 사형에 해당하는 범죄에는 15년

2. 무기징역 또는 무기금고에 해당하는 범죄에는 10년

3. 장기 10년 이상의 징역 또는 금고에 해당하는 범죄에는 7년

5.3.2. 형사소송법 제252조

① 시효는 범죄행위의 종료한 때로부터 진행한다.

② 공범에는 최종행위의 종료한 때로부터 전 공범에 대한 시효기간을 기산한다.

5.3.3. 형사소송법 제253조

① 시효는 공소의 제기로 진행이 정지되고 공소기각 또는 관할위반의 재판이 확정된 때로부터 진행된다.

② 공범의 1인에 대한 전항의 시효정지는 다른 공범자에게 대하여 효력이 미치고 당해사건의 재판이 확정된 때로부터 진행한다.

③ 범인이 형사처분을 면할 목적으로 국외에 있는 경우 그 기간동안 공소시효는 정지된다.

5.3.4. 설명

이 사건의 공소시효는 15년이나, 김용웅은 별첨 첨부된 개인별출입국현황에서 사건 발생 당시 미국에 체류 중이었고, 그 후로도 계속해서 국내에 입국하였다가 다시 출국하기를 반복하여 공소시효 정지되었고,

공범인 홍수영, 홍종근 등에 대한 공소제기, 확정 판결 등으로 인해 공소시효가 정지되는 등 이 사건의 공소시효는 완성되지 않았음.

5.4. 이상의 법령은 현재 대한민국에서 전적으로 유효하게 적용되고 있고, 피의자 김용웅이 살인죄를 범한 1996. 2월에도 유효하였음.


# 6. 대한민국의 체포영장 제도

6.1. 대한민국법상 김용웅과 같은 중죄의 피의자가 도피한 경우에는 검사는 공소제기하지 아니하고 먼저 체포영장을 발부 받거나 지명수배를 하여 피의자의

신병을 확보하기 위하여 노력함. 피의자의 신병을 확보한 후에 기소를 하므
로 이 사건에서는 기소관련 서류는 없음

6.2. 대한민국 형사소송법상 검사는 수사 도중에 피의자가 죄를 범하였다고 의심
할만한 상당한 이유가 있고, 정당한 이유 없이 수사기관의 출석에 응하지
아니하거나 응하지 아니할 우려가 있는 때에는 관할 지방법원 판사로부터
체포영장을 발부 받아 피의자를 구금함.

6.3. 판사는 검사가 청구한 체포영장에 대하여 피의자를 체포할만한 사유가 있다
고 판단하는 경우 체포영장을 발부하게 됨. 따라서 판사가 피의자에 대하여
체포영장을 발부하였다는 사실은 바로 그 피의자가 영장청구 범죄사실을 범
하였다고 의심할 만한 상당한 이유가 있음을 반증하는 것임.

6.4 이 사건에서 2011. 10. 11 서울북부지방법원 판사 김영희가 김용웅에 대하여
살인 혐의로 체포영장을 발부하였음. 영장 원본은 대한민국에서의 절차를 위
하여 김용웅의 사건기록에 편철되어 있음. 별첨 체포영장은 판사 김영희가
발부한 체포영장의 진정하고 정확한 사본임을 확인함.


7. 위 기재한 사실은 모두 진실이며, 고의로 허위 사실을 기재하였
을 경우 대한민국 형법 제227조에 따라 허위공문서작성죄로 처
벌 받을 수 있다는 사실을 인식하면서 본 확인서를 작성하였음.


2012. 3. 21.


서울북부지방검찰청 검사 한태 

1. 김용웅 사진의 진정하고 정확한 사본 1부

2. 김용웅 지문의 정정하고 정확한 사본 1부

3. 체포영장의 전정하고 정확한 사본 1부

4. 여권발급신청서의 진정하고 정확한 사본 1부

5. 공범인 홍종근, 홍수영, 김창섭에 대한 진정하고 정확한 각 판결문 사본 1부









# 체 포 영 장

**[통상]**

서울북부지방법원

| | | | | | |
|---|---|---|---|---|---|
| 영 장 번 호 | 2011-7399 | 죄 명 | 살인 | | |
| 피 의 자 | 성 명 | 김 용 웅 | 직 업 | 기타 | |
| | 주민등록번호 | ███████ | 국 적 | 한국 | |
| | 주 거 | 서울 종로구 명륜1가 16-15 13/03 | | | |
| 청구한 검사 | 한 태 화 | | 청구일자 | 2011. 10. 11. 18:49 | |
| 변 호 인 | | | 유효기간 | 20시 11. 4. 까지 | |
| 범죄사실의 요지 | 별지 기재와 같다 | | 인치할장소 | 서울강북경찰서 또는 체포지 인근 경찰서 |
| 구 금 할 장소 | 서울강북경찰서 유치장 | | | | |

☐ 피의자는 정당한 이유 없이 수사기관의 출석요구에 응하지 아니하였다.

☑ 피의자는 정당한 이유 없이 수사기관의 출석요구에 응하지 아니할 우려가 있다.

☐ 피의자는 일정한 주거가 없다. (다만, 50만 원 이하의 벌금, 구류 또는 과료에 해당하는 사건).

피의자가 별지 기재와 같은 죄를 범하였다고 의심할 만한 상당한 이유가 있고, 체포의 사유 및 체포의 필요가 있으므로 피의자를 체포한다.

유효기간이 경과하면 체포에 착수할 수 없고 유효기간이 경과한 경우 또는 유효기간 내라도 체포의 필요가 없어진 경우에는 영장을 반환하여야 한다.

2011. 10. 11.

판사 김 영 희

| | | | | |
|---|---|---|---|---|
| 체 포 일 시 | 20   .   .   . | 체 포 장 소 | | |
| 인 치 일 시 | 20   .   .   . | 인 치 장 소 | | |
| 구 금 일 시 | 20   .   .   . | 구 금 장 소 | | |
| 집행불능사유 | | | | |
| 처리자의소속 관서 , 관직 | | 처 리 자 서 명 날 인 | | |

주 : 주민등록번호(외국인은 외국인등록번호. 위 번호들이 없거나 알 수 없는 때에는 생년월일 및 성별)

[별지]

범죄사실의 요지

○범죄사실

피의자 김용웅은 머겁으로 직업 불상인 자이다.

서울남부지방법원에서 2007. 2. 8일 폭력행위등처벌에관한법률위반(공동공갈, 공동상해, 공동강요)으로 징역1년에 집행유예 2년을 선고 받은 전력이 있는 등 동종전과 5범인 자이며, 2009. 3. 9일 자로 미국으로 이주한 원치 이주자이다.

1993년 미국 L.A로 건너가 생활 하면서 자신의 주변 사람들에게 김영준 이라고 소개를 하면서 일정한 직업 없이 카지노 도박장 등을 전전하며 생활하던 중 부항운송(당시 경기 수원시 소재)사장인 홍종근을 만나 운전, 보디가드를 하면서 생활하였다.

<공모과정>

그러던 중 홍종근과 처 심유자가 탄세, 양승도와 등의 협의로 이산을 결심하고, 김정이 협의하고, 서울지방법원 의정부지원에 이혼 및 위자료, 재산분할 명목 으로 52억원의 지급을 요하는 청구 소송을 제기하여 자신의 재산들이 거거가 될 것 같다고 하면서, 해결 방비 등을 피의자 김용웅과 상의 하였다.

피의자 김용웅은 '난 감쪽같이 사이에 안 보이게 할 수 있습니다'라고 하면서 일을 처리하는 대가로 10만달러를 요구하였고, 홍종근이 이에 응하자 미국으로 건너가 L.A에서 자대부터 알게 된 친구 사이인 재미교포 홍수영(미국명 셈 홍)에게 심유자 살해 계획을 말하고 같이 일을 처리하기로 공모한 후, 미국 로스엔젤레스 폭력조직인 중국계 와칭(Watching)파의 조직원인 설상화로부터 재미 교포인 김창섭(미국명 데이비드 김)을 소개 받아 심유자를 살해하는 대가로 3만 달러를 주겠다고 제의하자 이에 김창섭도 응하면서 홍종근, 김용웅, 홍수영, 김창섭은 심유자를 살해하기로 순차적으로 공모하였다.

<실행과정>

김영웅은 1995. 9월경 미국 LA 불상의 장소에 홍종근으로부터 착수금으로 미화 3만달러를 받아 홍수영에게 5천 달러를 주었고, 홍수영은 5천 달러를 김창섭에게 전달하여 경비로 사용하도록 하면서 심유자를 살해하기 위한 준비 작업에 착수 하였다.

김용웅은 심유자를 살해하도록 김창섭, 홍수영에게 지시하여 1996. 1. 6일 15:21경 대한항국

061기편으로 김포공항을 통해 한국에 입국하였고, 같이 입국한 홍수영을 통해 홍준근으로부터 미리 연락을 받고 공항에 나와 있던 김기풍 (전 무장공비 노조위원장)을 통해 심유자의 사진, 주소 등에 대한 정보를 받을 수 있도록 하고 홍수영은 바로 미국으로 출국하고 김창섭은 한국에 머무르면서 심유자를 살해 하기 위해 기주지 주위를 맴돌면서 기회를 엿보았으나 살해하지 못하였다.

김용웅은 한국에 입국한 김창섭이 1개월이 지나도록 심유자를 살해하지 못하자 홍수영에게 지시하여 김창섭이 일을 빨리 처리하도록 1996. 2. 7. 19:15경 아시아나항공 201기 편으로 김포공항을 통하여 홍수영이 재차 한국에 입국 지켰다.

홍수영은 김창섭을 만나 빨리 일을 처리 하라고 하였고, 처리할 날을 지나 리딘 중 심유자가 1996. 2. 8일 이혼소송과 관련하여 서울지방법원 의정부지원에 출석할 것이라는 말을 홍준근으로부터 김용웅이 전해 듣고 홍수영에게 전달 하여 1996. 2. 8일 심유자를 살해하기로 한다.

<실행>

1996. 2. 8. 12:30경 서울시 강북구 수유동 58-26호 앞에서 김창섭과 홍수영은 프라이드 베타 승용차량에 타고 대기하고 있던 중 피해자가 대문 앞에 쌓인 눈을 치운 후 돌아갈 때 홍수영이 "Last Chance For You(너의 마지막 기회다)"라는 쪽지를 받고 김창섭이 차에서 내려 뒤쫓아 가 바닥에서 주먹으로 얼굴을 1회 강타하여 그 곳 바닥에 넘어뜨린 다음 피해자의 몸위에 올라 타 미리 소지하고 있던 석망로 목, 머리, 얼굴의 등을 13회에 걸쳐 찔러 그 자리에서 외강 동맥질단에 의한 실혈로 사망케 하였다.

별지 제출력자:노혜경    2011년 10월 1.금 월요일 오후 2:10:02

(앞 쪽) 전자여권용

※ 검은색 펜으로
   붉은선 안에만 기재

# 여 권 ( 재 ) 발 급 신 청 서

접수시군

| | |
|---|---|
| 접 수 번 호 | 10-YLA-R-0068896 |
| 접 수 년 월 일 | 2010.08.11 |
| 여 권 번 호 | ▆▆7755 |
| 발 급 년 월 일 | 2010년08월16일 |

| | |
|---|---|
| 신원조사접 수번호 | 10-YLA-Y-0118994 |
| 신 원 조 사 회보 | 2010.08.12 |
| 선 원 조 사 견 | 교적환합 |
| 여 권 유 효 기 간 | 2020년08월16일 |

여권종류   일반 X  거주   단수   외교관   여행증명서 ( 왕복  편도 )

여권기간 X 10년   5년   5년미만   단수   기간연장   잔여기간

※ 영문성명은 해외에서의 신원확인의 기준이 되며 개명(교정)의 업격한 제한되므로 정확하게 기재하시기 바랍니다.

| 성<br>명 | 영 문<br>(대문자) | 성 | K I M | |
|---|---|---|---|---|
| | | 이 름 | Y O N G | |
| | 한 글 | 김 용 | | |

주민등록번호 ▆▆▆▆▆▆

※ 영문성명은 기재하기 견에
   반드시 뒷면「영문성명 기재
   요령」을 참고하시기 바랍니다.

※ 남자(영문대문자)은 필요시 기재하시기 바랍니다.

※ 주민등록번호 뒤 번지(생년월일등의 경우도 ▆▆수)까지 정확하게 기재하시기 바랍니다.

| 현주소<br>(주민등록표상) | | |
|---|---|---|
| 여행예정국 | | e-mail |
| 전화번호 | | 혈액형 A   신장 180<br>(ABO)      (cm) |
| 등록기준지(본적지) | | |

| 국내<br>긴급연락처 | 성 명 | | | (02)7988-7514 |
|---|---|---|---|---|
| | 주 소 | | 직장(학교)명 | |

※ 여권명의인의 나이가 ▆▆▆▆▆ 정하지 ▆▆▆▆▆▆ 부모·친권자 또는 후견인의 인적사항을 기재하시기 바랍니다.

| 법정대리인 | 성 명 | | 판 계 |
|---|---|---|---|
| | 주민등록번호 | | |

※ 이 신청서에 기재한 내용은 사실과 틀림없으며,「여권법」제9조 규정에 따라 여권발급을 신청합니다.
※ 여권 발급에 필요한 사항의 확인을 위한 행정정보공동이용 서비스의 이용에 동의합니다.( 예 ) 아니오 )

신청인(여권명의인) 성명(한글) 김 용 돔    (한자) 金 庸 돔    선명

2010 년 8 월 9 일    수령인 확인

※ 재외공관 중 경비공관에서 신청시에는 추가로 아래 사항을 기재하시기 바랍니다.

| 거주주소 | HARROW ST MIRA LOMA CA91752 | | | |
|---|---|---|---|---|
| 영주권 | 번호 | ▆▆556 | 거 주 지 | 입국<br>일자 |
| | 취득일 | 07/10/00 | | 체류<br>자격 | 085 |

| 추기사항 | | | |
|---|---|---|---|
| 심 사 란 | 접수자 | 심사자 | 발급자 |
| | B | | |

※ 작성하시기 전에 뒷면에 기재된 유의사항 및 영문성명 기재요령을 읽어보시기 바랍니다.

210㎜×297㎜(보존용지 120g/㎡)

서울지방법원 북부지원

| 1996. 6. 28. 판결선고 | 인 |
|---|---|
| 1996. 6. 28. 원본영수 | |

제 1 형 사 부

판          결

사       건       96 고합 67   가. 살인

나. 업무상횡령

피 고 인      1. 가.   김      창      섭(미국명: 데이비드 김), 무직

███████████████

주거   825 사우스 그라마시 드라이버 엘에이 켈리포

니아 90011 미국

본적   대한민국 이하 불상

2. 가.나.   홍      종      준, 택시회사 전무

550228 - 1173914

주거   수원시 팔달구 우만동 우만아파트 403동 106호

본적   서울 동대문구 용두동 187

3. 김      기      봉, 운전사

███████████████

- 1 -

주거   수원시 장안구 화서동 95의 9

본적   경기 이천군 호법면 동산리 346

검      사      박 길 룡, 조 영 태

변  호  인      변호사  고 광 우(피고인들을 위하여)

변호사  이 상 완(피고인 홍종준, 김기봉을 위하여)

주      문      1. 피고인을 김창섭을 사형에, 피고인 홍종준을 징역 15년에,

피고인 김기봉을 징역 10년에 각 처한다.

2. 이 판결 선고전의 구금일수 140일씩을 피고인 홍종준, 김기

봉에 대한 위 각 형에 산입한다.

3. 압수된 과도 1자루(증제2호)를 피고인들로부터 몰수한다.

이      유

범 죄 사 실      1. 피고인들의 살인행위 부분

가. 피고인들의 경력

피고인 김창섭은 6세 때인 1974.경 부모를 따라 미국 로스엔젤레스로 이민을  간 재미

교포로서 1990.6.경 로스엔젤레스 소재 피어스 칼리지 비즈니스과를 졸업하고 염색공장 등

을 전전하는 등 일정한 직업이 없는 자, 피고인 홍종준은 1989. 8. 29.경부터 형인 공소외

홍종근이 경영하던 수원시 권선구 오목천동 782의 1 소재 부광운수합자회사(이하 부광운수

- 2 -

라 한다)에 근무하여 오다가 위 홍종근이 신장수술 후유증 치료차 미국으로 출국한 이후인

1994. 8. 경부터 위 부광운수의 전무로 임명되어 위 홍종근의 지시를 받아 위 부광운수의 제

반업무를 총괄하는 자, 피고인 김기봉은 1988. 1. 1. 경부터 위 부광운수의 운전사로 근무

하여 오면서 위 부광운수 노동조합장을 역임하다가 1995. 9. 28. 경 휴직한 자이다.

　　나. 피고인들의 이 사건 살인행위 공모과정

　　　(1). 위 홍종근은, 1986. 11. 21. 재혼한 처인 피해자 심유자(여, ▇▇▇▇생)에

게 자신과 다른 여자들 사이의 부정행위가 발각되어, 1994. 12. 26. 피해자로부터 달세,

상습도박 등의 혐의로 청와대 및 대검찰청에 진정을 당한데 이어, 1995. 1. 28. 서울지방

법원 의정부지원에 이혼 및 위자료, 재산분할 명목으로 금 52억원의 지급을 구하는 이혼등

청구소송을 제기당하자, 피해자에 대한 증오심을 느끼고 아울러 피해자가 청구하는 돈을

지급하지 아니하기 위해 아예 피해자를 살해하기로 마음먹고, 1995년 여름경 전처인 공소

외 이실자와 자신의 외사촌인 공소외 전봉진에게 금 8,000,000원을 교부하여 피해자를 살

해하여 달라고 의뢰하기도 하였으나 동인들이 그 실행을 계속 미루자, 1995. 10. 23.

23:00경 미국에서 피고인 홍종준의 집으로 전화를 하여 동 피고인에게 "심유자가 52억원에

달하는 위자료 등을 청구하고 상습도박등으로 진정을 하였으니 죽여버리겠다. 그냥 두면

내 아들들이 거지가 될 것 같다. 심유자의 집 약도와 사진을 구해두라"고 지시하였다.

　　　(2). 이에 피고인 홍종준은 다음 날 점심시간 위 부광운수 구내식당에서 피고인 김

- 3 -

기봉을 만나 동 피고인에게 위 홍종근의 지시내용을 그대로 말해 주고, 피고인 김기봉은

위 부광운수가 사실상 퇴직한 자신에게 위와 같이 휴직 처리하여 장래 개인택시를 받을 수

있도록 도와주고 아울러 자신에게 매월 금 1,000,000원까지 지급하여 주는 것에 대하여 고

마움을 느끼고 있던 차에 피고인 홍종준과 위 홍종근에게 협조하면 보다 나은 배려가 있을

것으로 기대한 나머지 그들의 살인계획에 가담하기로 마음먹었으며, 피고인 홍종준, 김기

봉은 같은 날 20:00경 수원시 장안구 화서동 95의 9 소재 피고인 김기봉의 집에서 만나 동

피고인의 엘란트라 승용차를 함께 타고, 같은 날 22:00 경 위 부광운수 계열사인 거산운수

합자회사 직원으로서 피해자의 주소를 알고 있던 공소외 임복용의 집(의정부시 의정부4동

15의 230) 부근에 이르러 전화로 동인을 불러낸 다음, 동인의 찝차를 앞세우고 위 승용차

로 동인의 뒤를 따라 같은 날 23:00경 서울 강북구 수유1동 58의26 소재 피해자의 집 앞

골목길에 도착하여, 피고인 김기봉은 위 승용차 안에서 피해자의 집 위치 및 대문 등을 확

인하여 메모하고, 피고인 홍종준은 다시 자신의 집으로 돌아와 위 홍종근과 피해자의 결혼

식 사진 중에서 피해자의 상반신 부분을 손으로 찢어내어 사진을 확보한 후, 이를 위 홍종

근에게 전화로 보고하였다.

　　(3). 한편 그 이전인 같은 해 10월 초순경 위 홍종근은 미국에서 피고인 홍종준의

집으로 전화를 하여 동 피고인에게 "1억원을 들여서라도 사람을 사서 심유자를 죽여 버려

라"고 지시하고, 피고인 홍종준은 그 지시에 따라 그 무렵 수원시 권선구 세류동 소재 돌

- 4 -

반 호프집에서 피고인 김기봉을 만나 동 피고인에게 위 홍종근의 지시내용을 구체적으로

알려주면서 피해자를 살해할 사람을 물색해 달라고 부탁하고, 피고인 김기봉은 피고인 홍

종준의 부탁에 따라 그 무렵 같은 동 소재 신촌 갈비집에서 공소외 김만중을 만나 사람을

살해하여 줄 수 있는지 여부를 확인한 다음, 동인이 이를 승락하자 동인을 피고인 홍종준

에게 소개하여, 같은 달 11월 초순경 경기 화성군 소재 철보산 기도원 부근의 상호불상의

음식점에서 피고인 홍종준, 김기봉, 위 김만중이 합석한 가운데 피고인 홍종준이 위 김만

중에게 심유자의 살해를 부탁하자 위 김만중이 "서울에 있는 애들을 시켜 교통사고를 위장

하여 살해하겠으니 그 대가로 변호사 선임비용 2,000만원을 포함한 1억 2,000만원을 달라"

고 하면서 이를 승락하여 살인을 음모한 후, 피해자를 살해하려 하였으나 같은 달 24일 위

김만중이 공무집행방해등죄로 수원 남부경찰서에 구속되는 바람에 그 뜻을 이루지 못하게

된 적이 있었는데, 위 홍종근은 위 두번의 살해기도가 실패로 돌아가자 미국에서 활동하

는 범죄조직을 동원하여서라도 위 심유자를 기필코 죽이겠다고 마음을 먹고, 같은 해 12월

일자불상경 미국 로스앤젤레스에서 그 곳에 암약하는 폭력조직 워칭(Watching)파의 조직원

으로서 중국계 미국인인 일명 티(T)에게 위 심유자의 살해를 의뢰하고, 위 티(T)는 다시

같은 달 27일경 미국 로스앤젤레스 드라이버 그라마시 사우스 825 소재 피고인 김창섭의

집에서 동 피고인에게 "사람 1명을 살해해 주면 사례비로 30,000달러를 주겠다"고 제의하

여 피고인 김창섭이 이를 승락하고, 위 티(T)와 역시 위 폭력조직의 조직원인 공소외 홍수

Footer page number

영이 1996. 1. 3. 경 피고인 김창섭의 집으로 찾아가 동 피고인에게 "먼저 한국으로 들어

가 김포공항에서 기다리고 있다가 그 곳에서 홍수영을 만나 안내를 받아 일하라"고 지시하

면서 착수금 명목으로 1,500달러를 지급하자 피고인 김창섭은 위 돈을 받으면서 같은 달 5

일 09:00경에 로스앤젤레스에서 출발하는 항공편으로 한국으로 들어가겠다고 약속하고, 한

편 위 홍종근은 같은 달 5일 23:00경 피고인 홍종준의 집으로 전화를 걸어 동 피고인에게

"내일 오후 5시경에 미국에서 사람 2명이 들어가니 김길동이라는 팻말을 들고 김포공항 국

제선 청사 입국장 로비에 있으면 그 사람들이 찾아올 것이다. 돈 2,000,000원 및 심유자의

사진을 가지고 나가서 그 사람들에게 전달하고 아울러 국내에서 활동하는데 필요한 제반

지원을 하라"는 취지로 지시하고, 위 지시를 받은 피고인 홍종준은 다시 같은 달 6일

14:00경 위 홍종근의 차남으로서 그 정을 모르는 공소외 홍순민의 집(수원시 장안구 정자2

동 44의 16)에서 피고인 김기봉에게 위와 같은 지시내용을 알려주면서 "미국에서 오는 사

람들에게 살해자금과 심유자의 사진을 전달해주고 심유자의 집을 가르쳐 주라"고 지시하

여, 이에 따라 피고인 김기봉이 뒤에 보는 바와 같이 수 회 피고인 김창섭과 위 홍수영을

만나 자금등을 전달하는 등, 피고인들은 위 심유자를 살해하기로 공소외 홍종근, 티(T),

홍수영과 순차적으로 공모공동하였다.

　　다. 피고인들을 비롯한 공범들의 각 역할 분담내용

　　　(1). 피고인 홍종준은 위 홍종근과 수시로 전화연락을 하면서 동인의 지시에 따라

- 6 -

1996. 1. 6. 14:00경 위 홍순민의 집에서 위와 같이 피고인 김기봉에게 피해자의 사진과

살해자금 2,000,000원을 주면서 이를 위 홍수영에게 전달하도록 하고, 같은 달 7일경 피고

인 김기봉에게 전화를 하여 피고인 김창섭, 위 홍수영을 만나 피해자의 집을 안내하도록

한 것을 비롯하여, 피고인 김기봉에게, 같은 달 12일 13:00경 위 부광운수 응접실에서 위

홍수영에게 전달하라고 하면서 같은 명목으로 금 2,000,000원을, 같은 달 중순경 같은 곳

에서 피고인 김창섭에게 전달하라고 하면서 같은 명목으로 금 1,000,000원을 주고, 같은

달 하순 12:00경 같은 곳에서 위 홍수영한테 전달하라고 하면서 범행에 필요한 위 부광운

수 소유의 경기 2브 3410 프라이드 베타 승용차 1대와 살해자금 명목으로 금 1,500,000원

을 주고, 같은 달 27일 16:00경 같은 곳에서 역시 위 홍수영에게 전달하라고 하면서 같은

명목으로 금 1,000,000원을 주고, 같은 해 2. 2. 13:00경 같은 곳에서 피고인 김창섭에게

전달하라고 하면서 같은 명목으로 금 500,000원을 주었다.

(2). 피고인 김기봉은 피고인 홍종준으로부터 위와 같은 지시를 받고, 같은 해 1.

6. 17:00경 김포공항 국제선 청사 입국장 로비에서 백지에 '김길동'이라고 기재하여 들고

있다가 이를 보고 찾아온 위 홍수영에게 살해자금 2,000,000원을 전달하고, 같은 달 7일

16:30경 서울 강북구 미아동 소재 대지극장 앞 노상에서 위 홍수영과 피고인 김창섭을 만

나 피고인 김창섭에게 피해자의 사진을 전달하고 또 피고인 김창섭과 함께 택시를 타고 피

해자의 집 부근에 도착하여 피해자의 집도 가르쳐 주고, 같은 달 12일 15:00경 서울 강남

- 7 -

구 압구정동 소재 안세병원 정문 앞에서 위 홍수영에게 살해자금 2,000,000원을 전달하고,

같은 달 중순 15:00경 서울 강북구 미아동 소재 빅토리아호텔 내 호실 불상 객실에서 피고

인 김창섭에게 피해자의 집 주소, 피해자의 세피아 승용차 번호 및 색상 등을 적어주면서

같은 명목으로 금 1,000,000원을 전달하고, 같은 달 하순 14:00경 서울 남산 소재 타워호

텔 주차장에서 위 홍수영을 만나 위 프라이드 베타 승용차 및 살해자금 1,500,000원을 전

달하고, 같은 달 27일 18:00경 위 대지극장 앞에서 위 홍수영에게 같은 명목으로 금

1,000,000원을 전달하고, 같은 해 2. 2. 14:00경 수원시 소재 동수원호텔 커피숖에서 피고

인 김창섭에게 같은 명목으로 금 500,000원을 전달하였다.

　　　(3). 위 홍수영은 1996. 1. 6. 16:58경 대한항공 017기 편으로 김포공항을 통하여

입국하여 위와 같이 미리 마중나와 있던 피고인 김기봉을 만나 살해자금 2,000,000원을 전

달받고 동 피고인을 돌려보낸 다음, 미리 도착하여 그곳 대합실에서 기다리고 있던 피고인

김창섭을 만나 호텔로 가는 택시안에서 위 금원 중 1,000,000원을 동 피고인에게 살해자금

명목으로 교부하고, 그후 같은 달 13일경 출국하였다가 다시 같은 달 22일경 입국하여, 같

은 달 하순경 역시 피고인 김기봉으로부터 전달받은 살해자금 중 1,000,000원과 위 프라이

드 베타 승용차를 피고인 김창섭에게 교부하고, 다시 같은 달 29일경 출국하였다가 같은

해 2. 7. 19:15경 아시아나항공 201기 편으로 김포공항을 통하여 재입국한 다음, 피고인

김창섭이 투숙하고 있던 서울 강북구 미아 3동 소재 우성장여관으로 전화를 걸어 같은 날

- 8 -

24:00경 피해자의 집 부근에 있는 수유시장 입구에서 피고인 김창섭을 만나 "이번이 마지막 기회다. 내일 아침 8시 반까지 다시 이 곳으로 나오라"하면서 범행을 독촉하고, 같은 달 8일 08:30경 위 수유시장 앞에서 피고인 김창섭을 만나 함께 피해자의 집 대문이 보이는 곳에 위 프라이드 베타 승용차를 세워둔 후 차 안에서 위 심유자가 나오기를 기다리고 있던 중 대문을 열고 나온 피해자를 발견하고, 피고인 김창섭에게 "나왔다. 빨리가서 해치우라"고 지시하였다.

(4). 피고인 김창섭은 1996. 1. 3경 미국 로스엔젤레스 한인타운에 있는 상호불상의 여행사에서 위 홍수영등으로부터 받은 돈으로 대한항공 왕복 비행기표를 구입한 후, 같은 달 6일 15:21경 대한항공 061기편으로 김포공항을 통하여 입국하여 그곳 대합실에서 위 홍수영을 만나 위와 같이 호텔로 가는 택시 안에서 동인으로 부터 살해자금 명목으로 금 1,000,000원을 교부받은 외 같은 달 하순경 동인으로부터 살해자금 1,000,000원과 위 프라이드 베타 승용차를 교부받고, 피고인 김기봉으로부터는 위와 같이 피해자의 집을 안내받고 피해자의 사진과 2회에 걸쳐 살해자금 1,500,000원을 교부받는 등 하면서, 같은 달 9일 12:00경 남대문시장에서 범행에 사용할 식도 1자루(칼날길이 약 25cm) 및 과도 1자루(칼날길이 약 20cm, 증제2호)를 구입한 후, 서울시내의 호텔, 여관 등을 전전하면서 그 무렵부터 1996. 2. 초순경까지 계속하여 피해자의 집 주위를 맴돌며 소포배달원으로 가장하거나, 또는 피해자의 화장실 쪽 유리창문을 절단하여 침입하는 방법으로 피해자에게 접근하려 하

는 등 살해의 기회를 엿보았는데, 세들어 사는 다른 사람이 소포물을 대신 수령하려 하거나 화장실 창문 쪽에서 이상한 소리가 나는 것을 들은 피해자가 화장실 불을 켜는 바람에 침입을 실패하는 등의 사유로 그 뜻을 이루지 못하고 있던 중, 같은 달 2월 초순 경 미국의 위 티(T)로부터 "왜 빨리 해치우지 않고 돈만 쓰고 있느냐. 2월 8일은 피해자가 집에서 나오니 아침부터 기다리고 있다가 해치우라"는 독촉을 받고 같은 달 6일경부터 피해자의 집과 가까운 서울 강북구 미아 3동 소재 우성장여관 203호실에 투숙하고 있던 중, 위와 같이 위 홍수영을 만나 동인으로부터 다시 범행 실행을 독촉받고 같은 달 8일 08:30 경부터 위 홍수영과 함께 피해자의 집 부근에 세워 둔 위 프라이드 베타 승용차 안에서 위 과도 및 식도를 각 신문지로 싸서 과도는 양말 속에, 식도는 품 속에 감춘 채 피해자가 집 밖으로 나오기를 기다리고 있다가, 같은 날 12:30경 집 대문 앞에 쌓인 눈을 치우려고 대문을 열고 나오는 피해자를 발견한 위 홍수영으로부터 "나왔다. 빨리가서 해치우라"는 지시를 받고 열린 대문을 통하여 피해자의 뒤를 따라 들어가 그곳 마당에서 주먹으로 피해자의 얼굴을 1회 강타하여 그곳 바닥에 넘어뜨린 다음, 피해자의 몸 위에 올라타 위 식도로 목, 머리, 옆구리 등을 13회 가량 마구 찔러 즉석에서 외경동맥절단에 의한 실혈로 사망케 하여 동녀를 살해하였다.

2. 피고인 홍종준의 업무상횡령행위 부분

    피고인 홍종준은 위 홍종근과 공모하여,

- 10 -

1994. 8.경부터 위 부광운수의 전무로 재직하면서 위 홍종근의 지시를 받아 위 부

광운수의 수입금을 관리하는등 제반 업무를 총괄하면서 위 부광운수의 금원을 업무상 보관

중, 1996. 1. 5. 23:00경 동 피고인의 집에서 위 홍종근으로부터 "심유자를 죽이기 위하여

미국에서 사람 2명을 보낼테니 그 사람들에게 필요한 경비등을 지원 해주라"는 취지의 전

화지시를 받고, 같은 달 6일 14:00경 위 홍순민의 집에서 위 부광운수의 금원 중 금

2,500,000원을 피고인 김기봉에게 교부하면서 그 중 금 2,000,000원은 피해자를 살해할 목

적으로 입국하는 위 홍수영등에게 전달하도록 하고, 나머지 금 500,000원은 피고인 김기봉

에게 동 피고인의 수고비로 사용하게 한 것을 비롯하여, 그 무렵부터 같은 해 2. 2. 까지

별지 범죄일람표 기재와 같이 총 6회에 걸쳐 위 부광운수의 금원 합계 금 8,500,000원을

임의 소비하여 이를 횡령하였다.

증거의 요지        판시 각 사실은,

1. 피고인들의 이 법정에서의 각 일부 진술

1. 증인 심덕수, 홍순민의 이 법정에서의 각 일부 진술

1. 검사 작성의 피고인들에 대한 각 피의자신문조서의 각 일부 진술기재

1. 검사 작성의 피고인 홍종준, 김기봉에 대한 각 진술조서의 각 진술기재

1. 검사 작성의 오승환, 정순이에 대한 각 진술조서의 각 진술기재

1. 사법경찰관 사무취급 작성의 전명숙에 대한 각 진술조서의 각 진술기재

1. 사법경찰관 작성의 검증조서의 기재

1. 수사기록 제2책 제1권 제532장에 편철된 금전출납부의 기재

1. 사법경찰리 작성의 1996. 2. 8. 압수조서의 일부 기재

1. 사법경찰리 작성의 각 1996. 2. 9.자 압수조서(수사기록 제2책 제1권 제20장, 제22

   장), 1996. 2. 11.자 압수조서의 각 기재

1. 압수된 과도 1자루(증제2호)의 현존

1. 의사 오경백 작성의 사체검안서의 기재

1. 의사 이윤성 작성의 부검감정서의 기재

1. 국립과학수사연구소장 작성의 감정의뢰회보 및 감정의뢰추가회보의 각 기재

   등을 종합하여 이를 인정할 수 있다.

법령의 적용    1. 범죄사실에 대한 해당법조

              피고인들의 판시 살인의 점은 각 형법 제250조 제1항, 제30조에,

피고인 홍종준의 판시 업무상횡령의 점은 형법 제356조, 제355조 제1항, 제30조에 각

해당함.

2. 형의 선택

    피고인 김창섭의 판시 살인죄에 대하여는 사형을, 피고인 홍종준, 김기봉의 판시

각 살인죄에 대하여는 각 유기징역형을, 피고인 홍종준의 판시 업무상횡령죄에 대하여

Case 2:16-cv-07028-JVS-PLA   Document 11   Filed 09/19/16   Page 56 of 159   Page ID #:56

는 징역형을 각 선택함.

3. 경합범 가중

피고인 홍종준의 판시 각 죄는 형법 제37조 전단의 경합범이므로 형법 제38조 제1

항 제2호, 제50조에 의하여 형이 더 무거운 판시 살인죄에 정한 형에 경합범 가중.

4. 선고형의 결정

피고인 김창섭을 사형에, 피고인 홍종준을 징역 15년에, 피고인 김기봉을 징역 10

년에 각 처함.

5. 미결구금일수 산입

피고인 홍종준, 김기봉에 대하여 형법 제57조를 적용함.

6. 몰수

압수된 과도 1자루(증제2호)는 피고인들의 판시 살인행위에 제공되려던 물건으로

서 범인 이외의 자의 소유에 속하지 아니하므로 형법 제48조 제1항 제1호를 적용하여

피고인들로부터 이를 몰수함.

피고인 홍종준, 김기봉의 변호인들의 주장에 대한 판단          동 피고인들의 변호인

들은, 피고인 홍종준

은 위 홍종근의 지시에 따라 피고인 김기봉을 시켜 피고인 김창섭등에게 숙박비를 제

공하고 피해자의 집주소를 알려 주게 하는 등의 심부름만을 했을 뿐 위 홍종근과 피해

- 13 -

자의 살해를 논의한 바도 없고, 피고인 김창섭, 위 티(T), 홍수영과 만난 사실도 없으며, 피고인 김기봉 역시 피고인 홍종준의 부탁으로 피고인 김창섭등에게 한국에서의 숙박비등을 전달하고, 집주소를 알려 주는 등의 심부름을 하였을 뿐 피해자의 살해에 관하여 위 홍종준, 홍종근, 홍수영, 피고인 김창섭과 아무런 논의도 한 바 없고, 또한 피고인 김창섭과 위 홍종근 사이에도 직접적인 의사연락이 없으므로 결국 피고인 홍종준, 김기봉의 행위는 살인방조행위에 불과하여 살인행위의 공동정범으로 처벌할 수는 없다고 주장한다.

그러므로 살피건대, 앞서 본 바와 같이 피고인 홍종준, 김기봉 모두 1995. 11. 초순경 위 김만중을 만날 때부터 이미 피해자의 살해에 관하여 상호 논의가 있었고, 이 사건 범행에 있어서도 피고인 홍종준은 위 홍종근과 수시로 연락을 하며 그 지시에 따라 국내에서 범행에 관련된 일을 총괄하면서 피고인 김기봉으로 하여금 피고인 김창섭 등에게 살해자금, 차량, 피해자 사진 등을 건네주게 함으로써 위 홍종근과 사이에 피해자의 살해행위에 대한 공모를 하였음이 명백하고, 피고인 김기봉 역시, 피고인 홍종준의 지시에 따라, 피해자를 살해하러 온 피고인 김창섭등에게 살해자금과 차량을 건네주고 피해자의 집을 안내하는 등 국내 사정에 어두운 등 피고인 등으로 하여금 피해자를 살해할 수 있도록 하는 등 살해과정에 중요한 역할을 담당하였던 것이어서 결국 피고인 홍종준, 김창섭 및 위 홍종근과도 순차적으로 또한 적어도 묵시적으로 피해자

- 14 -

살해행위에 공모하여 가담하게 된 것으로 보아야 할 것이며, 또한 앞서 인정한 사실관계에 비추어 피고인 김창섭과 위 홍중근, 티(T) 사이에도 피해자를 살해한다는 점에 대한 의사연락이 순차 있었다고 보기에 충분하므로 결국 피고인들과 위 홍중준, 티(T), 홍수영 사이의 공모관계는 모두 인정된다.

따라서 변호인들의 위 주장은 모두 이유없다.

양 형 이 유        1. 피고인 김창섭에 대하여,

가. 피고인 김창섭은 4남 1녀 중 막내로서 6세 때 사업에 실패한 부모를 따라 미국으로 이민을 가 그 곳에서 소년기를 보내며, 중학교에 다닐 무렵 어머니가 뇌졸중으로 사망하기도 하고, 피어스 칼리지 비즈니스과를 졸업한 후 일정한 직장없이 전전하는 등 순탄하지 못한 청소년기를 보낸 전력이 있다.

나. 그러나, 동 피고인은 앞서 본 바와 같이 폭력 조직원인 티(T)로부터 살해의 대가를 제의받고 피해자와는 일면식도 없음에도 불구하고(국내에 들어오기 전까지는 살해대상이 누구인지도 몰랐다), 오직 돈이 생긴다는 욕심만으로 이를 받아들여, 바다 건너 먼 이곳 대한민국에 입국하여 공범들로부터 살해자금등을 건네받으면서 1996. 1. 6.경부터 이 사건 범행일인 같은 해 2. 8.까지의 장기간에 걸쳐 계속하여 피해자의 집 주위에서 맴돌며 기회를 엿보던 중(그 중에는 소포 배달원으로 가장하여 피해자에게 접근을 시도하였으나 세들어 사는 다른 사람이 소포물을 대신 수령하려 하여 실패하

- 15 -

고, 밤중에 화장실 쪽 창문의 유리창을 잘라 내고 침입하려 하다가 피해자가 화장실

불을 켜는 바람에 실패하였음은 앞서 본 바와 같다), 마침내 위 범행일시에 집 대문

앞의 눈을 쓸려고 나온 피해자를 발견하고, 범행 후 비행기편으로 미국으로 건너가 버

리면 그만이라는 생각아래 대담하게 대낮에 식칼로 피해자의 목 부위등을 13회 가량

무참히 찔러 피해자를 현장에서 실혈로 사망하게 하는 등 물질만능적 사고로 수단과

방법을 가리지 않고 장기간 계획적으로 살해를 시도하여 결국 무고한 사람을 살해하고

말았음을 알 수 있다.

　　다. 동 피고인의 위와 같은 범행내용, 범행의 동기 및 그 결과 등 제반사정을 종합

하여 볼 때 그 죄책은 심히 중대하고, 또한 형의 균형이나 범죄의 일반·특별 예방적

견지에 비추어 보더라도 극형을 받아야 마땅한 것으로 본다.

　　2. 피고인 홍종준, 김창섭에 대하여,

　　가. 동 피고인들은 위 홍종근의 동생 또는 직원으로서 동인이 위 김만중을 시켜

피해자의 살해를 기도할 때부터 깊숙이 관여해 왔고, 이 사건에서도 국내사정에 어두

운 피고인 김창섭등에 대한 실질적 지원을 하는 등 이 사건 범행에 있어 중요한 역할

을 담당하였다.

　　나. 피고인 홍종준은 형의 명을 거역할 수 없는 관계로, 피고인 김기봉은 위 부

광운수 직원으로서의 위 홍종준과의 관계등으로 인하여 어쩔 수 없이 가담하였고, 피

해자에게 피신하라고 알려 준 바도 있다고 주장한다.

다. 그러나 가사 동 피고인들에게 범행가담 경위에 있어 그와 같은 사정이 있다 하더라도, 사람을 살해하는 극악한 범행에 실질적으로 가담하여 결국 그 실행에 이르게 하였으며, 또한 피고인 김기봉은 피해자에게 피신하라고 알려 준 후에도 피고인 김창섭을 만나 자금 및 차량제공을 하는 등 살해지원을 계속하였던 것으로서 그에 상응하는 중벌을 면할 수 없다.

라. 동 피고인들의 위와 같은 범행내용, 범행 가담 경위, 가담의 정도, 역할 분담 내용, 위 홍종근과의 관계, 기타 이 사건에 관련된 제반사정을 고려하여 위와 같이 선고형을 정한다.

이상의 이유로 주문과 같이 판결한다.

1996.    6.    28.

재 판 장    판  사    송 홍 섭 _____

판  사    강 선 명 _____

- 17 -

판 사    최 은 배 _____

범죄일람표

| 순위 | 일    시 | 장       소 | 횡령액 | 소 비 내 역 |
|---|---|---|---|---|
| 1 | 1996. 1. 6.경 | 수원시 장안구 정자2동 44의 16 소재 위 홍순민의 집 | 2,500,000원 | 2,000,000원은 살해자금으로 위 홍수영에게 전달케 하고, 500,000원은 피고인 김기봉의 수고비로 교부함. |
| 2 | 같은 해 1. 12. 경 | 수원시 권선구 오목천동 782의 1 위 부광운수 응접실 | 2,000,000원 | 살해자금으로 위 홍수영에게 전달케 함 |
| 3 | 같은 달 중순경 | 〃       〃 | 1,000,000원 | 살해자금으로 피고인 김창섭에게 전달케 함 |
| 4 | 같은 달 하순경 | 〃       〃 | 1,500,000원 | 살해자금으로 위 홍수영에게 전달케 함 |
| 5 | 같은 달 27일경 | 〃       〃 | 1,000,000원 | 〃       〃 |
| 6 | 같은 해 2. 2.경 | 〃       〃 | 500,000원 | 살해자금으로 피고인 김창섭에게 전달케 함 |

대　법　원

제 1 부

판　결

| 1997.　3.　11. 판결선고 | 인 |
| 1997.　3.　11. 원본영수 | |

사　　건　　96도3104　　살　인

피　고　인　　김　창　섭(미국명:데이비드 김), 무직

▉▉▉▉▉▉▉▉▉▉▉

주거　825 사우스 그라마시 드라이버 엘에이
캘리포니아　90011 미국

본적　대한민국 이하 불상

상　고　인　　피　고　인

변　호　인　　변호사 (국선) 조　희　래

원 심 판 결　　서울고등법원 1996. 11. 13. 선고 96노1459 판결

주　　문　　상고를 기각한다.

이　　유　　피고인과 국선변호인의 상고이유를 함께 본다.

기록에 비추어 살펴보면, 원심이 피고인의 이 사건 범행이 공소외

티(T)의 저항할 수 없는 폭력이나 생명·신체에 대한 위험을 방어할 방법이 없는 협박에

- 1 -

의하여 저질러진 것이라고 인정할 수 없다고 한 판단은 수긍할 수 있고, 거기에 상고이

유로 주장하는 바와 같이 채증법칙에 위반하여 사실을 오인한 위법이 있다 할 수 없다.

그리고 피고인이 이 사건 범행을 저지르게 된 동기, 범행의 수단과 방법, 그 결

과, 범행 후의 정황, 피고인의 성장과정, 학력, 경력 등 양형의 조건이 되는 모든 사정

을 종합하여 볼 때, 원심이 피고인에 대하여 무기징역형을 선고한 것은 적정하다고 생각

되고, 결코 너무 무거워 부당하다고는 보이지 아니한다.

그러므로 상고를 기각하기로 하여 관여 법관의 일치된 의견으로 주문과 같이 판

결한다.

1997.    3.    11.


재 판 장    대 법 관    이 임 수 ——————————————


대 법 관    최 종 영 ——————————————


주    심    대 법 관    정 귀 호 ——————————————

- 2 -

대 법 관    이  돈  희 ----------------------------------------

# 서 울 고 등 법 원

## 제 6 형 사 부

## 판       결

| | |
|---|---|
| 사      건 | 2002노2931   가. 살인 |
| | 나. 업무상횡령 |
| 피 고 인 | 홍종근 ██████  무직 |
| | 주거  의정부시 금오동 314-8 |
| | 본적  의정부시 가능동 181 |
| 항 소 인 | 피고인 |
| 검      사 | 정성복 |
| 변 호 인 | 변호사 성윤환, 박성철 |
| 원 심 판 결 | 서울지방법원 북부지원 2002. 10. 18. 선고 2002고합271 판결 |
| 판 결 선 고 | 2003. 1. 28. |

## 주       문

원심판결을 파기한다.

피고인을 징역 12년에 처한다.

원심판결 선고전의 구금일수 120일을 위 형에 산입한다.

- 1 -

이        유

## 1. 항소이유의 요지

가. 사실오인 및 법리오해(판시 살인죄에 대하여)

피고인은 1995. 12.경 홍수영에게 피해자 심유자를 만나 피고인에 대한 진정과 이혼소송을 취하하고 피고인과 함께 살도록 설득하고 만일 이에 불응할 경우 해치워도 좋다고 부탁한 사실은 있으나 홍수영이 피해자를 진짜로 살해하리라고는 생각하지 못하였고 또한 피고인으로서는 티나 김창섭과 이 사건 살인행위를 공모한 사실이 없었으므로 피고인을 살인교사죄로 처벌함은 별론으로 하더라도 살인죄의 공동정범으로는 처벌할 수 없는데도 불구하고 원심은 피고인을 살인죄의 공동정범으로 처벌한 위법을 범하였다.

나. 양형부당

피고인에게 별다른 처벌전과가 없는 점, 피해자의 유족과 원만히 합의한 점, 이 사건 범행에 이르게 된 경위에 있어서 피해자에게도 일부 잘못이 있는 점, 피고인이 현재 63세의 고령인 점 등에 비추어 원심이 피고인에 대하여 선고한 형이 너무 무거워서 부당하다.

## 2. 항소이유에 대한 판단

가. 사실오인 및 법리오해(판시 살인죄에 대하여)

공모공동정범에 있어서의 공모는 법률상 어떠한 정형을 요구하는 것이 아니고 수인이 순차적으로 또는 암묵적으로 서로의 의사가 상통하여 의사의 결합이 이루어지면 되고 사전에 반드시 어떠한 모의과정이 있어야 하는 것은 아니며, 범의 내용에 관하여 포괄적 또는 개별적인 의사의 연락이나 인식이 있었다면 전원에 관하여 공모관계가 성

- 2 -

립된다 할 것이고 이러한 공모가 이루어진 이상 실행행위에 직접 관여하지 아니한 자

라도 다른 공모자의 행위에 대하여 공동정범으로서 형사적 책임을 지는 것인바, 원심

이 적법하게 채택, 조사한 증거들에 의하면, 피고인은 1995. 10. 23. 미국에서 한국에

있는 동생인 홍종준에게 전화를 걸어 '심유자가 위자료 청구소송을 제기하고 청와대

등에 진정을 하였으니 죽여버리겠다. 그냥 두면 내 아들들이 거지가 될 것 같다. 심유

자의 집 약도와 사진을 구해달라'고 지시하고, 이어 미국에서 활동하는 범죄조직을 동

원하여서라도 피해자를 살해하기로 마음먹고 1995. 12.경 미국 로스엔젤레스에서 활동

하는 폭력조직인 와칭(Watching)파의 조직원으로서 중국계 미국인인 일명 티 (T)에게

피해자의 살해를 의뢰하고, 위 티는 이를 승낙한 뒤 다시 미국 로스엔젤레스 소재 김

창섭의 집에서 위 김창섭에게 '한 사람을 살해하면 사례비로 3만 달러를 주겠다'고 제

의하여 위 김창섭을 끌어들인 사실, 그 후 피고인은 1996. 1. 5.경 한국에 있는 홍종준

에게 전화를 걸어 '내일 오후 5시경에 미국에서 사람 2명이 들어가니 돈 200만원 및

심유자의 사진을 가지고 나가서 그 사람들에게 전달하고 아울러 국내에서 활동하는데

필요한 제반 지원을 하라'고 지시하고, 이에 따라 홍종준은 수시로 피고인과 연락을 취

하면서 김기봉으로 하여금 김창섭 및 와칭파의 폭력조직원인 홍수영을 만나 필요한 자

금을 전달케 하고 피해자의 사진을 건네주게 한 것을 비롯하여 범행에 필요한 자동차

및 심유자의 사진도 제공케 한 사실, 한편 김창섭은 위와 같이 김기봉의 도움을 받아

피해자의 집 주위를 맴돌다 1996. 2. 8. 원심 판시와 같이 피해자를 살해하게 된 사실

을 인정할 수 있으므로 위 인정사실에 의하면, 피고인과 김창섭과 사이에는 순차적 또

는 암묵적으로 서로의 의사가 상통하여 이 사건 살해 범행에 대한 포괄적 또는 개별적

인 의사의 연락이나 인식이 있었다고 볼 것이고, 앞서 본 바와 같은 피고인의 이 사건

범행에의 관여 정도 즉 직접 와칭파의 폭력조직원인 티에게 살해를 의뢰하는 동시에 한국에 있는 홍종준과 수시로 연락을 취하면서 홍종준으로 하여금 티 및 홍수영 등에게 피해자 살해에 필요한 각종 살해자금, 차량, 피해자 사진 등을 제공하게 하고 그 경과를 수시로 보고 받은 점 등에 비추어 보면 비록 피고인이 이 사건 살해 현장에 간 일이 없다 하더라도 이 사건 살해범행을 현장에서 실행한 김창섭의 행위를 자기 의사의 수단으로 하여 살해범행을 하였다고 평가될 수 있는 살인죄의 정범성의 표지를 갖추었다고 할 것이어서 피고인을 이 사건 살해 범행에 대한 공동정범으로 처벌한 것에 어떠한 사실오인이나 법리오해의 위법이 있다고 할 수 없으므로, 위 주장은 이유 없다.

　　나. 양형부당

　　피고인이 현재 고령인 점, 피해자의 유족과 사이에 합의가 성립된 점, 반성하고 있는 점 및 그밖에 기록에 나타난 이 사건 범행의 동기, 피고인의 나이, 성행, 환경, 피해자의 나이, 직업, 피해자와의 관계 등 이 사건 양형의 조건이 되는 제반 사정들을 종합하여 보면 원심이 피고인에 대하여 선고한 형은 다소 무거워서 부당하다고 인정되므로, 위 주장은 이유 있다.

## 3. 결론

　　따라서 피고인의 항소는 이유 있으므로 형사소송법 제364조 제6항에 의하여 원심판결을 파기하고 변론을 거쳐 다시 다음과 같이 판결한다.

## 범죄사실 및 증거의 요지

　　이 법원이 인정하는 범죄사실과 증거의 요지는 원심판결 각 해당란의 기재와 같으므로, 형사소송법 제369조에 의하여 이를 그대로 인용한다.

## 법령의 적용

1. 범죄사실에 대한 해당법조

    · 살인의 점 : 형법 제250조 제1항, 제30조(유기징역형 선택)

    · 업무상횡령의 점 : 포괄하여 구 형법(1995. 12. 29. 법률 제5057호에 의하여 개정되기 전의 것) 제356조, 제355조 제1항, 제30조(징역형 선택)

1. 경합범 가중

    형법 제37조 전단, 제38조 제1항 제2호, 제50조(형이 더 무거운 판시 살인죄에 정한 형에 가중)

1. 판결선고전 구금일수 산입

    형법 제57조


                    재판장    판사    박해성    _____


                              판사    박종민    _____


                              판사    정한익    _____

# 서울지방법원 북부지원

## 제 1 형 사 부

## 판 결

| | |
|---|---|
| 사        건 | 2003고합430 살인 |
| 피  고  인 | 홍수영 ████████ 미국명 : Sam Hong),  무직 |
| | 주거  미국 일리노이주 버펄로그로브 새틴우드코트 368 |
| | 본적  서울 동작구 노량진동 119-57 |
| 검        사 | 정용수 |
| 변  호  인 | 변호사 김기수, 윤성인 |
| 판 결 선 고 | 2004. 1. 30. |

## 주 문

피고인을 징역 15년에 처한다.

이 판결선고 전의 구금일수 100일을 위 형에 산입한다.

## 이 유

**범 죄 사 실**

피고인은,

1995. 12. 일자불상경 미국 로스엔젤레스(이하 'LA'라고만 한다)에 있는 크라운호텔

커피숍에서 홍종근을 만나 위 홍종근으로부터 자신의 처인 피해자 심유자(44세)를 살해하여 주면 미화 30,000달러를 주겠다는 제의를 받고 이를 승낙한 후, LA에서 활동중인 폭력조직인 일명 '와칭(Wah Ching)'파의 조직원으로서 중국계 미국인인 타미(Tommy, 일명 T)에게 피해자 심유자의 살해를 의뢰하고 위 타미는 1995. 12. 27.경 김창섭(미국명 : David Kim)에게 "사람 1명을 살해하여 주면 사례비로 미화 30,000달러를 주겠다"라고 제의하고 위 김창섭이 이를 받아들이자, 피고인과 위 타미는, 1996. 1. 3.경 김창섭의 집으로 함께 찾아가 피고인은 위 김창섭에게 "먼저 한국으로 들어가 김포공항에서 기다리고 있다가 그곳에서 나를 만나 안내를 받아 일하라"라고 지시하면서 착수금 명목으로 미화 1,500달러를 지급하고, 위 김창섭은 피고인으로부터 위 돈을 받으면서 1996. 1. 5. 09:00경 미국 로스엔젤레스에서 출발하는 항공편으로 한국으로 들어가 피해자 심유자를 살해하겠다고 약속하는 등의 방법으로 피고인은, 위 홍종근, 위 타미, 위 김창섭과 피해자 심유자를 살해하기로 순차적으로 공모하여,

피고인은 1996. 1. 6. 16:58경 김포공항을 통하여 입국하여 홍종근의 지시에 따라 위 공항에 마중나와 있던 김기봉으로부터 살해자금 2,000,000원을 전달받고, 같은 날 미리 도착하여 그곳 대합실에서 기다리고 있던 김창섭을 만나 김창섭에게 위 돈 중 1,000,000원을 살해자금 명목으로 교부하고, 1996. 1. 13.경 미국으로 출국하였다가 1996. 1. 22.경 다시 입국하여 1996. 1. 23. 14:00경 김기봉으로부터 범행에 사용할 프라이드 승용차 1대와 살해자금 1,500,000원을 전달받아 김창섭에게 그 중 1,000,000원과 승용차를 교부하고, 1996. 1. 29. 다시 미국으로 출국하였다가 1996. 2. 7. 19:15경 재차 입국하여 서울 강북구 미아3동에 있는 우성장여관에 투숙하고 있던 김창섭을 만나 다음날인 2. 8. 10:00경에 피고인이 투숙하고 있던 빅토리아호텔 건너편 레스토랑에서 만

나기로 약속한 후, 그에 따라 1996. 2. 8. 피고인의 친구인 신관수가 운전하는 위 프라이드 승용차에 김창섭을 태우고 서울 강북구 수유동 수유시장 앞에 있는 상호불상 감자탕 집으로 가 함께 식사한 후, 피해자의 집 대문이 보이는 곳에 위 프라이드 승용차를 세우고 차안에서 피해자가 집 밖으로 나오기를 기다리고 있던 중 집 대문 앞에 쌓인 눈을 치우려고 대문을 열고 피해자 심유자가 집밖으로 나오자, 김창섭이 미리 준비한 식도 1자루(칼날길이 25센티미터) 및 꽈도 1자루(칼날길이 약 20센티미터)를 들고 차에서 내려 피해자의 뒤를 따라 열린 대문을 통하여 피해자의 집으로 들어가 그곳 마당에서 주먹으로 피해자의 얼굴을 1회 때려 그곳 바닥에 넘어뜨린 다음, 피해자의 몸 위에 올라타 위 식도로 피해자의 목, 머리, 옆구리 등을 13회 가량 마구 찔러 그 자리에서 외경동맥절단에 의한 실혈로 사망하게 함으로써 피해자를 살해한 것이다.

증거의 요지

1. 피고인의 일부 법정진술

1. 증인 김창섭, 신관수의 각 법정진술

1. 이 법원 96고합67호 사건의 제1회, 제2회 각 공판조서 중 김창섭의 각 진술기재

1. 피고인에 대한 각 검찰 피의자신문조서

1. 홍종근, 김창섭, 김기봉, 홍종준에 대한 각 검찰 피의자신문조서

1. 신관수, 홍종준, 김기봉, 정순이, 홍순민, 오승환, 전명숙, 강기호, 임복용, 홍순용에 대한 각 검찰 진술조서

1. 김창섭, 김기봉, 홍종준에 대한 각 경찰 피의자신문조서

1. 심덕수, 한상경에 대한 각 경찰 진술조서

1. 경찰 압수조서

- 3 -

1. 검증조서

1. 사체검안서, 부검감정서

**법령의 적용**

1. 범죄사실에 대한 해당법조 및 형선택

   형법 제250조 제1항, 제30조(무기징역형 선택)

1. 작량감경

   형법 제53조, 제55조 제1항 제3호(아래 양형의 이유와 같은 사정 참작)

1. 미결구금일수 산입

   형법 제57조

**양형의 이유**

　　당초 검찰이 제기한 공소사실은 피고인이 공범인 김창섭의 범행 시도가 계속하여 실패하는 등 범행이 지연되자 이 사건 범행 전날 입국하여 김창섭에게 "이번이 마지막 기회다(Last chance for you)"라고 범행을 독촉하였고, 범행 당일에는 범행현장에 동행하여 피해자가 집밖으로 나오기를 기다리다가 피해자를 발견하고는 김창섭에게 "나왔다, 빨리 해치우라"라고 범행을 직접적으로 지시하였다는 취지인바, 이 법원 96고합67호 사건기록에 의하면, 김창섭이 경찰 1회 신문에서는 자신의 단독 범행이었다고 진술하였다가 2회 신문에서부터 진술을 번복하여 법정진술시까지 일관되게 위 공소사실과 같은 취지로 진술한 사실을 인정할 수 있으나, 한편 김창섭은 이 사건 법정에 증인으로 출석하여서는 피고인이 공소사실과 같이 범행을 독촉하거나 지시한 사실이 없다고 진술하고 있고, 범행현장에 차를 운전하고 함께 간 신관수 또한 피고인이 범행을 지시한 바가 없다고 진술하고 있다.

사정이 이러하다면 김창섭의 이 부분 공소사실에 부합하는 종전의 진술은 자신의 죄책을 조금이라도 면하고 피고인에게 책임을 전가하려는 의도에서 나온 허위의 진술이라고 의심할 여지도 없다고 할 수 없다. 형사재판에 있어서 유죄의 인정은 법관으로 하여금 합리적인 의심을 할 여지가 없을 정도로 공소사실이 진실한 것이라는 확신을 가지게 할 수 있는 증명력을 가진 증거에 의하여야 할 것이고, 이와 같은 증거가 없다면 설령 피고인에게 유죄의 의심이 간다고 하더라도 피고인의 이익으로 판단할 수밖에 없다고 할 것인바, 이러한 형사법의 이념에 비추어 공소사실과 같이 피고인이 김창섭에게 범행을 강력하게 독촉하고 현장에서 지시하는 등 범죄 실행에 있어서 주도적 역할을 담당하였다는 부분에 관한 한 이를 피고인에게 불리한 양형요소로서 참작하지는 않기로 한다.

한편 피고인 및 그 변호인은 피고인이 최초에 범행을 공모하고, 김창섭에게 범행자금 등을 전달하는 등의 부분은 모두 인정하면서도 범행 당일에 이르러서는 피고인 자신은 범행을 포기하고 미국으로 돌아가자고 하였으나 김창섭이 피해자의 집 부근에 한번 더 가보자고 하여 따라간 것일 뿐 김창섭이 실제로 범행을 하게 될지는 예상하지 못하였다고 변소하므로 살피건대, 피고인이 국내 지리에 어두운 김창섭을 데리고 피해자의 집 근처인 수유시장 부근 감자탕집으로 가 함께 식사를 하였던 것으로 보이는 점, 피고인 등이 식사를 마친 후 김창섭의 범행시까지 차를 세우고 함께 있었던 장소가 피해자의 집 대문이 보이는 바로 근처의 장소였던 점 등의 사정을 종합하여 보면, 위에서 살펴본 바와 같이 피고인이 범행현장에서 김창섭에게 범행을 지시하는 등 주도적 역할을 하지는 않았다고 할지라도 적어도 김창섭과 범행을 공모하고 그 계획 하에 범행현장에 동행하여 실행행위를 분담한 것으로 판단되므로 위 변소는 이를 받아들이

지 아니한다.

　기록에 의하면, 피고인이 단지 금전적 이익을 얻을 목적으로 아무런 원한관계나 이해관계도 없는 피해자를 살해한 것으로 그 범행동기가 매우 불량한 점, 공범인 홍종근으로부터 살해를 의뢰받은 후 범행시까지 약 3개월의 기간에 걸쳐 인적·물적으로 치밀하게 준비한 계획적인 범행인 점 등을 인정할 수 있고, 이러한 피고인의 범행동기, 범행수법 및 결과, 범행 후의 정황 등 모든 사정을 종합하여 볼 때 피고인의 죄질은 매우 무겁고, 범행 전반을 통해 나타난 피고인의 반사회적 악성 또한 심각한 것으로 보이므로 피고인에 대하여 중형을 선고하지 않을 수 없다.

　다만, 피고인이 초범이고, 약 20년 전 미국에 이민을 떠나 비교적 성실히 살아오다가 1995년경 이혼과 사업실패 등의 어려움으로 인하여 범죄의 유혹에 빠지게 된 것으로 보이는 점, 피고인이 범행 직후 출국하여 7년이 넘는 도피생활을 해 오면서 정신적으로 적지 않은 고통을 받았을 것으로 판단되는 점 등 피고인에게 유리한 정상과 함께 피고인 가족과 친지들이 제출한 탄원서를 통하여 그들의 피고인에 대한 애정과 고통을 읽을 수 있는 사정을 함께 참작해 보면, 아직도 피고인을 사랑하고 있는 가족들과 친지들이 다시 밝은 빛 아래 피고인을 만날 수 있다는 희망을 꺾어버리는 중형은 가혹하다는 생각을 떨칠 수 없기에 다시 가족을 만날 수 있다는 희망이 피고인의 교정에 도움이 되기를 바라면서 주문과 같은 형을 정하기로 한다.

이상의 이유로 주문과 같이 판결한다.


　　　　　　재판장　　　판사　　　박철　　＿＿＿＿＿＿＿＿＿＿＿

판사    이상훈 _____

판사    이상우 _____

# 서 울 고 등 법 원

## 제 5 형 사 부

## 판       결

| | |
|---|---|
| 사       건 | 2004노463  살인 |
| 피  고  인 | 홍수영 (미국명 : Sam Hong, ███████ 무직 |
| | 주거  미국 일리노이주 버필로그로브 새틴우드코트 368 |
| | 본적  서울 동작구 노량진동 119-57 |
| 항  소  인 | 피고인 및 검사 |
| 검       사 | 이성욱 |
| 변  호  인 | 변호사 김기수, 윤성인 |
| 원 심 판 결 | 서울북부지방법원 2004. 1. 30. 선고 2003고합430 판결 |
| 판 결 선 고 | 2004. 6. 1. |

## 주       문

원심판결을 파기한다.

피고인을 징역 12년에 처한다.

원심판결 선고 전의 구금일수 100일을 위 형에 산입한다.

## 이       유

- 1 -

**1. 항소이유의 요지**

가. 피고인

(1) 사실오인

피고인은 홍종근의 심복인 김영훈으로부터 그가 홍종근으로부터 피해자를 살해해 줄 것을 의뢰받았다는 말을 듣고 그것을 기화로 김영훈과 함께 홍종근으로부터 돈을 뜯어내고자 모의한 사실은 있으나 피해자에 대한 살해를 모의한 사실이 없고, 그 후 김영훈이 중국인 타미(Tommy)를 통해 살인 실행행위자인 김창섭을 소개받을 때 통역을 해주고, 국내에 입국하여 김기봉으로부터 받은 프라이드 승용차를 김창섭에게 전달해 주었으며, 범행 당일 김창섭을 출국시키기 위하여 차에 태워 수유시장 근처에서 식사를 같이 한 것 외에는 실행행위에 가담한 사실이 없다. 따라서 피고인은 이 사건 살인범행에 있어서 방조범에 불과하고 공동정범으로 처벌할 수 없음에도, 원심은 피고인을 살인죄의 공동정범으로 처벌하는 위법을 범하였다.

(2) 양형부당

원심이 피고인에 대하여 선고한 형(징역 15년)은 너무 무거워서 부당하다.

나. 검사

원심이 피고인에 대하여 선고한 형이 너무 가벼워서 부당하다.

**2. 판단**

가. 피고인의 사실오인 주장에 대한 판단

2인 이상이 범죄에 공동 가공하는 공범관계에서 공모는 법률상 어떤 정형을 요구하는 것이 아니고 2인 이상이 공모하여 어느 범죄에 공동가공하여 그 범죄를 실현하려는 의사의 결합만 있으면 되는 것으로서, 비록 전체의 모의과정이 없었다고 하더라도

수인 사이에 순차적으로 또는 암묵적으로 상통하여 그 의사의 결합이 이루어지면 공모관계가 성립하고, 이러한 공모가 이루어진 이상 실행행위에 직접 관여하지 아니한 자라도 다른 공모자의 행위에 대하여 공동정범으로서의 형사책임을 지는 것이다(대법원 2003. 1. 24. 선고 2002도6103 판결 등 참조).

원심이 적법하게 조사, 채택한 증거들을 종합하면, 피고인은 1995. 12.경 미국에서 홍종근을 만나 그로부터 피해자를 살해하여 주면 미화 30,000달러를 주겠다는 제의를 받고 이를 승낙한 사실, 이어서 피고인은 폭력조직인 '와청파'의 조직원으로서 중국계 미국인인 타미에게 피해자의 살해를 의뢰하고 타미는 1995. 12. 27.경 김창섭에게 "사람 1명을 살해하여 주면 사례비로 미화 30,000달러를 주겠다"라고 제의하고 김창섭이 이를 받아들이자, 피고인과 타미는, 1996. 1. 3.경 김창섭의 집으로 함께 찾아가 피고인은 김창섭에게 "먼저 한국으로 들어가 김포공항에서 기다리고 있다가 그곳에서 나를 만나 안내를 받아 일하라"라고 지시하면서 착수금 명목으로 미화 1,500달러를 지급하고, 김창섭은 피고인으로부터 위 돈을 받으면서 한국에 가서 피해자를 살해하겠다고 약속한 사실, 그 후 피고인은 2차례 한국에 입국하여 범행에 사용할 승용차, 살해자금 등을 김기봉으로부터 전달받아 김창섭에게 건네주었고, 1996. 2. 8. 피해자의 집 근처에서 김창섭과 승용차에 동승하고 있던 중 피해자가 집밖으로 나오자, 김창섭이 원심 판시와 같이 피해자를 살해한 사실을 각 인정할 수 있는바, 위 인정사실에 의하면, 피고인은 홍종근, 타미, 김창섭과 사이에 순차적 또는 암묵적으로 서로의 의사가 상통하여 이 사건 살인범행에 대한 포괄적 또는 개별적인 의사의 연락이나 인식이 있었다고 보이고, 위 인정사실에 나타나는 피고인의 이 사건 범행에의 관여 정도에 비추어 보면, 피고인은 이 사건 살인범행을 실행한 김창섭의 행위를 자기 의사의 수단으로 하여 살

- 3 -

인범행을 하였다고 평가될 수 있는 살인죄의 정범성의 표지를 갖추었다 할 것이므로, 원심이 피고인을 이 사건 살인범행의 공동정범으로 처벌한 것은 정당하고, 거기에 사실오인 또는 법리오해의 위법이 있다고 할 수 없으므로, 피고인의 위 주장은 이유 없다.

　나. 피고인 및 검사의 각 양형부당 주장에 대한 판단

　　이 사건 범행은 치밀하게 계획된 청부살인으로 그 죄질이 극히 불량하고, 범행의 수단 및 방법이 대담하고 잔혹할 뿐만 아니라 사망이라는 중대한 결과를 초래한 점에 비추어 피고인을 엄벌에 처하여야 할 것이나, 다른 한편 피고인이 초범인 점, 이 사건 범행 후 7년 이상 장기간 도피생활을 하면서 적지 않은 정신적 고통을 받았을 것으로 보이는 점, 미국 수사관서에 자수하여 귀국하게 된 점, 이 사건 살인사건에 가담한 다른 공범들의 양형 등의 사정과 형법 제51조 소정의 제반 양형조건들을 함께 고려하면, 원심의 형량은 너무 무거워서 부당하다고 인정되므로, 이에 대한 피고인의 주장은 이유 있고, 검사의 주장은 이유 없다.

**3. 결론**

　따라서, 피고인의 항소는 이유 있으므로 형사소송법 제364조 제6항에 따라 원심판결을 파기하고 다시 다음과 같이 판결한다.

**범죄사실 및 증거의 요지**

　원심판결의 각 해당란의 기재와 같으므로 형사소송법 제369조에 따라 이를 그대로 인용한다.

**법령의 적용**

1. 범죄사실에 대한 해당법조

형법 제250조 제1항, 제30조(무기징역형 선택)

1. 작량감경

형법 제53조, 제55조 제1항 제2호(위 파기사유에서 본 정상을 참작)

1. 원심판결 선고 전의 구금일수 산입

형법 제57조

재판장    판사    이홍권    _____

판사    박평균    _____

판사    조용현    _____

대 　 법 　 원

제 　 2 　 부

판 　 결

| | |
|---|---|
| 사　　　건 | 2004도3681  살인 |
| 피 고 인 | 홍수영 (미국명 : Sam Hong, ▓▓▓▓▓▓▓  무직 |
| | 주거  미국 일리노이주 버펄로그로브 새턴우드코트 368 (서울구치소 재감중) |
| | 본적  서울 동작구 노량진동 119-57 |
| 상 고 인 | 피고인 |
| 변 호 인 | 변호사 신창언, 황도수, 이동헌 |
| 원 심 판 결 | 서울고등법원 2004. 6. 1. 선고 2004노463 판결 |
| 판 결 선 고 | 2004. 9. 3. |

주 　 문

상고를 기각한다.

상고 이후의 구금일수 중 90일을 본형에 산입한다.

이 　 유

　 1. 원심은 그 채용증거들을 종합하여, 피고인은 미국에서 홍종근으로부터 한국에 거주하는 그의 처인 피해자를 살해하여 주면 미화 30,000달러를 주겠다는 제의를 받고

- 1 -

이를 승낙한 사실, 이에 피고인은 폭력조직인 '와청파'의 조직원으로서 중국계 미국인인 타미(Tommy)에게 피해자의 살해를 의뢰하고 타미는 그 후 김창섭에게 "사람 1명을 살해하여 주면 사례비로 미화 30,000달러를 주겠다"라고 제의하여 김창섭이 이를 받아들이자, 피고인과 타미가 함께 김창섭의 집으로 찾아가 피고인이 김창섭에게 "먼저 한국으로 들어가 김포공항에서 기다리고 있다가 그곳에서 나를 만나 안내를 받아 일하라"라고 지시하면서 착수금 명목으로 미화 1,500달러를 지급하였고, 김창섭은 피고인으로부터 위 돈을 받으면서 한국에 가서 피해자를 살해하겠다고 약속한 사실, 그 후 피고인은 2차례 한국에 입국하여 범행에 사용할 승용차, 살해자금 등을 김기봉으로부터 전달받아 이를 김창섭에게 건네준 사실, 피고인은 이 사건 범행 당일 피해자의 집 근처에서 김창섭과 승용차에 동승하고 있다가 피해자가 집밖으로 나오자, 김창섭이 식도로 피해자의 몸을 13회 찔러 살해한 사실을 인정하였다.

기록에 의하여 살펴보면, 원심의 사실인정은 정당한 것으로 수긍할 수 있고, 거기에 상고이유의 주장과 같은 증거능력에 관한 법리오해, 채증법칙 위배로 인한 사실오인, 심리미진 등의 위법이 있다 할 수 없다.

2. 2인 이상이 범죄에 공동 가공하는 공범관계에서 공모는 법률상 어떤 정형을 요구하는 것이 아니고 2인 이상이 공모하여 어느 범죄에 공동가공하여 그 범죄를 실현하려는 의사의 결합만 있으면 되는 것으로서, 비록 전체의 모의과정이 없었다고 하더라도 수인 사이에 순차적으로 또는 암묵적으로 상통하여 그 의사의 결합이 이루어지면 공모관계가 성립하고, 이러한 공모가 이루어진 이상 실행행위에 직접 관여하지 아니한 자라도 다른 공모자의 행위에 대하여 공동정범으로서의 형사책임을 지는 것이다(대법원 2003. 1. 24. 선고 2002도6103 판결 등 참조).

　　그리고, 공동정범의 본질은 분업적 역할분담에 의한 기능적 행위지배에 있다고 할 것이므로, 공동정범은 공동의사에 의한 기능적 행위지배가 있음에 반하여 종범은 그 행위지배가 없는 점에서 양자가 구별되는 것이다(대법원 1989. 4. 11. 선고 88도1247 판결, 1998. 5. 21. 선고 98도321 전원합의체 판결 등 참조).

　　원심이 확정한 사실에 의하면, 피고인은 홍종근, 타미, 김창섭과 사이에 순차적으로 서로의 의사가 상통하여 이 사건 살인범행에 대한 포괄적 또는 개별적인 의사의 연락이나 인식이 있었다고 할 것이고, 이 사건 범행에의 피고인의 역할과 관여 정도에 비추어 보면 피고인은 이 사건 살인범행을 직접 실행한 김창섭의 행위를 자기 의사의 수단으로 하여 살인범행을 한 것으로서 공동의사에 의한 기능적 행위지배가 있었다고 보기에 충분하다고 할 것이다.

　　같은 취지에서 원심이 피고인을 이 사건 살인범행의 공동정범으로 처벌한 것은 정당하고, 거기에 사실오인 또는 공동정범이나 종범에 관한 법리오해의 위법이 있다고 할 수 없다.

　　3. 공모공동정범에 있어서 그 공모자 중의 1인이 다른 공모자가 실행행위에 이르기 전에 그 공모관계에서 이탈한 때에는 그 이후의 다른 공모자의 행위에 관하여 공동정범으로서의 책임은 지지 않는다고 할 것이나(대법원 1986. 1. 21. 선고 85도2371, 85감도347 판결 참조), 원심이 확정한 사실관계에 의하면 김창섭의 살해행위 착수 이전에 피고인이 공모관계에서 이탈하였다고 할 수 없음이 명백하므로, 이와 반대의 전제에 서서 원심판결을 탓하는 이 부분 상고이유의 주장은 받아들일 수 없다.

　　4. 그러므로 상고를 기각하고, 상고이후의 구금일수 중 일부를 본형에 산입하기로 하여 관여 대법관의 일치된 의견으로 주문과 같이 판결한다.

- 3 -

재판장     대법관     이강국     _____

주 심     대법관     유지담     _____

          대법관     배기원     _____

          대법관     김용담     _____



MINISTRY OF JUSTICE
Republic of Korea

Attorney General
United States of America

## Request for Extradition of Suspect KIM Yong Woong

On behalf of the Korean Government, I, KWON Jae-Jin, the Minister of Justice,

1. hereby request for the extradition of KIM Yong Woong, who is accused of committing *Murder*, to the Republic of Korea pursuant to the Extradition Treaty between the Government of Korea and the Government of the United States of America so that this case can be handled in accordance with the relevant law of the Republic of Korea.

2. hereby confirm that the Korean Government certifies the attached documents, requesting for the extradition of the suspect by signing and impressing the official seal of the Korean Minister of Justice on the documents.

Seoul, Republic of Korea

October 15, 2012

KWON Jae-Jin
Minister of Justice
Republic of Korea
(Seal of the Minister of Justice)

KOOK Min Soo
Deputy Minister
Criminal Affairs Bureau
(Duly Authorized by the Minister)

# STATEMENT OF CONFIRMATION

I, HAN Tae-hwa, Prosecutor of the Seoul Northern District Prosecutors' Office in Korea, hereby certify the following in support of the request for the extradition of KIM Yong Woong from the United States pursuant to the Extradition Treaty between the Republic of Korea and the United States of America.

## 1. QUALIFICATIONS

1.1. I am a prosecutor of the Seoul Northern District Prosecutors' Office ("Seoul Northern DPO") under the Korean Ministry of Justice. After passing the National Bar Examination in 2000, I completed the two-year required program at the Judicial Research and Training Institute, an affiliate of the Supreme Court of Korea. In 2003, I obtained the qualifications to work as a judge, prosecutor, or lawyer in Korea. Since February 2003, I have been working as a prosecutor under the appointment of the President of Korea. Based on my training, experience, and position, I clearly understand the criminal code and criminal procedures of Korea, and as the investigating prosecutor in charge of this case, I have carefully reviewed the statements of the victims, references and accomplices; investigation reports; and evidence, and I am well aware of this case.

1.2. Under the Korean law, a prosecutor, who presides over an investigation, may choose to either investigate independently or supervise the police as they investigate a case. Once the investigation is concluded, the prosecutor exclusively decides on the indictment. Thereafter, the prosecutor is in charge of

1

maintaining the indictment and executing the final judgment of the court. According to the principle of the exclusive power of prosecutors, the court may proceed with the trial procedures only for the cases indicted by a prosecutor. In this case, there is clear and sufficient evidence to indict the suspect regardless of his testimony. However, according to the Korean practice on investigations and indictments, a prosecutor does not indict a suspect on the run. It is for this reason that Korea seeks the extradition of the suspect.

## 2. INFORMATION ON KIM Yong Woong

2.1. KIM Yong Woong is a natural born male citizen of Korea, who was born on ████████ 1961. He possesses a Korean passport numbered ████ 7755, and his name written in English on the passport is YONG WOONG KIM. His address in Korea is 16-15 Myeongnyun-dong 1-ga, Jongno-gu, Seoul. KIM Yong Woong is about 180 centimeters tall and has black hair and brown eyes.

2.2. Annex 1 is an exact and genuine copy of KIM Yong Woong's photograph, taken and maintained by the administrative agency for his Resident Registration Card. HONG Jong-geun and HONG Su-yeong, the other suspects who aided and abetted a murder in this case, confirmed that the individual in the photograph surely is KIM Yong Woong. Annex 2 is an exact and genuine copy of his ten fingerprints, taken by the administrative agency for his Resident Registration Card and currently maintained by the Korean National Police Agency.

2.3. On March 1, 2007, KIM Yong Woong departed from the Incheon International Airport for Los Angeles, the United States, and

has not returned to Korea.

2.4. On August 9, 2010, KIM Yong Woong renewed his Korean passport, and the address written on the passport application form was 6600 HARROW ST MIRA LOMA. LA 91952.

## 3. PROGRESS OF THE CASE

### 3.1. PROCEDURAL HISTORY OF THE INVESTIGATION

3.1.1. Internal investigation in 2008 (2008-314HO)

- HONG Su-yeong, who was already arrested and held in custody for murder, made a statement as follows:

HONG Su-yeong took part in killing SIM Yu-ja, but the person who gave actual directions other than HONG Su-yeong and HONG Jong-geun in LA was KIM Yeong-hun who is residing in the U.S. and visits Korea frequently without any constraint.

Based on the obtained intelligence, the prosecutor launched the internal investigation.

- On July 4, 2008, during an investigative interview with HONG Su-yeong who was imprisoned in the Cheongju Correctional Institution, HONG Su-yeong confirmed the following:

The name of the aforementioned person is KIM Yeong-hun, and he used to be a gangster called 'Mugyo-dong Skull' whose area was Daehakno covering Hyehwa-dong and Dongsung-dong in Jongno-gu. KIM Yeong-hun is 181 centimeters tall, well-built and bug-toothed. He has a big head and looks like a gangster. He served in the Marine Corps. Hong Su-yeong and KIM Yeong-hun got to know each other when KIM Yeong-hun came to the U.S. around 1994 and have been friends since.

3

Meanwhile, HONG Jong-geun promised them to give USD 100,000 in return for killing his wife SIM Yu-ja. KIM Yeong-hun received USD 30,000 first as a deposit, and gave USD 5,000 to HONG Su-yeong and KIM Chang-seop respectively. In the meantime, KIM Yeong-hun had HONG Su-yeong and KIM Chang-seop make all necessary preparations for killing SIM Yu-ja. Therefore, the principal offender is not HONG Su-yeong, but KIM Yeong-hun.

- On July 15, 2008, during an investigative interview with HONG Jong-geun who was arrested and imprisoned in the Hongsung Correctional Institution, HONG Jong-keun confirmed the following:

Around March or April 1995, HONG Jong-geun and KIM Yeong-hun got to know when KIM Yeong-hun approached HONG Jong-geun who frequented casinos in Los Angeles. After then, HONG Jong-geun got along with KIM Yeong-hun for about 2 years as KIM Yeong-hun worked as a bodyguard for him. HONG Jong-geun does not know much about him other than his name (KIM Yeong-hun) and the year of birth (1960) because HONG Jong-geun did not ask. When HONG Jong-geun told KIM Yeong-hun the problems with his wife, SIM Yu-ja, KIM Yeong-hun said "Don't worry. I can make her gone in a split second." In return, HONG Jong-geun promised to give KIM Yeong-hun USD 100,000 and gave USD 30,000 first as a deposit. After KIM Yeong-hun said "The person who would kill SIM Yu-ja left for Korea," HONG Jong-geun made a phone call to his brother HONG Jong-jun in Korea and told him to give money to the people who had come from the U.S. Upon the notice of SIM Yu-ja's death, HONG Jong-geun met KIM Yeong-hun right away and gave the rest USD 70,000 to him.

4

- On February 8, 1996, during an investigative interview with
  KIM Chang-seop, who was arrested for murder and imprisoned
  in the Daejeon Correctional Institution, KIM Chang-seop
  confirmed the following:

  KIM Chang-seop refused to make statements by saying, "I
  don't know anything about KIM Yeong-hun. I just killed SIM
  Yu-ja because a Chinese gang called 'T' said he would give
  me USD 30,000."

- Based upon information acquired from the statements of HONG
  Su-yeong and HONG Jong-geun, the prosecutor investigated
  computer records on graduates from Hyehwa Elementary School
  and Kyungshin High School and the records of departures and
  arrivals, but failed to identify the suspect and concluded
  the investigation.

3.1.2. Internal investigation in 2009 (2009-904HO)

- During an investigation over a drug trafficking case, the
  prosecutor obtained new intelligence from the person
  identified himself as LEE (approximate age: 47) who was a
  gangster in Hyehwa-dong. LEE said that the year of birth of
  so-called 'Mugyo-dong Skull' is 1959, and the prosecutor
  launched internal investigation.

- The prosecutor tried to dig up more information about
  'Mugyo-dong Skull' such as his age, academic background,
  exact name, etc., but failed as LEE did not want to tell
  his name and refused to talk more about 'Mugyo-dong Skull'.
  However, it seemed certain that 'Mugyo-dong Skull' actually
  existed.

- The prosecutor found that there are 4 people named KIM
  Yeong-hun (Yeong-un, Yong-hun or Yong-un) who were born

5

between 1958 and 1960 among graduates from Hyehwa Elementary School and Kyungshin High School, 16 among those who served in the Marine Corps, and 8 among emigrants, and acquired related materials including their photos. The prosecutor showed the photos to HONG Su-yeong and HONG Jong-geun who were serving their sentences, but they said the individuals in the above photographs are not KIM Yeong-hun. As such, the prosecutor failed to identify the suspect, hence concluded the internal investigation.

3.1.3. Internal investigation in 2009 (2009-1012HO)

- A person, who served the sentence with HONG Su-yeong and refused to identify himself (age 50), said "'Mugyo-dong Skull' whom I know is one of the 60th graduates from Hyehwa Elementary School and his name is KIM Yong Woong, not KIM Yeong-hun. Based on such statement, the prosecutor launched internal investigation.

- There was one KIM Yong Woong born on September 26, 1959 among the 60th graduates from Hyehwa Elementary School, however, according to the police, his resident registration record did not exist. There were 53 people named KIM Yong Woong who were born between 1958 and 1962 in Korea, but it was impossible to identify the suspect. Therefore, the prosecutor concluded the internal investigation.

3.2. **PROGRESS OF INVESTIGATION**

3.2.1. After the prosecutor concluded three internal investigations in 2008 (2008-314HO) and 2009 (2009-904HO and 2009-1012HO) in vain, in the process of reviewing the records of the previous investigations, the prosecutor found a person whose name and date of birth on the student records were different from those

6

of KIM Yeong-hun, but permanent address was the same (281 Sintong-ri, Chopyeong-myeon, Jincheon-gun, Chungcheongbuk-do). His name was KIM Yong Woong (resident registration no. ████████ ██████. According to the Resident Registration Record maintained by the Dong Office, KIM Yong Woong served in the 1st marine division. The police records confirmed that KIM Yong Woong moved to the US, and had criminal records of bodily injury resulting from robbery in a video arcade. Such facts were consistent with HONG Su-yeong's statements, so the prosecutor launched internal investigation again.

3.2.2. The prosecutor had an investigative interview with HONG Su-yeong, who was imprisoned in the Chuncheon Correctional Institution, on September 2, 2011, and HONG Jong-geun, who was imprisoned in the Hongsung Correctional Institution, on September 20, 2011, and showed the photo of KIM Yong Woong ████████ on the Resident Registration Record and the photo taken in 2006 when he was arrested on the charge of bodily injury resulting from robbery and registered at the Criminal Filing Search System (CRIFISS) to check if the person in the photos was KIM Yeong-hun who had conspired the crime with them. They confirmed that the individual in the photos is surely KIM Yeong-hun whom they had known. By doing so, the prosecutor identified the suspect.

## 4.  EXTRADITABLE CRIME AND RELEVANT EVIDENCE

### 4.1.  EXTRADITABLE CRIME

4.1.1. Suspect KIM Yong Woong, whose job is unknown, has five similar criminal records including one year of imprisonment suspended for two years for a violation of the *Punishment of Violences, Etc. Act (Joint Extortion, Joint Infliction of Bodily Injury,*

*Joint Coercion)*, and obtained permanent residency in the US on March 9, 2009.

4.1.2. In 1993, KIM Yong Woong moved to Los Angeles, where he introduced himself as 'KIM Yeong-hun'. While KIM Yong Woong wandered from place to place around casinos without any particular job, he met HONG Jong-geun, the chairman of Bugwang Transportation Company (located in Suwon-si, Gyeonggi-do at that time) and started working as a driver and bodyguard for HONG.

4.1.3. <Conspiracy>

In the meantime, HONG Jong-geun told KIM Yong Woong that HONG Jong-geun's wife SIM Yu-ja had filed a petition to the Presidential Office and the Prosecutors' Office charging her husband with tax evasion and habitual gambling, and filed a marriage dissolution action with the Uijeongbu Branch of the Seoul District Prosecutors' Office claiming for KRW 5,200,000,000 as alimony and division of property. HONG Jong-geun discussed what to do with KIM Yong Woong saying "My children would be beggared." KIM Yong Woong said "I can make her gone in a split second" and demanded USD 100,000 in return. Upon HONG Jong-geun's acceptance, KIM Yong Woong left for the US and met his friend and Korean-American HONG Su-yeong (American name: Sam HONG), whom he got to know during his stay in LA, talking about the plan of killing SIM Yu-ja. After KIM Yong Woong and HONG Su-yeong conspired to murder together, they were introduced to Korean-American KIM Chang-seop (American name: David KIM) by an unidentified person who is a member of the Chinese criminal ring "Watching". They suggested

8

that they would give KIM Chang-seop USD 30,000 in return for killing SIM Yu-ja and KIM Chang-seop agreed. As such, HONG Jong-geun, KIM Yong Woong, HONG Su-yeong and KIM Chang-seop conspired successively to murder SIM Yu-ja.

4.1.4. <Execution>

Around September 1995, at an unidentified place in LA, KIM Yong Woong received USD 30,000 from HONG Jong-geun as a deposit and gave HONG Su-yeong USD 5,000 out of this money to be handed over to KIM Chang-seop who spent this money in preparing for the murder.

4.1.5. KIM Yong Woong directed KIM Chang-seop and HONG Su-yeong to kill SIM Yu-ja, and around 15:21 on January 6, 1996, they entered Korea through Korean Air Flight No. 061 to the Gimpo Airport. KIM Yong Woong had HONG Su-yeong meet KIM Gi-bong (former labor union head of Bugwang Transportation Company) who came to the airport upon request of HONG Jong-geun, and receive information about SIM Yu-ja including her photo and address. Then, HONG Su-yeong departed for the US right away, and KIM Chang-seop stayed in Korea and waited for an opportunity to kill SIM Yu-ja wandering around her residence but in vain. As KIM Chang-seop could not murder SIM Yu-ja for over one month, KIM Yong Woong sent HONG Su-yeong to Korea. HONG Su-yeong entered Korea again through Asiana Airlines Flight No. 201 to the Gimpo Airport around 19:15 on February 7, 1996. HONG Su-yeong met KIM Chang-seop and urged him to complete his mission. Meanwhile, HONG Jong-geun told KIM Yong Woong that his wife would appear to the Uijeongbu Branch of the Seoul District Court for their marriage dissolution action

9

on February 8, 1996, and KIM Yong Woong delivered the same to
HONG Su-yeong. Therefore, they decided to kill SIM Yu-ja on
February 8, 1996.

4.1.6. <Execution>

Around 12:30 on February 8, 1996, at a Pride Beta vehicle in
front of 58-26 Suyu-dong, Gangbuk-gu, Seoul, KIM Chang-seop
and HONG Su-yeong watched for a chance. As the victim was
about to get back home after shoveling snow in front of her
house, HONG Su-yeong said to KIM Chang-seop, "Last chance for
you!" Then, KIM Chang-seop got off from the vehicle and
followed her to the front yard where he punched the victim on
the face once. KIM Chang-seop jumped on the fallen victim and
stabbed her in the neck, head and side with a kitchen knife 13
times, causing SIM Yu-ja to die on the spot due to blood loss
from damages to external carotid artery.

4.2. **RELEVANT EVIDENCE**

4.2.1. On July 4, 2008, co-conspirator HONG Su-yeong, who was serving
the sentence in the Chuncheon Correctional Institution, made a
statement as follows:

KIM Yeong-hun and I got to know each other when KIM Yeong-
hun came to the U.S. around 1994 and have been friends
since. Meanwhile, HONG Jong-geun promised them to give USD
100,000 in return for killing his wife SIM Yu-ja. KIM
Yeong-hun received USD 30,000 first as a deposit, and gave
USD 5,000 to HONG Su-yeong and KIM Chang-seop respectively.
In the meantime, KIM Yeong-hun had HONG Su-yeong and KIM
Chang-seop make all necessary preparations for killing SIM
Yu-ja. Therefore, the principal offender is not me, but KIM

10

Yeong-hun.

4.2.2. On July 15, 2008, co-conspirator HONG Jong-geun, who was serving the sentence in Hongsung Correctional Institution, made a statement to Police Sergeant Yu Byeong-taek as follows: Around March or April 1995, KIM Yeong-hun and I got to know when KIM Yeong-hun approached me when I frequented casinos in Los Angeles. After then, I got along with KIM Yeong-hun for about 2 years as KIM Yeong-hun worked as a bodyguard for me. I do not know much about him other than his name (KIM Yeong-hun) and the year of birth (1960) because I did not ask. When I told KIM Yeong-hun the problems with my wife, SIM Yu-ja, KIM Yeong-hun said "Don't worry. I can make her gone in a split second." In return, I promised to give KIM Yeong-hun USD 100,000 and gave USD 30,000 first as a deposit. After KIM Yeong-hun said "The person who would kill SIM Yu-ja left for Korea," I made a phone call to my brother HONG Jong-jun in Korea and told him to give money to the people who had come from the U.S. Upon the notice of SIM Yu-ja's death, I met KIM Yeong-hun right away and gave the rest USD 70,000 to him.

4.2.3. The above-mentioned evidence has been secured according to the relevant criminal procedures of Korea. The evidence is sufficient to indict KIM Yong Woong for murder.

## 5.  THE APPLICABLE LAW OF THE REPUBLIC OF KOREA

5.1. Murder

Article 250 (Murder) of *the Criminal Act*

11

A person who kills another shall be punished by death, or imprisonment for life or for not less than five years.

5.2. Regulations on conspiracy
Article 30 (Co-principals)
When two or more persons have jointly committed a crime, each of them shall be punished as a principal offender for the crime committed.

5.3. Law on the statute of limitation for the above crime
5.3.1. Article 249(1) of *the Criminal Procedure Act*

(1) The prescription for public prosecution shall expire after lapse of the following terms:

1. Fifteen years for crimes punishable with death penalty;

2. Ten years for crimes punishable with imprisonment without prison labor for life or imprisonment for life;

3. Seven years for crimes punishable with imprisonment or imprisonment without prison labor for a maximum term of ten years or more

5.3.2. Article 252 of *the Criminal Procedure Act*

(1) A limitation period shall commence to run after the criminal act is completed.

(2) In regard to complicity, the limitation period against accomplices shall commence to run at the time when the criminal action has ceased finally.

5.3.3. Article 253 of *the Criminal Procedure Act*

(1) The limitation period shall cease to toll on the

12

institution of the public prosecution, and begin to toll when a judgment dismissing a public prosecution or a judgment indicating a violation of jurisdiction becomes finally binding.

(2) When a public prosecution is instituted against one of several accomplices mentioned in the preceding paragraph, the tolling of the limitation period shall be suspended as to the other accomplices, and shall begin to toll again when a judgment on the case concerned becomes finally binding.

(3) The limitation period shall be suspended during the period, for which an offender stays abroad for the purpose of escaping criminal punishment.

5.3.4. Interpretation

The statute of limitation for this case is fifteen years. However, the limitation period has been suspended because KIM Yong Woong was staying in the US when he committed the crime and he came to Korea and then departed for the US repeatedly, as shown in the annexed record of departures and arrivals. For this reason, the statute of limitation for this case has not lapsed.

5.4. The above-mentioned provisions are currently valid in the Republic of Korea and they were in February 1996 when KIM Yong Woong committed the crime of murder.

# 6.   THE ARREST WARRANT SYSTEM IN KOREA

6.1. Under the Korean law, when a suspect of a felony, like KIM Yong Woong is on the run and cannot be indicted, the

13

prosecutor does not indict the suspect but requests the court for an arrest warrant or adds the suspect to the wanted list to arrest the suspect. As the suspect is indicted only after being arrested, documents related to the indictment are not available for this case.

6.2. Under the Criminal Procedure Act, the prosecutor can request the relevant district judge for an arrest warrant and arrest the suspect if any of the following evidence is found during the investigation: The suspect committed the crime; the suspect refused to yield to a prosecutor's summon; or the suspect is likely to refuse such summon.

6.3. The judge will only issue an arrest warrant when it is determined that the request provides reasonable grounds for an arrest. For this reason, the fact that an arrest warrant has been issued reflects that the judge is also convinced there are reasonable grounds to believe that the suspect committed the crime as described in the arrest warrant.

6.4. On October 11, 2011, Judge KIM Yeong-hui of the Seoul Northern District Court issued an arrest warrant for KIM Yong Woong. The original copy of the arrest warrant is maintained in the investigation record of KIM Yong Woong for procedures in Korea. Annex 4 is a genuine and exact copy of the arrest warrant issued by Judge KIM Yeong-hui.

7.  I hereby certify that the above-mentioned are all true to my knowledge. I submit this statement of confirmation, being well-aware that I may be punished for falsely producing official

14

documents pursuant to Article 227 of the Criminal Act of Korea.

2012. 3. 21.

Respectfully submitted by

Prosecutor HAN Tae-hwa (*sealed*)

Seoul Northern District Prosecutors' Office

Annex 1. 1 genuine and exact copy of KIM Yong Woong's photograph

2. 1 genuine and exact copy of KIM Yong Woong's fingerprints

3. 1 genuine and exact copy of the arrest warrant

4. 1 genuine and exact copy of the application for issuance of passport

5. 1 genuine and exact copy of each judgment against co-conspirators HONG Jong-geun, HONG Su-yeong and KIM Chang-seop

Photograph of KIM YONG WOONG

Photograph of KIM YONG WOONG

Photograph of KIM YONG WOONG

| ROLLED IMPRESSIONS OF LEFT HAND | | | | |
|---|---|---|---|---|
| INDEX FINGER | MIDDLE FINGER | THIRD FINGER | LITTLE FINGER | THUMB |
| (Fingerprinted) | (Fingerprinted) | (Fingerprinted) | (Fingerprinted) | (Fingerprinted) |

| ROLLED IMPRESSIONS OF RIGHT HAND | | | | |
|---|---|---|---|---|
| INDEX FINGER | MIDDLE FINGER | THIRD FINGER | LITTLE FINGER | THUMB |
| (Fingerprinted) | (Fingerprinted) | (Fingerprinted) | (Fingerprinted) | (Fingerprinted) |

| PLAIN IMPRESSIONS OF LEFT HAND | | PLAIN IMPRESSIONS OF RIGHT HAND | |
|---|---|---|---|
| LEFT THUMB | RIGHT THUMB | | |
| (Fingerprinted) | (Fingerprinted) | (Fingerprinted) | (Fingerprinted) |

Photograph of
KIM YONG
WOONG

# RESIDENT REGISTRATION CARD

# APPLICATION FORM

PHOTO (FEMALE)

2.5cm X 3cm

| RESIDENT REGISTRATION NO. | ※ ████████ | FORMER RESIDENT REGISTRATION NO. | 131101-130420 | | DATE OF ISSUE | ※ 78. 1. 25. | |
|---|---|---|---|---|---|---|---|
| APPLICANT NAME | CHN | 金 容 雄 | KOR | KIM YONG WOONG | JOB | Student | BLOOD TYPE | A |

| RESIDENT REGISTRATION NO. | ※ ████████ | | FORMER RESIDENT REGISTRATION NO. | 131101-130420 | DATE OF ISSUE | ※ 78. 1. 25. |
|---|---|---|---|---|---|---|
| APPLICANT NAME | CHN | 金 容 雄 | KOR KIM YONG WOONG | JOB | Student | BLOOD TYPE A |
| ORIGINAL DOMICILE | #1062, 1 Waryong-dong, Jongno-gu, Seoul (10/5) | | | | SPECIALTY | |
| PERMANENT ADDRESS | 281 Sintong-ri, Chopyeong-myeon, Jincheon-gun, Chungcheongbuk-do | | | | HEAD OF FAMILY (CHN) | 金 永 玉 |
| REGISTERED ADDRESS | #1062, 1 Waryong-dong, Jongno-gu, Seoul (10/5) | | | | HEAD OF HOUSEHOLD (CHN) | 金 扁 洙 |

| MILITARY SERVICE | TYPE | RANK | SERIAL NO. | BRANCH | SERVICE PERIOD | CLASSIFICATION |
|---|---|---|---|---|---|---|
| | | | | | | |

| OFFICER IN CHARGE (SEAL OR SIGN) | HEAD OF BAN | HEAD OF TONG | POLICE IN CHARGE | EMPLOYEE OF EUP, MYEON, DONG | RELEVANT DOCUMENT | |
|---|---|---|---|---|---|---|
| | ※ (Sealed) | ※ (Sealed) | ※ (Sealed) | ※ (Sealed) | ※ 1. Current Resident Registration Card 2. 3. | |

| REMARKS | ※ |
|---|---|
| | |

(FILL-OUT INSTRUCTIONS)
1. WRITE YOUR NAME IN CHINESE CHARACTERS AND THE REST OF THE INFORMATION IN KOREAN.
2. LEAVE THE ※ MARKED SPACE AND THE BACK FOR PUBLIC OFFICIAL, AND FILL OUT THE REST (YOUR PHOTO SHOULD BE SECURELY ATTACHED WITH ITS BACK LAYER PEELED OFF).
3. USE BLACK BALLPOINT PEN OR BLACK INK.
4. THIS FORM IS NOT REQUIRED FOR RE-ISSUANCE.
5. FINGERPRINTS MUST BE LIFTED BY POLICE IN EUP-MYEON-DONG OFFICE
6. DUAL OR PROXY APPLICATION FORMS WILL BE TRACKED VIA FINGERPRINTS AND WILL FACE UP TO 3 YEARS OF IMPRISONMENT OR FINES OF NOT MORE THAN KRW 150,000.

# **Warrant of Arrest**

Seoul Northern District Court

| Warrant No. | 2011-7399 | Criminal Offense | Murder | | |
|---|---|---|---|---|---|
| **Suspect** | Name | KIM YONG WOONG | | Occupation | Unidentified |
| | Resident Registration # | ██████████ | | Nationality | Korean |
| | Address | 15/03, 16-15, Myeongnyun 1-ga, Jongno-gu, Seoul | | | |
| **Prosecutor** | HAN Tae-hwa | | Date of Application | 2011. 10. 11. 18:40 | |
| **Defense Attorney** | | | Date of Expiry | 2021.11. 04. | |
| **Facts of Crime** | See Enclosure | | Place of Custody | Seoul Gangbuk Police Station or Police Station nearby the arrested place | |
| **Place of Detention** | Seoul Gangbuk Police Station Detention Center | | | | |

☐ The suspect failed to attend in accordance with the summons served on him/her without a plausible reason.

■ The suspect may fail to attend in accordance with the summons served on him/her, without a plausible reason.

☐ The suspect has no fixed address (for crimes resulting in a fine not exceeding KRW 500,000, detention, or a minor fine).

As there is sufficient reason to believe that the defendant has committed the offense(s) set out in the attachment and there is ground for his/her arrest, the defendant shall be arrested and brought to court. If this warrant is not enforced on or before the date of expiry, it shall no longer be enforceable and the warrant shall be returned.

2011. 10. 11.

Judge   KIM Yeong-hui (*sealed*)

| Date of Arrest | 20    .    .    . : | Place of Arrest | |
|---|---|---|---|
| Date of Custody | 20    .    .    . : | Place of Custody | |
| Date of Detention | 20    .    .    . : | Place of Detention | |
| Reasons for Failed Execution | | | |
| Office/Title of Person in Charge | | Signature of Person in Charge | |

## Summary of the Facts of Crime

[Facts of Crime]

Suspect KIM YONG WOONG, whose job is unknown, has not been arrested yet. He has a total of 5 similar criminal records including one year of imprisonment suspended for two years for a violation of the *Punishment of Violences, Etc. Act (Joint Extortion, Joint Infliction of Bodily Injury, Joint Coercion)* sentenced by the Seoul Southern District Court on February 8, 2007.   KIM YONG WOONG obtained permanent residency in the US on March 9, 2009.


In 1993, KIM YONG WOONG moved to Los Angeles (US), where he introduced himself as 'KIM Yeong-hun'.   While he wandered from place to place around casinos without any particular job, he met HONG Jong-geun, the chairman of Bugwang Transportation Company (located in Suwon-si, Gyeonggi-do at that time) and became a driver and bodyguard for HONG.


<Process of conspiracy>

In the meantime, HONG Jong-geun told KIM YONG WOONG that his wife SIM Yu-ja had filed a petition to the Presidential Office and the Prosecution Service charging her husband with tax evasion and habitual gambling, and filed a marriage dissolution lawsuit with the Uijeongbu Branch, Seoul District Court, claiming for KRW 5,200,000,000 as alimony and division of property.   HONG Jong-geun discussed what to do with KIM YONG WOONG by saying, "my children would be beggared".

KIM YONG WOONG said "I can make her gone in a split second" and demanded USD

100,000 in return.   Upon HONG Jong-geun's acceptance, KIM YONG WOONG left for the US and met his friend and Korean-American HONG Su-yeong (American name: Sam HONG), whom got to know during his stay in LA, talking about his plan of killing SIM Yu-ja. After KIM YONG WOONG and HONG Su-yeong conspired to murder, they were introduced to Korean-American KIM Chang-seop (American name: David KIM) by an unidentified person who is a member of the Chinese crime gang *"Watching"* in Los Angeles. They suggested that they would give USD 30,000 in return for killing SIM Yu-ja and KIM Chang-seop agreed.   As such, HONG Jong-geun, KIM YONG WOONG, HONG Su-yeong, and KIM Chang-seop sequentially conspired to murder SIM Yu-ja.


<Procedures>

   Around September 1995, at an unidentified place in LA, KIM YONG WOONG received USD 30,000 from HONG Jong-geun as a deposit and gave HONG Su-yeong USD 5,000 out of the above amount of money to be handed over to KIM Chang-seop who spent this money in preparing for the murder.


   KIM YONG WOONG directed KIM Chang-seop and HONG Su-yeong to kill SIM Yu-ja.   Around 15:21 of January 6, 1996, KIM Chang-seop entered Korea through Korean Air Flight No.061 to the Gimpo Airport (Korea).   KIM YONG WOONG had HONG Su-yeong, who accompanied KIM Chang-seop, meet KIM Gi-bong (the former labor union head of Bugwang Transportation Company), who came to the airport upon request of HONG Jong-geun, and receive information of SIM Yu-ja including her photo and address.   Then, HONG Su-yeong left for the US right away, and KIM Chang-seop stayed in Korea and waited for a chance to kill SIM Yu-ja hovering around SIM Yu-ja's house, but in vain.

As KIM Chang-seop could not kill SIM Yu-ja for more than 1 month, KIM YONG WOONG sent HONG Su-yeong to Korea.   HONG Su-yeong entered Korea again through Asiana Airlines Flight No.201 to the Gimpo Airport around 19:15 of February 7, 1996, in order to press KIM Chang-seop for murder.

HONG Su-yeong met KIM Chang-seop and ordered to carry out his mission swiftly. Then, KIM YONG WOONG said to HONG Su-yeong, "HONG Jong-geun told me SIM Yu-ja would attend the Uijeongbu Branch, Seoul District Court, on February 8, 1996, for the marriage dissolution action."   Therefore, they decided to kill SIM Yu-ja on February 8, 1996.

<Execution>

Around 12:30 of February 8, 1996, at a *'Pride Beta'* vehicle in front of 58-26 Suyu-dong, Gangbuk-gu, Seoul, KIM Chang-seop and HONG Su-yeong were waiting for a chance.   As SIM Yu-ja was about to get back home after clearing snow in front of her house, HONG Su-yeong ordered KIM Chang-seop by saying "Last chance for you".   Then, KIM Chang-seop got off from the vehicle and followed SIM Yu-ja to the house, punched her once with his heavy fist on the face in the yard, thereby leaving her fallen to the ground.   Then he mounted on her stabbing 13 times in her neck, head and side with a kitchen knife.   This caused SIM Yu-ja to die on the spot due to blood loss (exsanguinations) from the severed external carotid artery.

## APPLICATION FOR (RENEWAL OF) PASSPORT

| | | | | |
|---|---|---|---|---|
| PHOTOGRAPH of KIM YONG WOONG | APPLICATION # | 10-YLA-R-0068896 | APPLICATION # FOR IDENTIFICATION | 10-YLA-Y-0118994 |
| | DATE OF APPLICATION | 2010. 08. 11 | DATE OF RESULT OF IDENTIFICATION REPORTED | 2010. 08. 12 |
| | PASSPORT # | ▓▓▓755 | RESULT OF IDENTIFICATION | Appropriate |
| | DATE OF ISSUE | 2010. 08. 16 | DATE OF EXPIRY | 2020. 08. 16 |
| | TYPE OF PASSPORT | ☐ ORDINARY  ■ RESIDENCE  ☐ OFFICIAL  ☐ DIPLOMAT  TRAVEL CERTIFICATE (☐ one way ☐ round trip) | | |
| | VALIDITY PERIOD OF PASSPORT | ■ 10 YEARS  ☐ 5 YEARS  ☐ LESS THAN 5 YEARS  ☐ SINGLE (1 YEAR)  ☐ EXTENTION  ☐ PERIOD REMAINING | | |

※

| NAME | ENGLISH (IN CAPITAL LETTER) | SURNAME | KIM | ※ |
|---|---|---|---|---|
| | | GIVEN NAMES | YONG WOONG | |
| | KOREAN | 김용웅 | | ※ |
| | RESIDENT REGISTRATION # | ▓▓▓▓▓ | | |

| CURRENT ADDRESS | 53-56 Suyu 1-dong, Gangbuk-gu | e-mail | |
|---|---|---|---|

| COUNTRY TO VISIT | | PURPOSE OF VISIT | | OFFICE (POSITION) | | | |
|---|---|---|---|---|---|---|---|
| TELEPHONE # | 213) 700-7912 | MOBILE PHONE # | 213 700 7912 | BLOOD TYPE(ABO) | A | HEIGHT (cm) | 180 |

| PERMANANT ADDRESS | 281 Sintong-ri, Chopyeong-myeon, Jincheon-gun, Chungcheongbuk-do |
|---|---|

※

| EMERGENCY ADDRESS IN KOREA | NAME | JEONG JIN-SOOK | RELATIONSHIP | | TELEPHONE (MOBILE) # | 02)988-7564 |
|---|---|---|---|---|---|---|
| | ADDRESS | 53-56 Suyu 1-dong, Gangbuk-gu | | | OFFICE (SCHOOL) NAME | |

※

| LEGAL REPRESENTATIVE | NAME | | | |
|---|---|---|---|---|
| | RESIDENT REGISTRATION # | | RELATIONSHIP | |

The information entered above is true, and I hereby submit an application for a passport pursuant to Article 9 of the Passport Act.

※

Applicant (Passport Owner)   Name (Korean)김용웅   (Chinese)金容雄   Signature *(signed)*
2010. 8. 9.

※

| RESIDENCE ADDRESS | 6600 Harrow ST MIRA LOMA, CA 91952 | | | | |
|---|---|---|---|---|---|
| PERMANANT RESIDENCY | # | 076-115-556 | RESIDENCE | DATE ENTERED | |
| | DATE OBTAINED | 07/10/00 | | TYPE | Permanant Residence |

# SEOUL DISTRICT COURT

# 1st CRIMINAL DEPARTMENT

# JUDGMENT

| | | |
|---|---|---|
| CASE | 96GOHAB67 | A. Murder |
| | | B. Occupational Embezzlement |
| DEFENDANT | 1. KIM Chang-seop, also known as David KIM, unemployed | |

█████████████████

Current Address: 825 S. Gramercy Dr. Los Angeles, CA, 90011, U.S.A

Permanent Address: unknown in Korea

2. HONG Jong-jun, Executive Director of a taxi company

███████████████

Current Address: #106-403 Uman APT, Uman-dong, Paldal-gu, Suwon-si, Gyeonggi-do, Korea

Permanent Address: 187 Yongdu-dong, Dongdaemun-gu, Seoul, Korea

3. KIM Gi-bong, driver

████████████

Current Address: 95-9 Hwaseo-dong, Jangan-gu, Suwon-si, Gyeonggi-do, Korea

– 1 –

Permanent Address: 346 Dongsan-ri, Hobeop-myeon, Icheon-si,

Gyeonggi-do, Korea

**PROSECUTOR**          PARK Gil-ryong, CHO Yeong-tae

**DEFENSE COUNSEL** Attorney GO Gwang-u representing all defendants

Attorney LEE Sang-wan representing Defendants HONG Jong-jun and

KIM Gi-bong

# DISPOSITION

1. Defendant KIM Chang-seop shall be sentenced to death, defendant HONG Jong-jun to 15 years of imprisonment, and defendant KIM Gi-bong to 10 years of imprisonment.

2. The 140 days of confinement before imposition of sentence shall be included to the aforementioned period of limited imprisonment

3. One peeling knife taken from defendants (Exhibit #2) shall be confiscated.

# REASONING

**FACTS OF CRIME**

1. Murder Committed by Defendants

    A. Defendants' Background

Defendant KIM Chang-seop is a United States citizen of Korean descent who has immigrated to Los

- 2 -

Angeles around 1974 with his parents at the age of 6, and held no steady job loitering around dye

houses after having received a business degree from Pierce College in Los Angeles in approximately

June 1990.    Defendant Hong Jong-jun has worked since August 29, 1989 at Bugwang

Transportation Company ( "Bugwang Transport"), located at 782-1Omokcheon-dong, Gwonseon-gu,

Suwon-si, Korea, managed by his brother, Hong Jong-geun (non-party).    In approximately August

1994, when Hong Jong-geun left for the US to seek a medical treatment for side-effects of his kidney

surgery Hong Jong-jun was appointed executive director and so in charge of overall business matters

at Bugwang Transport, following Hong Jong-geun's orders.    As of January 1, 1988, Defendant Kim

Gi-bong worked as a driver at the aforementioned Bugwang Transport, held the position of union

head but took a leave of absence on or about September 28, 1995.

   B.  Process of the Murder Conspiracy

   1)  On November 21, 1986, Defendant Hong Jong-geun was caught by his wife from the second

      marriage, victim SIM Yu-ja (female, DOB: ███████ who had found out his inappropriate

      relationships with mistresses, and on December 26, 1994, filed a petition with the Korean

      Presidential Office and the Supreme Prosecutors' Office charging him with tax evasion and

      habitual gambling.    Furthermore, on January 28, 1995, when she filed a motion for

      dissolution of marriage with the Seoul District Court at Uijeongbu Branch on purposes of

      alimony and division of property to be paid in the amount of KRW5,200,000,000, he felt

      hatred toward her and even decided to murder her so as not to pay for what she had requested

- 3 -

in payment.    In summer 1995, HONG Jong-geun delivered KRW 8,000,000 to his former wife, LEE Sil-ja (non-party) and his maternal cousin, JEON Bong-jin (non-party) in his request for them to murder victim SIM Yu-ja.    However, as they continued to procrastinate the execution of their plan, around 23:00 on October 23, 1995, he made a phone call from the US to Defendant HONG Jong-jun at his residence and gave orders by saying:

SIM Yu-ja has requested me an alimony coming to KRW 5,2000,000,000 and filed a petition for convicting me of habitual gambling, etc.   So, I will murder her.   Otherwise, my sons will be beggared.   Have the directions to victim SIM Yu-ja's residence and its photo ready.

2)   In response, Defendant HONG Jong-jun met Defendant KIM Gi-bong at the Bugwang Transport cafeteria during lunch the next day and conveyed HONG Jong-geun's orders to Defendant KIM Gi-bong as they were.    At that time, Defendant KIM Gi-bong appreciated what Bugwang Transport had offered; it helped him able to own a privately-owned cab in the future by having handled his de facto resignation as a leave of absence and even paid him in the amount of KRW 1,000,000 every month.    In his anticipation that a better compensation might be forthcoming upon his cooperation with Defendant HONG Jong-jun and HONG Jong-geun, Defendant KIM Gi-bong made up his mind to take part in the murder plot.    Thus, around 20:00 on the same day, Defendant KIM Gi-bong met Defendant HONG Jong-jun at the former's residence, located at 95-9 Hwaseo-dong, Jangan-gu, Suwon-si, Korea and drove in the former's Elantra to arrive near IM Bok-yong (non-party)'s residence, located at 15-230 Uijeongbu 4-dong, Uijeongbu-si, Gyeonggi-do, Korea; he was an employee of Geosan

Transportation Partners, Bugwang Transport's subsidiary company, who knew where the victim lived.   Around 22:00 on the same day, upon arrival, Defendant KIM Gi-bong made a phone call to IM Bok-yong to come out, followed IM Bok-yong's jeep with his own vehicle and around 23:00 on the same day, arrived on the street in front of the victim's residence at 58-26 Suyu 1-dong, Gangbuk-gu, Seoul, Korea.   Defendant KIM Gi-bong, in his own vehicle, identified the location of the victim's residence and its front door and wrote down the information.   Afterwards, Defendant HONG Jong-jun returned home and tore off the part showing the victim's upper half of the wedding photo she had taken together with HONG Jong-geun, thereby taking it in possession, and reported to HONG Jong-geun in his phone call.

3)   On the other hand, in early October 1995, HONG Jong-geun made a phone call from the US to Defendant HONG Jong-jun at his residence and gave him orders by saying, "Hire an assassin to kill victim SIM Yu-ja even if it costs KRW 100,000,000."   Following his orders, Defendant HONG Jong-jun met Defendant KIM Gi-bong around that time at a bar named 'Dulban,' located in Seryu-dong, Gwonseon-gu, Suwon-si, Korea so as to explain HONG Jong-geun's orders in detail and asked him to seek an assassin to kill the victim.   In response to Defendant HONG Jong-jun's request, Defendant KIM Gi-bong met KIM Man-jung (non-party) at Sinchon BBQ restaurant, located in Seryu-dong, Gwonseon-gu, Suwon-si, Korea and asked him whether he could assassin a person.   Upon KIM Man-jung's

acceptance to the proposal, in early November 1995, Defendant KIM Gi-bong introduced

him to Defendant HONG Jong-jun, who later asked KIM Man-jung to murder the victim

during the meeting where HONG Jong-gun, KIM Gi-bong and KIM Man-jung were all

present at an unknown restaurant near Chilbosan Retreat Center, located in Hwaseong-gun,

Gyeonggi-do, Korea . Upon HONG Jong-gun's such request, KIM Man-jung said, "I will

have my people murder her in a disguised traffic accident.   So, get me KRW 120,000,000 in

return including KRW 20,000,000 as a retainer for an attorney."   Even though KIM Man-

jung accepted the proposal and plotted a murder against the victim, he was not able to carry

out the plan since on November 24, he was taken into custody at Suwon Southern Police

Station on the grounds of obstruction of justice, etc.   As HONG Jong-geun saw the

attempted murder failed twice already, he decided even to hire a criminal organization in the

US certainly to murder victim SIM Yu-ja and in December 1995, requested that a member

from a secret gang called "Watching" in Los Angeles, the so-named "T," a United States

citizen of Chinese descent, murder the victim.   On or about December 27, 1995, T made a

proposal to Defendant KIM Chang-seop at his residence, located at 825 S. Gramercy Dr. Los

Angeles, CA, 90011, U.S.A. by saying, "If you murder a person, I will pay you USD 30,000"

and Defendant KIM Chang-seop accepted the proposal T and HONG Su-yeong (non-party),

another member of the aforementioned gang went to give orders to Defendant KIM Chang-

seop at his residence by saying, "Go to Korea first and wait at Gimpo International Airport

until you meet HONG Su-yeong, who would give you instructions under which you work."

and paid USD 1,500 as a deposit.   Upon the receipt of such, Defendant KIM Chang-seop

made a promise to leave for Korea in his flight departing from Los Angeles around 9:00 on

December 5, 1995.   Accordingly, around 23:00 on December 5, 1995, HONG Jong-geon

called Defendant HONG Jong-jun at his residence and gave him orders as follows:

> There will be two people arriving at Gimpo International Airport from the US and so stay at the lobby in the arrival area of the International Terminal with a sign saying, 'KIM Gil-dong' until they come to see you.   Deliver to them KRW 2,000,000 and the victim's photo and provide any necessary support for their domestic operations.

Under such orders, Defendant HONG Jong-jun conveyed the aforementioned message to

KIM Gi-bong at HONG Sun-min's (non-party) residence, located at 44-16 Jeongja 2-dong,

Jangan-gu, Suwon-si, Korea and said, "Hand over to them 'blood money' and the victim's

photo and show them where she lives".   HONG Sun-min, a second son to HONG Jong-

geun, was without any knowledge regarding this matter.   Accordingly, Defendant KIM Gi-

bong met Defendant KIM Chang-seop and HONG Su-yeong several times to deliver the

"blood money", etc.   As such, Defendants conspired sequentially with non-parties: HONG

Jong-geun, T and HONG Su-yeong so as to murder the victim as to be set forth in the

following section.

C.  Details of Roles Played Each by Defendants and Other Accomplices

1) Defendant HONG Jong-jun made frequent phone calls to HONG Jong-geun and around

14:00 on January 6, 1996, asked Defendant KIM Gi-bong at HONG Sun-min's residence to

deliver to HONG Su-yong the victim's photo and the "blood money" in the amount of KRW 2,000,000 under HONG Jong-geun's orders. Moreover, on or about January 7, 1996, he called Defendant KIM Gi-bong and asked him to meet Defendant KIM Chang-seop and HONG Su-yeong so as to guide them to the victim's residence.   In addition, Defendant HONG Jong-jun asked Defendant KIM Gi-bong at the reception area in Bugwang Transport to deliver as "blood money" the following: around 13:00 on January 12, 1996, KRW 2,000,000 to HONG Su-yeong; in mid-January, 1996, KRW 1,000,000 to Defendant KIM Chang-seop; around 12:00 in late January 1996, a Pride Beta (LP # Gyeonggi 2BEU3410) owned by Bugwang Transport, necessary for the murder and KRW 1,500,000; around 16:00 on January 27, 1996, KRW 1,000,000 to HONG Su-yeong; and around 13:00 on February 2, 1996, KRW 500,000 to Defendant KIM Chang-seop.

2)   Around 17:00 on January 6, 1996, Defendant KIM Gi-bong, under Defendant HONG Jong-jun's aforementioned orders, waited with a sign saying "KIM Gil-dong" at the lobby in the arrival area of International Terminal, Gimpo International Airport and handed over to HONG Su-yong who recognized him by the sign KRW 2,000,000 as "blood money". Around 16:30 on January 7, 1996, Defendant KIM Gi-bong met HONG Su-yeong and Defendant KIM Chang-seop on a road in front of Daeji Movie Theater in Mia-dong, Gangbuk-gu, Seoul, Korea.   Defendant KIM Gi-bong delivered to Defendant KIM Chang-seop the victim's photo and took a taxi together with him to show where the victim's

- 8 -

residence was.   Around 15:00 on January 12, 1996, Defendant KIM Gi-bong delivered to HONG Su-yong the "blood money" in the amount KRW 2,000,000 in the front gate of Ahn Sae Hospital, located in Apgujeong-dong, Gangnam-gu, Seoul, Korea.   Around 15:00 in mid-January 1996, Defendant KIM Gi-bong delivered to Defendant KIM Chang-seop the "blood money" in the amount of KRW 1,000,000 as he handed over the victim's home address, and her vehicle Sephia's license plate number and color, at a room of Victoria Hotel located in Mia-dong, Gangbuk-gu, Seoul, Korea.   Around 14:00 in late January, Defendant KIM Gi-bong also met HONG Su-yeong at the parking lot of Tower Hotel in Namsan, and delivered to him the aforementioned Pride Beta and KRW 1,500,000 as "blood money".   Around 18:00 on January 27, 1996, in front of Daeji Movie Theater, Defendant KIM Gi-bong also handed over to HONG Su-yeong KRW 1,000,000 and around 14:00 on February 2, 1996, at the coffee shop in Dongsuwon Hotel, KRW 500,000 as "blood money".

3)   HONG Su-yeong arrived at Gimpo International Airport on Korean Air Flight No. 017 around 16:58 on January 6, 1996, received the "blood money" in the amount of KRW 2,000,000 from Defendant KIM Gi-bong who had been waiting for him, and then met Defendant KIM Chang-seop who had already arrived and stayed in the waiting room so as to hand over KRW 1,000,000 of the received "blood money" in a taxi on his way to hotel.   Afterwards, on or about January 13, 1996, HONG Su-yeong left Korea but on or about January 22, 1996, re-entered the country.   In late January, HONG Su-yeong delivered to

KIM Chang-seop KRW 1,000,000 of the "blood money" received from Defendant KIM Gi-bong and the aforementioned Pride Beta. On or about January 29, 1996 HONG Su-yeong departed again but around 19:15 on February 7, 1996, re-entered Korea through Gimpo International Airport on Asiana Airlines Flight No. 201 and then made a phone call to Defendant KIM Chang-seop at Useongjang Inn, located in Mia 3-dong, Gangbuk-gu, Seoul, Korea where he was staying.   Around 24:00 on February 7, 1996, HONG Su-yeong met him at the entrance to Suyu Market near the victim's residence and prompted him to commit the crime by saying, "This is the last chance.   Come back here tomorrow by 8:30 in the morning."   Around 8:30 on January 8, 1996, HONG Su-yeong met Defendant KIM Chang-seop in front of the aforementioned Suyu Market, and pulled out his vehicle at a place overlooking the front door of the victim's residence and waited for her. At that time, HONG Su-yeong found the victim opening her front door and coming out so that he ordered Defendant KIM Chang-seop, "Here she comes.   Have her killed promptly."

4) On or about January 3, 1996, Defendant KIM Chang-seop purchased a Korean Air round trip ticket to Korea from an unidentified travel agency.   Around 15:21 on January 6, 1996, he arrived at Gimpo International Airport on Korean Air Flight No. 061 and met HONG Su-yeong in the waiting room and received "blood money" in the amount of KRW 1,000,000 from him in a taxi on his way to hotel.   Moreover, in late January, 1996, Defendant KIM Chang-seop received the "blood money" in the amount of KRW 1,000,000 and the

aforementioned Pride Beta from HONG Su-yeong.   Defendant KIM Chang-seop was also

guided by Defendant KIM Gi-bong to the victim's residence, and given her photo and the

"blood money" in the amount of KRW 1,500,000 on two different occasions.   Around 12:00

on January 9, 1996, Defendant KIM Chang-seop purchased from Namdaemun Market, a

kitchen knife about 25 cm long and a peeling knife about 20 cm long (Exhibit #2) to be used

for the crime, and then he wandered around in hotels and inns within the downtown area, as

of that day up until early February 1996. Defendant KIM Charng-seop sought to find a

chance to murder the victim as he continued to linger around victim SIM's residence and

disguised himself to be a postman or attempted to approach the victim by breaking in by

cutting out the restroom window.   However, Defendant KIM Chang-seop was not able to

carry out the plan since the tenant took the parcel on behalf of her or he failed to break in as

the victim turned the light on upon hearing some peculiar sound over the restroom window.

In early February 1996, he was urged by T from the US who said, "How come are you

spending money only without having 'taken care' of her?   On February 8 1996, the victim

will come out of her house and have her killed."   While Defendant KIM Chang-seop stayed

in room #203 of Useongjang Inn, located in Mia 3-dong, Gangbuk-gu, Seoul, Korea, quite

close in distance to the victim's residence, from February 6, 1996 on, he was urged again to

commit the crime by HONG Su-yeong who came to see him.   Therefore, since around 8:30

on February 8, 1996, Defendant KIM Chang-seop pulled out his Pride Beta with HONG Su-

yeong near the victim's residence, wrapped each of the peeling and kitchen knives with newspapers, placed the former inside a sock and the latter within his jacket, and then waited for the victim to come out.   Around 12:30 on February 8, 1996, HONG Su-yeong found that the victim came out to shovel the snow in front of her house and gave orders to Defendant KIM Chang-seop by saying, "Here she comes.   Have her killed promptly."   Therefore, Defendant KIM Chang-seop followed the victim through the open front door, stroke her once in the yard with his heavy fist on the face, thereby leaving her fallen to the ground; he sat on the victim and indiscriminately stabbed her 13 times with the aforementioned kitchen knife to neck, head and waist, etc; as a result, she died of exsanguination on the spot, followed by the severed external carotid artery.

2. Occupational Embezzlement Committed by Defendant HONG Jong-jun

While working as executive director of Bugwang Transport since August 1994, Defendant HONG Jong-jun was in charge of overall business affairs under Defendant HONG Jong-geun's orders such as managing the aforementioned company's revenue.   Around 23:00 on January 5, 1996, Defendant HONG Jong-jun received a phone call from HONG Jong-geun saying, "I will send you two people from the US there in order to murder Victim SIM Yu-ja. Support them with necessary expenses."   Around 14:00 on January 6, 1996, HONG Jong-jun delivered to Defendant KIM Gi-bong KRW 2,500,000 from Bugwang Transport's cash asset, at HONG Sun-min's residence, KRW

2,000,000 of which was to be handed over to HONG Su-yeong, who was expected to arrive to murder the victim while the rest of KRW 500,000 was to be given to Defendant KIM Gi-bong as a compensation for his errands; as of that day up until February 2, 1996, as set forth in Annex 1, Details of Crime, Defendant HONG Jong-Jun embezzled Bugwang Transport's cash asset in the amount of KRW 8,500,000 in total on six different occasions.

## SUMMARY OF EVIDENCE

Each of the following facts may be comprehensively accepted at the time of judgment.

1. Part of court testimonies by each of Defendants

1. Part of court testimonies by witnesses, each of SIM Deok-su and HONG Sun-min

1. Part of interrogations on each of defendants by the Prosecutor

1. Each deposition of Defendants HONG Jong-jun and KIM Gi-bong to the Prosecutor

1. Each deposition of OH Seoung-hwan and JEONG Sun-I to the Prosecutor

1. Each deposition of Defendant JEON Myeong-suk to the Prosecution Investigator

1. Report on verification by the Senior Prosecution Investigator

1. Ledger filed on the 2nd Investigation Record 1-532

1. Part of Confiscation Report on February 8, 1996 by Assistant to Senior Prosecution Investigator

1. Confiscation Reports by Assistant to Senior Prosecution Investigator, each on February 9,

- 13 -

1996 (2nd Investigation Record 1-20 and 22), and February 11, 1996

1. Presence of one confiscated peeling knife (Exhibit #2)

1. Report of Postmortem Examination made by Dr. OH Gyeong-baek

1. Autopsy Report    by Dr. LEE Yun-seong

1. Each   Response   on   Appraisal   Request   for   Analysis/Examination   and   Additional

   Analysis/Examination by the Director General of National Forensic Service.


**APPLICABLE LAW**

1. Applicable Law for the Facts of Crime

   1. Murder committed by Defendants

   Article 250(1) and Article 30 of the *Criminal Act*.

   1. Occupational Embezzlement committed by Defendant HONG Jong-jun

   Article 356, 355(1), and 30 of the *Criminal Act*.

2. Determination on Punishment

   As for the crime of murder, this court determines Defendant KIM Chang-seop be sentenced

   to death and Defendants HONG Jong-jun and KIM Gi-bong be sentenced to imprisonment

   for a limited time.   As for the crime of occupational embezzlement, this court determines

   Defendant HONG Jong-jun be sentenced to imprisonment.

3. Aggravated Sentence for Multiple Offenses

Defendant HONG Jong-jun committed concurrent crimes, subject to first part of Article 37 of *the Criminal Act*.   Pursuant to Articles 38(1)2 and 50 of *the Criminal Act*, since the punishment for a more severe crime is imposed, the punishment for the crime of murder shall be aggravated.

4.   Determination on Sentencing

Defendant KIM Chang-seop shall be sentenced to death, Defendant HONG Jong-jun to 15 years of imprisonment and Defendant KIM Gi-bong to 10 years of imprisonment.

5.   Inclusion of the Days of Pre-Trial Detention

Pursuant to Article 57 of *the Criminal Act,* the number of days of confinement before imposition of sentence shall be included to the period of limited imprisonment for Defendants HONG Jong-jun and KIM Gi-bong.

6.   Confiscation

One peeling knife (Exhibit #2) taken by the defendants, sought to be used in the commission of crime, is not the property of a person other than the criminal so that it may be confiscated, pursuant to Art 48(1)1 of *the Criminal Act.*

7.   Discussion on the Claims by Defense Counsels for Defendants HONG Jong-jun and KIM Gi-bong

Defense counsels claim that Defendant HONG Jong-jun followed HONG Jong-geun's orders and therefore only ran errands by ordering Defendant KIM Gi-bong to deliver money for

hotel bills and to give the victim's home address, etc. to Defendant KIM Chang-seop and others.    Neither did he conspire on murder with HONG Jong-geun nor meet Defendant KIM Chang-seop, T, or HONG Su-yeong.   Defendant KIM Gi-bong, upon Defendant HONG Jong-jun's request, also ran errands like delivering money for hotel bills to Defendant KIM Chang-seop in Korea, informing him of the victim's home address, etc. but never conspired on murder with Defendant HONG Jong-jun, HONG Jong-geun, HONG Su-yeong, or Defendant KIM Chang-seop.   Moreover, defense counsels claim that there has been no direct communication between Defendant KIM Chang-seop and HONG Jong-geun so that Defendant HONG Jong-jun and Defendant KIM Gi-bong have only aided the murder as accessories, not jointly committed the crime.   Therefore, they must not be punished for complicity as co-principals.

A.  As set forth in the previous section, Defendant HONG Jong-jun has conspired with Defendant KIM Gi-bong ever since they met KIM Man-jung in early November 1995. HONG Jong-jun made frequent contacts with HONG Jong-geun about the commission of crime, managed all domestic businesses relevant to the commission of crime thereof under HONG Jong-geun's orders, ordered Defendant KIM Gi-bong to deliver "blood money", vehicle, and the victim's photo to Defendant KIM Chang-seop and others.   Thus, it is as clear as it seems that Defendant HONG Jong-jun conspired with HONG Jon-geun.   As for Defendant KIM Gi-bong, he delivered the

"blood money" and vehicle to Defendant KIM Chang-seop, and guided him to the victim's residence, etc., thereby playing an essential role in the process of murder by helping Defendant KIM Chang-seop, who lacked information about present domestic affairs so as for him to murder the victim.   As a result, it shall be regarded that Defendant KIM Gi-bong successively or at least implicitly conspired with Defendants HONG Jong-jun, KIM Chang-seop and HONG Jong-geun to commit murder. Furthermore, in light of finding of facts, it is sufficient to acknowledge that there was communication concerning the murder of victim SIM among defendants KIM Chang-seop, HONG Jong-geun and T.   Therefore, this court recognizes complicity among the defendants, HONG Jong-jun, T and HONG Su-yeong.   The court, hereby, declares the aforementioned claims by defense counsels are all dismissed.

8.  Reasons for Sentencing

1)  Defendant KIM Chang-seop

A.  Defendant KIM Chang-seop is the youngest of a family with four brothers and one sister; at the age of 6, he immigrated to the US with his parents who failed their business in Korea; he spent his boyhood there in the US.   When he was a student at a junior high, he had his mother died of a stroke.   After he graduated from Pierce College with a degree in business, he flitted from a job to another without any stable one, thereby spending a tough adolescence.

– 17 –

B. However, Defendant KIM Chang-seop, proposed for a murder by T, a gang member, accepted it only for monetary reasons even if he did not know the victim in person; he did not even know whom he should assassin before entering Korea.   Thus, he came to the Republic of Korea across the sea, far from the US, and then received the "blood money" from his accomplices.   For a long period of time from around January 6, 1996 up until February 8, 1996, Defendant KIM Chang-seop sought to find a chance to murder the victim as he continued to linger around the victim's residence; he disguised himself to be a postman but had his plot failed since the tenant took the parcel on behalf of her; thus, he attempted to break in by cutting out the restroom window at night but saw the plot failed as well because the victim turned the light on upon hearing some peculiar sound over the restroom window as all set forth in the previous section.   In the end, around 12:30 on February 8, 1996, Defendant KIM Chang-seop found the victim coming out to shovel the snow in front of her house and murdered her.   Believing that he would depart for the US in his flight after the murder, audaciously during a day, Defendant KIM Chang-seop cruelly stabbed the victim 13 times with a kitchen knife to the neck, and other part; as a result, she died of exsanguination on the spot.   Therefore, it may be concluded, based on his materialistic thinking, Defendant KIM Chang-seop, by any means necessary, came to murder an innocent person with a long-term deliberate murder plot.

C.  To examine comprehensively Defendant KIM Chang-seop's aforementioned details of crime, motive for such, and result thereof, his liability for the crime is quite heavy. Therefore, in light of balancing punishments, and taking general and special preventive approaches towards crimes, KIM Chang-seop deserves to be sentenced to a death penalty.

2)  Defendants HONG Jong-jun and KIM Gi-bong

A.  Defendants HONG Jong-jun and KIM Gi-bong are HONG Jong-geun's brother or employee, respectively.   Defendant HONG Jong-jun has been deeply involved in the murder plot ever since he ordered KIM Man-jung to murder the victim and played an essential part in the commission of this crime by having provided substantial support for Defendant KIM Chang-seop who did not know much about Korea.

B.  Defendants HONG Jong-jun and KIM Gi-bong claim that they could not help joining the commission of murder, the former who invoked his relationship with Defendant HONG Jong-geun as a ground since he was not able to disobey his elder brother and the latter who invoked as a ground his relationship with Defendant HONG Jong-jun as an employee of Bugwang Transport.   They also claim that they even informed the victim to flee.

C.  Even if there are such circumstances such as family relationship in the process of joining the act of crime, Defendants substantially participated in the act of flagrant

crime, thereby bringing it to the commission thereof.   Also, Defendant KIM Gi-bong continued to support Defendant KIM Chang-seop's murder by delivering "blood money" and providing a vehicle, therefore, not able to avoid punishment corresponding to such.

D.  It is determined that Defendants HONG Jong-jun and KIM Gi-bong are sentenced as set forth in the Disposition with all pertinent circumstances taken into account such as details of the crime, process of joining the act of crime, level of participation, details of assigning roles, and relationships with HONG Jong-geun, etc.

Therefore, it is hereby adjudicated as set forth in the Disposition.


1996.    6.    28

Presiding Judge        SONG Heung-seop        _____

        Judge          GANG Seon-myeong        _____

        Judge          CHOI Eun-bae           _____

## ANNEX 1. DETAILS OF CRIME

| | DATE | PLACE | AMOUNT OF EMBEZZLEMENT | BREAKDOWNS OF USE OF THE MONEY |
|---|---|---|---|---|
| 1 | Approx. Jan 6, 1996 | HONG Sun-min's residence at 44-16 Jeongja 2-dong, Jangan-gu, Suwon-si, Gyeonggi-do | KRW 2,500,000 | "blood money" in the amount of KRW 2,000,000 to HONG Su-yeong and compensation for errands in the amount of KRW 500,000 to Defendant KIM Gi-bong |
| 2 | Approx. Jan 12, 1996 | Reception area of Bugwang Transport at 782-1 Omokcheon-dong, Gwonseon-gu, Suwon-si, Gyeonggi-do | KRW 2,000,000 | "blood money" to HONG Su-yeong |
| 3 | Mid-Jan 1996 | Identical as above | KRW 1,000,000 | "blood money" to Defendant KIM Chang-seop |
| 4 | LateJan 1996 | Identical as above | KRW 1,500,000 | "blood money" to HONG Su-yeong |
| 5 | Approx. Jan 27, 1996 | Identical as above | KRW 1,000,000 | Identical as above |
| 6 | Approx. Feb 2, 1996 | Identical as above | KRW 500,000 | "blood money" to Defendant KIM Chang-seop |

# SEOUL DISTRICT COURT (NORTHERN BRANCH)

# 1ST CRIMINAL DEPARTMENT

# JUDGMENT

| | |
|---|---|
| **CASE** | 2003GOHAP430   Murder |
| **DEFENDANT** | HONG Su-yeong ( ▇▇▇▇ American name: Sam Hong), unemployed |
| | Current Address: 368 Satinwood Ct., Buffalo Grove, IL, U.S.A |
| | Permanent Address: 119-57 Noryangjin-dong, Dongjak-gu, Seoul |
| **PROSECUTOR** | JEONG Yong-su |
| **DEFENSE COUNSEL** | Attorney KIM Gi-su, YUN Seong-in |
| **DATE OF IMPOSITION OF JUDGMENT** | 2004. 1. 30. |

## DISPOSITION

The Defendant shall be sentenced to 15 years imprisonment.

The Defendant shall receive credit for 100 days served in detention prior to this judgment.

## REASONING

### FACTS OF CRIME

On an unidentified day in December 1995, at the coffee shop of Crown Hotel in Los Angeles

– 1 –

("LA"), the Defendant met HONG Jong-geun and accepted his offer of USD 30,000 for killing the victim, HONG Jong-geun' wife SIM Yu-ja (age 44).    Thereafter, the Defendant requested Tommy (a.k.a. T), a Chinese-American member of the crime gang "*Wah Ching*" in LA, for the murder of the victim.    Around December 27, 1995, Tommy made a proposal to KIM Chang-seop (American name: David Kim) by saying, "If you kill a person, I will pay you USD 30,000."    As KIM Chang-seop accepted the above offer, around January 3, 1996, the Defendant went to KIM Chang-seop's house with Tommy and ordered by saying, "Go to Korea first and wait for me at Gimpo Airport where I will give you instructions under which you work." and paid USD 1,500 as a deposit.    Upon the receipt of the above money from the Defendant, KIM Chang-seop promised to enter Korea in his flight departing from Los Angeles around 9:00 on January 5, 1996 and kill the victim.    As such, the Defendant, HONG Jong-geun, Tommy, and KIM Chang-seop, sequentially conspired to murder the victim.    And the Defendant committed the crime as follows.

Around 16:58 on January 6, 1996, the Defendant arrived at Korea through Gimpo Airport and received KRW 2,000,000 for murder from KIM Gi-bong who was ordered by HONG Jong-geun and waited at the airport.    And the Defendant met KIM Chang-seop, who arrived earlier on the same day, waiting at the waiting room and gave him KRW 1,000,000 out of the above amount of money for murder.    Around January 13, 1996, the Defendant left for the United States and came back again around January 22, 1996.    Around 14:00 of January 23, 1996, the Defendant received a vehicle, '*Pride*', with KRW 1,500,000 for murder from KIM Gi-bong and passed the vehicle with KRW

1,000,000 out of the above amount of money to KIM Chang-seop and again left for the United States on January 29,1996.   Around 19:15 of February 7, 1996, the Defendant entered Korea again and met KIM Chang-seop who stayed in Useongjang Inn located in Mia 3-dong, Gangbuk-gu, Seoul and made an appointment by saying, "Let's meet tomorrow (February 8) around 10:00 at the restaurant which is across from *Victoria Hotel'* where I'm staying".   On February 8, 1996, the Defendant rode in the above *'Pride'* that SIN Gwan-su, a friend of the Defendant drove and picked up KIM Chang-seop.   They had a meal at an unidentified *Gamjatang* restaurant located in front of *Suyu Market*, Suyu-dong, Gangbuk-gu.   Then they pulled over the above *'Pride'* at a place overlooking the front door of the victim's house and waited for her to come out.   When the victim came out to remove snow from in front of her house, KIM Chang-seop got out of the car with a pre-prepared kitchen knife (25cm-long blade) and a peeling knife (20cm-long blade) and followed the victim into her house.   KIM Chang-seop punched the victim once with his heavy fist on the face in the yard, thereby leaving her fallen to the ground.   Then he mounted on the victim stabbing 13 times in her neck, head and waist with a kitchen knife.   This caused the victim to die on the spot due to blood loss (exsanguinations) from the severed external carotid artery.


## SUMMARY OF EVIDENCE

1. Part of the Defendant's statement to the court

1. Each testimony made by witness KIM Chang-seop and SIN Gwan-su

1. Each recorded statement made by KIM Chang-seop at the 1st and 2nd trial of this court (Case no.: 96GOHAP67HO)

1. Suspect interrogation report of the Defendant by the prosecution

1. Each suspect interrogation report of HONG Jong-geun, KIM Chang-seop, KIM Gi-bong, and HONG Jong-jun by the prosecution

1. Each deposition to the prosecution made by SIN Gwan-su, HONG Jong-jun, KIM Gi-bong, JEONG Sun-i, HONG Sun-min, OH Seoung-hwan, JEON Myeong-suk, GANG Gi-ho, IM Bok-yong, and HONG Sun-yong

1. Each suspect interrogation report of KIM Chang-seop, KIM Gi-bong, and HONG Jong-jun by the police

1. Each deposition to the police made by SIM Deok-su and HAN Sang-gyeong

1. Confiscation report by the police

1. Verification report

1. Postmortem examination report, autopsy report

**APPLICABLE LAW**

1. Applicable Law for the Facts of Crime and Options of Penalty

Articles 250(1) and 30 of *the Criminal Act* (selected imprisonment for life)

1. Discretionary Mitigation

Each Articles 53 and 55(1)3 of *the Criminal Act* (extenuating circumstances such as the reasons

for sentencing below)

1. Inclusion of Days of Detention before Judgment

Article 57 of *the Criminal Act*

**REASONS FOR SENTENCING**

Originally, the prosecution filed complaints against the Defendant based on the following

facts:

As KIM Chang-seop, a co-conspirator, continued to fail to murder the victim, the Defendant entered

Korea the day before the murder and urged KIM Chang-seop by saying "Last chance for you".    On

the day of the crime, both of them went to the scene of the crime, waiting for the victim to come out

of her house.    And when she turned up at the spot, the Defendant directly ordered KIM Chang-seop

to kill by saying, "Here she comes, have her killed promptly".    According to this court's record

(Case no.: 96GOHAP67HO), at the first interrogation by the police, KIM Chang-seop stated that he

committed the crime alone.    However, he changed his statement at the second interrogation and

maintained the reversed statement throughout the trial.    Hence the court admits that his statement

corroborates the above complaints by the prosecution.    Meanwhile, KIM Chang-seop appeared in

this court as a witness and testified by saying, "Unlike complaints, the Defendant never urged and

ordered to murder".    SIN Gwan-su who drove to the scene of the crime testified the Defendant did

not order to commit the crime.

Such being the case, it is open to doubt that KIM Chang-seop's previous statement

- 5 -

corroborating the complaints was a false statement which was made for the purpose of avoiding and

shifting a liability for a crime to the Defendant.    As for criminal trials, defendant can be found

guilty when Judge assures the complaints is inferred or deduced from admissible evidence beyond

reasonable doubts.    Unless there is such evidence, judgment should be made in favor of the

defendant's interests even if there is a doubt that the defendant is guilty.    With respect to the above

principle of *the Criminal Act,* this part of the complaints that the Defendant played a leading role by

urging KIM Chang-seop to murder and ordering on the spot shall not be considered as sentencing

elements unfavorable for the Defendant.

Meanwhile, the Defendant and his defense counsel raised objections as follows:

Admittedly, the Defendant conspired with KIM Chang-seop to commit the crime in the beginning

and delivered money to him for the crime.    However, on the day of the crime, the Defendant

requested KIM Chang-seop to give up the crime and return to the United States.    Since KIM Chang-

seop told him to go to near the victim's house once again, the Defendant just followed him and did

not predict KIM Chang-seop would really commit the crime.    However, the circumstances are that

seemingly the Defendant had a meal together with KIM Chang-seop, who is not familiar with areas

in Korea, at the *Gamjatang* restaurant near *Suyu Market* neighboring the victim's house; and that the

place where the Defendant and KIM Chang-seop pulled out the vehicle after having a meal was near

the victim's house so that they could see its front door.    Considering the above circumstances, even

if the Defendant did not played a leading role by ordering KIM Chang-seop to murder the victim at

- 6 -

the scene of the crime as aforementioned, it can be inferred that the Defendant at least conspired with

KIM Chang-seop and according to the plot he accompanied to the scene and shared the role in

execution of the crime.    For these reasons, the above objections shall not be accepted.

  According to the record, the Defendant murdered the victim, who has no relation with the

Defendant regarding interests or resentment, just for the purpose of pecuniary advantage, indicating

the motive of the crime is awful.    Moreover the Defendant premeditated the crime equipping with

human and physical resources for about 3 months after co-conspirator HONG Jong-geun ordered

him to murder.    Considering all the facts including the motive, method and means, result of the

crime, and post-criminal circumstances, the Defendant's offence is anti-social and heinous, meaning

that a heavy sentence on the Defendant is inevitable.

  Favorable circumstances, however, are that the Defendant had no criminal record prior to

committing this crime; that he departed for the United States about 20 years ago and relatively

worked hard until being caught in a trap of crime in around year 1995 because of difficulties

stemming from divorce and failure of business; that he was mentally suffered from being on the run

since he left Korea right after the crime 7 years ago.    In addition, the petition submitted by the

Defendant's family and friends shows that they still love the Defendant and share in his distress.

Considering the above facts, it is harsh to impose a heavy sentence and crush their hope for meeting

him again in the bright light.

  Thus this Court shall decide on each sentence as the same as the final disposition, in the hope

- 7 -

that a wish for meeting his family again helps the correction of the Defendant.

Putting together all conditions for sentencing, this court shall order as the above final

disposition.

|  | Presiding | Judge | PARK Cheol |
|  |  | Judge | LEE Sang-hun |
|  |  | Judge | LEE Sang-u |

- 8 -

# SEOUL HIGH COURT

# 5th CRIMINAL DEPARTMENT

# JUDGMENT

| | |
|---|---|
| **CASE** | 2004NO463  Murder |
| **DEFENDANT** | HONG Su-yeong |
| | (American name: Sam Hong, ▮▮▮▮▮▮▮ unemployed |
| | Current Address: 368 Satinwood Ct., Buffalo Grove, IL,U.S.A |
| | Permanent Address: 119-57 Noryangjin-dong, Dongjak-gu, |
| | Seoul, Korea |
| **APPELANTS** | Defendant and Prosecutor |
| **PROSECUTOR** | LEE Seong-uk |
| **DEFENSE COUNSEL** | Attorney KIM Gi-su, YUN Seong-in |
| **JUDGMENT BY THE LOWER COURT** | Judgment 2003GOHAP430 on January 30, 2004, |
| | by the Seoul Northern District Court |
| **DATE OF IMPOSITION OF JUDGMENT** | 2004. 6. 1. |

## DISPOSITION

The judgment by the lower court shall be reversed.

The Defendant shall be sentenced to 12 years imprisonment.

The Defendant shall receive credit for 100 days served in detention prior to the judgment by the lower court.

# REASONING

## 1. SUMMARY OF GROUNDS FOR APPEAL

### A. The Defendant

#### (1) Mistake of Fact

The Defendant heard from KIM Yeong-hun, who is a henchman of HONG Jong-geun, that HONG Jong-geun had requested KIM Yeong-hun to murder the victim.   The Defendant and KIM Yeong-hun conspired to take this opportunity for ripping HONG Jong-geun off.   However, the Defendant never conspired to murder and did not participate in the execution of the crime except that he translated when Tommy (Chinese) introduced KIM Chang-seop, who actually killed the victim, to KIM Yeong-hun; that he entered Korea, received a vehicle *'Pride'* from KIM Gi-bong, and then delivered it to KIM Chang-seop; and that on the day of the crime, he picked up KIM Chang-seop and had a meal near *'Suyu Market'* in order to help him leave Korea.   Thus in this case, the Defendant is mere an aider and abettor of murder and cannot be punished as a co-principal. However, the lower court was in breach of the law by punishing the Defendant as a co-principal of murder.

#### (2) Improper Sentencing

The sentence (15 years of imprisonment) imposed on the Defendant by the lower court is too heavy and improper.

### B. Prosecutor

The sentence imposed on the Defendant by the lower court is too light and improper.

## 2. DISCUSSION

A.  Discussion on the claim for mistake of fact by the Defendant

In a relation of co-conspirators where two or more persons have jointly committed a crime, there are not any statutory definite standards to determine if it is conspiracy.    A combined intention among two or more people for joint commission of a crime is sufficient to prove conspiracy.    Conspiracy is established when multiple people communicate sequentially or tacitly, and thus combine their intentions even though there is not any process of planning among the whole group of co-conspirators.    Furthermore once they conspired, even a person who has not been directly involved in carrying out the act, shall be subject to criminal liability for the other co-conspirators' act as a Co-Principal. *(see Supreme Court Decision 2002DO6103, January 24, 2003)*

According to the evidence legally collected and examined by the lower court, this court admits the following facts: Around December 1995, the Defendant met HONG Jong-geun in the United States, accepting his offer of USD 30,000 for killing the victim.    Then the Defendant requested a Chinese-American known as Tommy, a member of the crime gang *"Watching"* in Los Angeles, to murder the victim.    Around December 27, 1995, Tommy suggested KIM Chang-seop by saying, "If you kill a person, I will pay you USD 30,000" and KIM Chang-seop accepted his offer.    Around January 3, 1996, the Defendant went to KIM Chang-seop's house with Tommy and ordered by saying, "Go to Korea first and wait for me at Gimpo Airport where I will give you instructions under which you work." and paid USD 1,500 as a deposit.    KIM Chang-seop received the above money from the Defendant and promised to kill the victim in Korea.    Thereafter the Defendant entered Korea twice, received from KIM Gi-bong a vehicle and money needed for the crime and delivered them to KIM Chang-seop.    On February 8,

- 3 -

1996, the Defendant and KIM Chang-seop were together in the vehicle waiting for the victim to come out of the house and as she turned up, KIM Chang-seop murdered the victim as described in the judgment by the lower court.   According to the above facts, this court finds that there were sequential or tacit mutual understandings of intention among the Defendant, HONG Jong-geun, Tommy, and KIM Chang-seop; and that there was collective or individual communication or recognition of their intentions to commit murder in this case.   Considering the degree of the Defendant's involvement in this case as shown in the above admitted facts, it can be seen that he committed murder as a co-principal because he exploited KIM Chang-seop's act of murder as a means of carrying out his intention.   Therefore, the Defendant is punishable as a co-principal of murder. In this sense, the lower court's judgment of punishing the Defendant as a co-principal in this murder case is legitimate.   Therefore, the above claim on the mistake of fact or error in law by the Defendant has no reasons.

B.  Discussion on the claim for improper sentencing by each of the Defendant and Prosecutor

This is a premeditated murder-for-hire case.   The Defendant shall be subject to a heavy sentence, putting together the facts that this offence is heinous; that the means and the method of the crime are audacious and brutal; and that this offence led to death, which is a grave result.   On the other hand, considering the facts that the Defendant had no criminal record prior to this crime; that he mentally suffered for long from being on the run after the crime 7 years ago; and that he entered Korea after turning himself in to the US investigation authority, and the sentencing on other co-conspirators of this murder case and the factors of Article 57 of *the Criminal Act*, the sentence by the lower court is rather heavy and

- 4 -

improper.    Therefore, the above claim by the Defendant is reasonable while the

claim by Prosecutor is unreasonable.

**3.  CONCLUSION**

Therefore, as the Defendant's appeal has reasons, the judgment by the lower court

shall be reversed.    In accordance with Article 364(6) of *the Criminal Procedure Act,*

this court shall order as below.

**FACTS OF CRIME AND SUMMARY OF EVIDENCE**

The facts of crime and summary of evidence admitted by this court are same as

stated in the judgment by the lower court.    Therefore, this court shall quote the entries

as they are pursuant to Article 369 of *the Criminal Procedure Act.*

**APPLICABLE LAW**

1.  Applicable law for the facts of crime

Articles 250(1) and 30 of *the Criminal Act* (selected imprisonment for life)

1.  Discretionary Mitigation

Each Articles 53 and 55(1)2 of *the Criminal Act* (extenuating circumstances from the

above reasons for reversal)

1.  Inclusion of Days of Detention before Judgment

Article 57 of *the Criminal Act*


|  |  |  |
|---|---|---|
| Presiding | Judge | LEE Hong-gwon |
|  | Judge | PARK Pyeong-gyun |
|  | Judge | CHO Yong-hyeon |

# SUPREME COURT

# SECOND DEPARTMENT

# JUDGMENT

| | |
|---|---|
| **CASE** | 2004DO3681 Murder |
| **DEFENDANT** | HONG Su-yeong |
| | (American name: Sam Hong, ████████ unemployed |
| | Current Address: 368 Satinwood Ct., Buffalo Grove, IL,U.S.A |
| | (Being in the Seoul Detention Center) |
| | Permanent Address: 119-57 Noryangjin-dong, Dongjak-gu, |
| | Seoul, Korea |
| **APPELANTS** | Defendant |
| **DEFENSE COUNSEL** | Attorney SHIN Chang-eon, HWANG Do-su, LEE Dong-heon |
| **JUDGMENT BY THE LOWER COURT** | Judgment 2004NO463 on June 1, 2004, |
| | by the Seoul High Court |
| **DATE OF IMPOSITION OF JUDGMENT** | 2004. 9. 3. |

# DISPOSITION

The appeal shall be dismissed.

Remaining 90 days of detention after the appeal shall be included in this sentence.

# REASONING

1.     According to the collected evidence, the lower court admitted the following facts:

-- 1 --

In the United Sates, the Defendant accepted HONG Jong-geun's offer of USD 30,000

in return for killing the victim, HONG Jong-geun's wife.    Then the Defendant

requested a Chinese-American known as Tommy, a member of the crime gang

"*Watching*" in Los Angeles, to murder the victim.    Thereafter, Tommy suggested

KIM Chang-seop by saying, "If you kill a person, I will pay you USD 30,000" and

KIM Chang-seop accepted his offer.    The Defendant went to KIM Chang-seop's

house with Tommy and ordered by saying, "Go to Korea first and wait for me at

Gimpo Airport where I will give you instructions under which you work." and paid

USD 1,500 as a deposit.    KIM Chang-seop received the above money from the

Defendant and promised to kill the victim in Korea.    Thereafter, the Defendant

entered Korea twice, received from KIM Gi-bong a vehicle and money needed for the

crime and delivered them to KIM Chang-seop.    The Defendant and KIM Chang-

seop were together in the car waiting for the victim to come out of the house and as

she turned up, KIM Chang-seop stabbed the victim's body 13 times with a kitchen

knife.    By doing so, KIM Chang-seop murdered the victim.

   As shown in the records, the above facts admitted by the lower court have

reasonable grounds.    In addition, this court finds neither error in law regarding the

admissibility of evidence nor unlawful mistake of fact and insufficient hearing in

violation of the Principles for Assessing Evidence, as alleged in the grounds for

appeal.

2.   As for co-conspirator relations where two or more persons have jointly committed a

crime, there are any statutory definite standards to determine if it is conspiracy.    A

combined intention among two or more people for joint commission of a crime is

sufficient to prove conspiracy.    Conspiracy is established when multiple people

communicate sequentially or tacitly, and thus combine their intentions even though

there is not any process of planning among the whole group of co-conspirators. Furthermore once they conspired, even a person who has not been directly involved in carrying out the act shall be subject to criminal liability for the other co-conspirators' act as a Co-Principal. *(see Supreme Court Decision 2002DO6103, January 24, 2003).*

In addition, there is a clear difference between co-principal and accessory.   Co-principals control the act of each other functionally by dividing roles with joint intention, while accessories do not. *(see Supreme Court Decision 88DO1247, April 11, 1989; Supreme Court en banc Decision 98DO321, May 21, 1998).*

According to the facts affirmed by the lower court, there were sequential communications of intention among the Defendant, HONG Jong-geun, Tommy, and KIM Chang-seop, meaning that there was collective or individual communication or recognition of their intentions to murder in this case.   Considering the role and the degree of involvement of the Defendant in this case, it is sufficient to say that the Defendant controlled the criminal act with the intention to jointly commit the crime because he exploited KIM Chang-seop's act of murder as a means of carrying out his intention.

In this sense, the lower court's judgment of punishing the Defendant as a co-principal in this murder case is legitimate and it cannot be said that there is illegal mistake of facts or error in law as to co-principals or accessories.

3.   When one of co-conspirators disengages himself from conspiracy before the other co-conspirator commits the crime, the former is not liable for the other conspirator's act as a co-principal. *(see Supreme Court Decisions 85DO2371 and 85GAMDO347, January 21, 1986).*   However, according to the facts affirmed by the lower court, it is obvious that the Defendant did not disengage himself from the conspiracy before

- 3 -

KIM Chang-seop committed murder.    Hence, this court does not accept the reasons for the appeal which are contrary to the above.

4.        Therefore, the appeal shall be dismissed and part of detention days after the appeal shall be included in this sentence.    This court shall order as stated in the disposition with the assent of all participating Justices.

|                    |         |               |
|--------------------|---------|---------------|
| Presiding Justice  | Justice | LEE Gang-guk  |
| Justice in Charge  | Justice | YU Ji-dam     |
|                    | Justice | BAE Gi-won    |
|                    | Justice | KIM Yong-dam  |

# SUPREME COURT

# 1ˢᵗ CRIMINAL DEPARTMENT

# JUDGMENT

| | |
|---|---|
| **CASE** | 1996DO3104     Murder |
| **DEFENDANT** | KIM Chang-seop, also known as David KIM, |
| | unemployed |
| | ▮▮▮▮▮▮▮ |
| | Current Address: 825 S. Gramercy Dr. Los Angeles, |
| | CA, 90011, U.S.A |
| | Permanent Address: unknown in Korea |
| **APPELLANT** | Defendant |
| **DEFENSE COUNSEL** | Attorney CHO Hui-rae (court-appointed) |
| **JUDGMENT BY THE LOWER COURT** | Judgment 96NO1459 on November 13, 1996 by |
| | the Seoul High Court |
| **DISPOSITION** | The appeal shall be dismissed. |
| **REASONING** | The grounds of appeal both by the Defendant and |

- 1 -

his court-appointed attorney shall be examined together.

As examined in light of facts on file, the judgment by the lower court is reasonable, which stated that there were no sufficient reasons to believe that the act of crime had been committed out of irresistible violence or defenseless threats on life or physical body exerted by T.   In addition, it cannot be said that there has been an unlawful mistake of fact in violation of the Principles for Assessing Evidence, as claimed as grounds of appeal.

Furthermore, with Defendant KIM Chang-seop's motive for committing the crime, means and method of crime, result thereof, circumstances after the crime, and the defendant's childhood background, education, and career, etc., taken into account for determination on punishment, it is regarded as appropriate for the High Court to have ruled that he was sentenced to imprisonment for life, not as too heavy to be unfair.

Therefore, it is hereby declared that the appeal is dismissed and it is adjudicated in accordance with the Disposition upon consensus by all involved justices.

1997.   3.   11

Presiding Justice                    Justice LEE Im-su

- 2 -

Justice CHOI Jong-yeong

Justice in Charge                    Justice JEONG Gwi-ho

# SEOUL HIGH COURT

# 6th CRIMINAL DEPARTMENT

# JUDGMENT

| | | |
|---|---|---|
| **CASE** | 2002NO2931 | A. Murder |
| | | B. Occupational Embezzlement |
| **DEFENDANT** | HONG Jong-geun ▮▮▮▮▮ unemployed | |
| | Current Address: 314-8 Geumo-dong, Uijeongbu-si | |
| | Permanent Address: 181 Ganeung-dong, Uijeongbu-si | |
| **APPELLANT** | Defendant | |
| **PROSECUTOR** | JEONG Seong-bok | |
| **DEFENSE COUNSEL** | Attorney SEONG Yun-hwan, PARK Seong-cheol | |
| **JUDGMENT BY THE LOWER COURT** | Judgment 2002GOHAP271 on October 18, 2002, | |
| | by the Seoul District Court (Northern Branch) | |
| **DATE OF IMPOSITION OF JUDGMENT** | 2003. 1. 28. | |

## DISPOSITION

The judgment by the lower court shall be reversed.

The Defendant shall be sentenced to 12 years of imprisonment.

- 1 -

The defendant shall receive credit for 120 days served in detention prior to the judgment by the lower court.

# REASONING

1. **SUMMARY OF GROUNDS FOR APPEAL**

    A. Mistake of Fact and Error in Law (as to the crime of murder described in the facts of crime)

    Around December 1995, the Defendant asked HONG Su-yeong to meet victim SIM Yu-ja and persuade her to drop the petition and dissolution suit she filed against the Defendant and live with him.   The Defendant also added that HONG Su-yeong may kill her if she does not comply.   The Defendant, however, never thought that HONG Su-yeong would really kill the victim nor conspired with T or KIM Chang-seop to murder. For this reason, the Defendant cannot be punished as a Co-Principal in this murder case, apart from the fact that the Defendant is punishable for instigating murder.   However, the lower court was in breach of the law by punishing the Defendant as a Co-Principal of murder.

    B. Improper Sentencing

    In light of the facts that the Defendant does not have any criminal record and reached a settlement with the victim's family; that the victim also was partly responsible

- 2 -

for giving a motive for this crime; and that the Defendant is a 63-year-old senior citizen,

the sentence imposed on the Defendant by the lower court is too heavy and improper.

## 2. DISCUSSION ON GROUNDS FOR APPEAL

A.  Mistake of Fact and Error in Law (as to the crime of murder)

As for conspiracy among co-principals, there are not any statutory definite standards

to determine if it is conspiracy.   Rather, conspiracy among co-principals is established

when multiple people communicate sequentially or tacitly, and thus combine their

intentions.   In addition, conspiracy among co-principals does not always require any

process of planning in advance.   If they communicate or recognize the intentions for the

crime collectively or individually, it can be said that all of the people involved are co-

conspirators.   Furthermore once they conspired, even a person, who has not been

directly involved in carrying out the act, shall be subject to criminal liability for the other

co-conspirators' act as a Co-Principal.   Thus, according to the evidence legally collected

and examined by the lower court, this court admits the following facts: On October 23,

1995, the Defendant in the United States made a call to his brother HONG Jong-jun in

Korea and said, "SIM Yu-ja filed a dissolution suit claiming for alimony and petitions

with the Presidential Office and other agencies.   So I'm going to kill her.   Otherwise,

my sons would be beggared.   Give me a map showing the way to her house and her

photo."   Then the Defendant decided to murder the victim even by mobilizing a crime

gang in the United States.   Around December 1995, the Defendant requested a Chinese-American known as T, a member of the crime gang "*Watching*" in Los Angeles to kill the victim.   After accepting the request, at KIM Chang-seop's house in Los Angeles, the above T suggested KIM Chang-seop by saying, "If you kill a person, I will pay you USD 30,000", making KIM Chang-seop join the crime.   Around January 5, 1996, the Defendant made a call to HONG Jong-jun in Korea and said, "Two people from the United States will arrive at the airport around 5 p.m. tomorrow.   Go to the airport with KRW 2,000,000 and the photo of SIM Yu-ja and give the money and the photo to them. Provide them with whatever they need in Korea as well."   Accordingly, HONG Jong-jun frequently contacted the Defendant and had KIM Gi-bong meet KIM Chang-seop and HONG Su-yeong, who is a member of *Watching*, and deliver the money and the photo of the victim as well as a vehicle needed for the crime. With the support of KIM Gi-bong as above, KIM Chang-seop hovered around the victim's house and murdered the victim on February 8, 1996, as described in the judgment by the lower court.   According to the aforementioned facts, this court finds that there were sequential or tacit mutual understandings of intention between the Defendant and KIM Chang-seop; that there was collective or individual communication or recognition of their intentions to commit murder in this case; that the Defendant personally requested T, a member of the crime gang "*Watching*" to kill his wife, at the same time frequently contacted HONG Jong-jun

- 4 -

in Korea to make him provide T and HONG Su-yeong with funds, a vehicle and a photo

of the victim, which were needed for murder of the victim and frequently received

updated reports from HONG Jong-jun.   Considering the degree of the Defendant's

involvement, it can be seen that the Defendant committed murder as a co-principal,

because he exploited KIM Chang-seop's act of murder as a means of carrying out his

intention although the Defendant had not been to the scene of murder.   In this sense, the

lower court's judgment that the Defendant shall be punished as a co-principal is

legitimate.   Therefore, the above claim on the mistake of fact or error in law by the

Defendant has no reasons.

B.  Improper Sentencing

Putting together the facts that the Defendant is aged; that he settled the case with the

victim's family; and that he seems greatly repentant, and other sentencing factors (the

motive for the crime; the Defendant's age, characteristics, behavior, background,

occupation, and relationship with the victim; the victim's age), this court finds that the

sentence imposed on the Defendant by the lower court is rather heavy and improper.

Therefore, the above claim has reasons.

3.  CONCLUSION

Therefore, the Defendant's appeal has reasons and the judgment by the lower court shall

be reversed pursuant to Article 364(6) of *the Criminal Procedure Act.*    This court shall retry

and judge as below.

**FACTS OF CRIME AND SUMMARY OF EVIDENCE**

The facts of crime and summary of evidence admitted by this court are the same as

stated in the judgment by the lower court.    Therefore, this court shall quote the entries as

they are pursuant to Article 369 of *the Criminal Procedure Act.*

**APPLICABLE LAW**

1. Applicable law for the facts of crime

   • Murder: Articles 250(1) and 30 of *the Criminal Act* (selected imprisonment for a limited

   term)

   • Occupational Embezzlement: included all of embezzlement, Articles 356, 355(1), and 30

   of the former *Criminal Act* (the previous Act before being amended as Act No. 5057 on

   December 29, 1995) (selected imprisonment)

1.  Aggravated Sentence for Multiple Offenses

   First part of Article 37, Articles 38(1)2 and 50 of *the Criminal Act* (an aggravated sentence

   shall be imposed on the sentence for murder, which is a heavier sentence)

1.  Inclusion of Days of Detention before Judgment

   Article 57 of *the Criminal Act*

– 6 –

Presiding   Judge          PARK Hae-seong          _____

            Judge          PARK Jong-min           _____

            Judge          JEONG Han-ik            _____